UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NATS EMPEROR SHIPPING LIMITED,   :

                Plaintiff,   :

V.   :   08 Civ. 3763 (BSJ)

                                                  :

HAWKNET LIMITED and BROBULK
LIMITED,   :

                Defendants.   :
-------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANT
BROBULK LIMITED IN SUPPORT OF ITS
MOTION TO VACATE THE ATTACHMENT
AGAINST ITS PROPERTY**

                                                  CARDILLO & CORBETT
                                                  Attorneys for Defendant
                                                  BROBULK LIMITED
                                                  29 Broadway
                                                  New York, New York 10006
                                                  Tel: 212-344-0464
                                                  Fax: 212-797-1212

Tulio R. Prieto
James P. Rau
Of Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF FACTS ...................................................... 2

ARGUMENT ................................................................ 5

POINT I
PLAINTIFF HAS THE BURDEN TO SHOW
WHY THE ATTACHMENT SHOULD NOT BE VACATED ........................... 5

POINT II
THERE ARE TWO TESTS TO DETERMINE WHETHER
A PLAINTIFF HAS MADE A PRIMA FACIE CASE, AND
NATS EMPEROR FAILS BOTH TESTS ...................................... 6

    A.  Plaintiff Cannot Demonstrate Reasonable Grounds for Its Alter Ego Claim ...... 11

    B.  Plaintiff Has Failed To Sufficiently Allege a Prima Facie Alter Ego
        Claim Against Brobulk ................................................ 12

CONCLUSION ............................................................. 18

## **PRELIMINARY STATEMENT**

This memorandum of law is submitted by defendant, Brobulk Limited ("Brobulk") in support of its motion to vacate the attachment of its property by the plaintiff, Nats Emperor Shipping Limited ("Nats Emperor") and the ex parte Order of Maritime Attachment obtained by Nats Emperor from this Court.

Nats Emperor commenced this action on or about April 21, 2008, against defendant, Hawknet Limited ("Hawknet"), and Brobulk, by filing a verified complaint, allegedly based on information and belief, alleging that Hawknet had breached a maritime contract between Nats Emperor and Hawknet and that Hawknet was the alter ego of Brobulk "or vice versa". Based on the allegations in the complaint, the Court issued an Order of Maritime Attachment on April 22, 2008, against the property of Hawknet and Brobulk within the District, including electronic funds transfers made by or payable to Hawknet and Brobulk. Brobulk believes that to date the amount of $305,564.44 in electronic funds transfers belonging to Brobulk has been attached by Nats Emperor.

As will appear from the facts below, the wholly conclusory allegations made by Nats Emperor that Hawknet is the alter ego of Brobulk are false and Nats Emperor knew that they were false when made. Thus, Nats Emperor has failed to show that it has a valid prima facie admiralty claim against Brobulk as required to sustain a maritime attachment. Accordingly, the attachment order as to Brobulk must be vacated and its funds released.

## STATEMENT OF FACTS

According to the allegations made by Nats Emperor in the complaint, Nats Emperor entered into a time charter party dated February 29, 2008, with defendant, Hawknet Limited ("Hawknet") covering the vessel NATS EMPEROR (the "Vessel"). Nats Emperor claims that Hawknet "revoked" the charter party, causing damages to Nats Emperor in the principal amount of $1,102,000. To this principal amount, Nats Emperor has added interest, attorneys' fees and costs in the amount of $577,499.63, for a total claim of $1,679,499.63 (Verified Complaint, ¶¶ 17-27).

Nats Emperor does not allege that Brobulk was a party to the charter party. Instead in a series of conclusory, repetitious, boilerplate type allegations devoid of any facts to support its contentions, Nats Emperor alleges that Hawknet is the alter ego of Brobulk "or vice versa" (Verified Complaint, ¶¶ 6-16).

The Court is respectfully referred to the Declaration of Urban Paulsson ("Paulsson Dec."), which in fact shows that Nats Emperor knew at the time it filed its complaint that Brobulk and Hawknet, as a matter of public record, have a separate corporate existence. Hawknet and Brobulk are both companies formed and existing in the United Kingdom. Brobulk was formed in 2000. Hawknet was apparently formed in 1989. Public records which were available and apparently accessed by the London solicitors for Nats Emperor, show the respective annual returns of Hawknet and Brobulk (Paulsson Dec. ¶¶ 4-13). Those returns include the names and addresses of their officers, directors and shareholders. It is clear from those records that Hawknet and Brobulk have different office addresses, shareholders, directors, and officers. Moreover, it is public information long posted on the internet and a matter of widespread

2

knowledge in the shipping industry that Brobulk is owned by one of the largest service providers in the shipping industry, the GAC group. Hawknet has no affiliation whatsoever to the GAC group or to Brobulk.

Despite the public availability of such information, Nats Emperor alleges, upon unspecified information and belief, without any facts to back up its allegations, that "HAWKNET is a wholly or partly owned subsidiary of Defendant BROBULK, or vice versa", that "BROBULK is a shell corporation through which Defendant HAWKNET conducts business and vice versa", that "HAWKNET has not separate independent identity from Defendant BROBULK and vice versa", that "Defendant HAWKNET is the alter ego of Defendant BROBULK because HAWKNET domonates and disregards BROBULK's corporate form to the extent that HAWKNET is actually carrying on the business and operations of BROBULK, as if they were its own, or vice versa", that "Defendants are affiliated companies such that Defendant BROBULK is now or will soon be holding assets belonging to Defendant HAWKNET, or vice versa."

The only connection between Hawknet and Brobulk consisted of arms' length transactions which were explained in writing to the English solicitors for Nats Emperor, four days after Nats Emperor had filed the complaint in the captioned action. Those solicitors, Waterson Hicks, had sent a fax on Friday, April 18, 2008, to Brobulk to the attention of the directors of Brobulk, identifying those directors by name. Clearly, Nats Emperor was familiar with the publicly available corporate records of Brobulk. In their fax, Waterson Hicks noted that Hawknet had filed for liquidation. Waterson Hicks asked Brobulk to place freights and moneys that Brobulk had received from the sub-charterer of the NATS EMPEROR in a separate account,

pending further instructions from Waterson Hicks. No claim was made by Waterson Hicks that Brobulk and Hawknet were alter egos of each other. On Monday, April 21, 2008, without waiting for a reply and in total disregard of the facts known to it, Nats Emperor filed its complaint, containing the conclusory allegations that Hawknet was the alter ego of Brobeck.

On April 25, 2008, Brobulk, who was not aware at that time of the action filed by Nats Emperor, replied through its solicitors, Winter Scott, that the sub-charterer of the vessel had paid the freight to Brobulk pursuant to a short term financing arrangement entered into between Brobulk and Hawknet, whereby Brobulk advanced the hires due to certain vessel owners, including Nats Emperor, on behalf of Hawknet. As part of this arrangement and in order to secure the advances made by Brobulk, Hawknet named Brobulk as the recipient of the freight in the sub-charter. Upon receipt of the freight, Brobulk deducted the moneys advanced on behalf of or directly to Hawknet and its agreed commission and paid the balance to Hawknet. Nats Emperor has continued this action and maintained the attachment of Brobulk's funds, despite its knowledge that Hawknet and Brobulk are separate and distinct entities.

# ARGUMENT

## POINT I

### PLAINTIFF HAS THE BURDEN TO SHOW WHY THE ATTACHMENT SHOULD NOT BE VACATED

Rule E(4)(f) entitles any person claiming an interest in property restrained pursuant to Process of Maritime Attachment and Garnishment "to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Rule E(4)(f).

The Second Circuit has held that "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E". Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Under Rule E(4)(f), the "burden is on plaintiff to make four basic showings":

> [A]n attachment should issue under Rule B "if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. (Footnote omitted).

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp.2d 275, 278 (S.D.N.Y. 2006) (*quoting* Aqua Stoli, 460 F.3d at 445). If the Plaintiff does not meet this burden, the Court must vacate the attachment.

5

## POINT II

### THERE ARE TWO TESTS TO DETERMINE WHETHER A PLAINTIFF HAS MADE A PRIMA FACIE CASE, AND NATS EMPEROR FAILS BOTH TESTS

In the present case, Brobulk maintains that Plaintiff has failed to show that it has a valid prima facie admiralty claim against it. There has been a split among the courts in this District concerning the standard to be applied in determining whether a plaintiff has a valid admiralty claim of alter ego.

One line of cases has held that a plaintiff at a post-attachment hearing must show that there are "reasonable grounds" for the attachment. Wajilam Exports, supra.; Williamson v. Recovery Limited Partnership, 2007 US Dist. Lexis 4438 *4-5 (S.D.N.Y. Jan. 16, 2007) ("The first issue under the Aqua Stoli standard is whether plaintiff has shown that it has a valid prima facie admiralty claim against the defendant. The standard most commonly applied in a Rule E(4)(f) analysis is that the plaintiff must demonstrate that "reasonable grounds" exist for the attachment) (vacating attachment as to some of the alleged alter egos); Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318, 322-23 (S.D.N.Y. 2006), overruled on other grounds by Aqua Stoli, 460 F.3d at 445 ("At a post-attachment hearing, a plaintiff asserting alter egos need not definitively establish domination and control, but must present enough evidence to convince the court that there are reasonable grounds for piercing the corporate veil") (vacating attachment as to one of the alleged alter egos); See Compania Sudamerica De Vapores S.A. v. Sinochem Tianjin Co., 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y April 4, 2007), 2007 AMC 1467 ("In assessing whether a plaintiff has a valid admiralty claim, courts apply the 'reasonable grounds'

6

test following Wajilam Exps.).

The standard of proof a plaintiff must meet under the "reasonable grounds" test in order to sustain an attachment based on an alter ego allegation was carefully reviewed in Wajilam Exports, at pages 279-80:

> The "reasonable grounds" standard involves review not only of the adequacy of the allegations in the complaint, but also of any evidence submitted by the parties. "When determining whether . . . reasonable grounds exist,' Supplemental Rule E does not restrict review to the adequacy of the allegations in the complaint.' A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing." Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006), quoting Linea Naviera DeCabotaje, C.A. v. Mar Caribe De Navegacion, C.A., 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001).
>
> \*   \*   \*
>
> Accordingly, courts have compared the showing required in a "reasonable grounds" analysis to the more familiar standard of probable cause. See, e.g., Amstar Corp. v. S/S Alexandros T. 664 F.2d 904, 912 (4th Cir. 1981) ("A shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing probable cause for the arrest"). The Supreme Court, interpreting the phrase "reasonable grounds" as used in a criminal statute, has said that "[t]he terms "probable cause" as used in the Fourth Amendment and 'reasonable grounds' ...are substantial equivalents of the same meaning." Draper v. United States, 358 U.S. 307, 311 (1959). Probable cause is less than a preponderance of the evidence; in the criminal context, it has been described as a "fair probability" that the asserted fact is true. Illinois v. Gates, 462 U.S. 213, 214 (1983). With this standard in mind, courts in Rule E(4)(f) hearings have emphasized that their conclusions are "merely holding that it is *likely*" that alleged facts are true. See North of England Protecting and Idem. Ass'n, 1999 WL 33116416, at \*3.

A second line of cases, which is now the apparent majority, have declined to follow the "reasonable grounds" standard. Although the Second Circuit has not opined on what plaintiff must show to make out a prima facie admiralty claim, according to the courts rejecting this standard, Aqua Stoli "implies" or "strongly suggests" that the "reasonable grounds"

7

standard is no longer proper. Tide Line Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. Lexis 95870 *40, 2007 AMC 252 (S.D.N.Y. 2006) ("Although Aqua Stoli does not explicitly address this 'probable cause' or 'reasonable grounds' standard, the decision ...implies that the 'probable cause' or reasonable grounds' application is improper"); Hawknet Ltd. v. Overseas Shipping Agencies, 2008 U.S. Dist. LEXIS 35542 *4 (S.D.N.Y. April 29, 2008) ("we read Aqua Stoli as 'strongly suggest[ing] that courts should limit their Rule B inquiries to whether the plaintiff has stated a prima facie basis for the maritime attachment at issue.'"); Dolco Inv., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261("The majority of courts in this district to have considered the issue have interpreted Aqua Stoli to require the application of a prima facie standard when considering the adequacy of the claim"; citing cases); But see, Wajilam Exports 475 F.Supp.2d at 279 n.5 ("The Circuit in Aqua Stoli had no occasion to clarify the 'valid prima facie admiralty claim' inquiry or the reasonable grounds standard").

Under this other standard, the plaintiff must show that it has alleged a legally sufficient prima facie claim of alter ego in its complaint with particularity to maintain the attachment. Hawknet Ltd. v. Overseas Shipping Agencies, 2008 U.S. Dist. LEXIS 35542 *14 ("More important than these generalized statements, plaintiff has made particularized allegations. In discussing them, we also cite the supporting evidence plaintiff has provided. We do so for the sake of completeness but not to express a view as to the weight of the evidence at this point.") "The court must not decide, at this point whether [plaintiff] has advanced sufficient evidence to support [its alter ego claim] or whether [defendant] has rebutted such evidence through its own submissions". Id. At 11. Although the courts under this prima facie standard are not to weigh the evidence submitted by the parties it is clear from the decisions that in almost every case they

8

have considered the evidence submitted by the parties during the Rule E (4) hearing and have examined the allegations in the complaint in light of that evidence.  E.g. Hawknet Ltd., supra, Brave Bulk Transp. v. Spot on Shipping, 2007 U.S. Dist. LEXIS 69751 *3(S.D.N.Y Sept. 14, 2007) .[1]

It must be emphasized, the standard by which the allegations of the complaint are examined to determine whether a prima facie claim of alter ego has been sufficiently stated is rigorous and requires a particularized factual showing under Rule E (2) (a).  Mere conclusory allegations of alter ego are not enough.

Finally, there are a number of cases where the courts have not chosen between the two standards, or while noting that the prima facie allegation standard has now been adopted by most of the courts, have essentially applied both standards. Fesco Ocean Management Ltd. V. High Seas Shipping, 2007 U.S. Dist. Lexis 19970(March 12, 2007) ("we hold that FESCO has adequately plead its theory that United is an alter ego of High Seas and that FESCO has provided reasonable grounds to support its theory as well.  Accordingly, we need not choose between the ...standards in addressing United's motion"); Secil Maritma v. Malev Shipping, No. 06 Civ. 6345 (S.D.N.Y. Oct. 10, 2006, hearing transcript at 10) (court declined to choose between the standards in upholding the attachment finding "a legally sufficient claim that is stated' and "there

---

[1] In SPL Shipping v. Gujarat Cheminex Ltd., 2007 U.S. Dist. Lexis 18562 *3 (March 15, 2007), however, the court does not appear to have considered the evidence submitted at the hearing concerning the alter ego allegations.  The court was obviously troubled by the fact that a payment was made by the alleged alter ego on behalf of Gujurat "to circumvent" a maritime attachment of this court issued in another action against Gujurat.  In any event, this decision insofar as it did not actually consider the evidence submitted at the hearing is in a distinct minority.

is substantially sufficient support set out in the papers"); See <u>Wilhelmsen Premier Marine Fuels AS v. UBS Provedores PTY Ltd.</u>, 519 F.Supp.2d 399, 410(S.D.N.Y. 2007) (adopting the prima facie standard, but discussing and implying that the reasonable ground standard would also be met ).

It is respectfully submitted that the requirement that the plaintiff meet the minimum standard of reasonable grounds is the better of the two standards.

Maritime attachment is a unique and drastic remedy. The law in this and other Circuits establishes that the Rule E(4)(f) hearing should be a meaningful hearing that guarantees due process to the defendant whose property has been attached. The Second Circuit in <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002) stated as follows, at page 272:

> The 1985 amendments to the Admiralty Rules also included an addition to Rule E, which contains general provisions for practice in actions in rem and quasi in rem. New Rule E(4)(f) provides: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." The Advisory Committee notes explain that "Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings."

As explained by the Court in <u>Winter Storm</u>, Rule E applies to actions in rem, that is, involving the arrest of property under Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, and quasi in rem actions involving the attachment of property under Rule B. In <u>Salazar v. Atlantic Sun</u>, 881 F.2d 73 (3rd Cir. 1989), the "reasonable grounds" standard was held appropriate at the Rule E(4)(f) hearing, involving a vessel arrest under Rule C. In

10

Amstar Corporation v. S/S ALEXANDROS T, 664 F.2d 904 (4th Cir. 1981) it was held that upon the arrest of a vessel pursuant to Rule C, "A shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing <u>probable cause</u> "at a meaningful time and in a meaningful manner" (citing and quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965).

Recognizing the above, the Courts in this Circuit have almost uniformly looked at the underlying evidence supporting or refuting allegations of alter ego, even when adhering to the rule that the issue is one of the sufficiency of the pleadings, reflecting their uneasiness with the implication that the extraordinary remedy of maritime attachment can be maintained against someone who is not a party to the contract sued upon simply by artful pleading, despite facts showing that the allegations made by the plaintiff are demonstrably false.

In any event Brobulk submits that Plaintiff has failed to present a valid prima facie admiralty claim under either standard as demonstrated below.

**A. Plaintiff Cannot Demonstrate Reasonable Grounds for Its Alter Ego Claim**

The facts shown in the Paulsson Declaration show that Hawknet and Brobulk are wholly separate corporations with different offices, shareholders, directors and officers. Brobulk is part of large group of companies with thousands of employees throughout the world. The shares of Hawknet are owned by one individual, Guy Walker, who has no connection to Brobulk as officer, director or shareholder. The sole connection between the two companies consists of arms' length loan transactions. The allegations made upon information and belief by Nats Emperor in its complaint that Hawknet and Brobulk are alter egos of each other are unsupported by any facts or "information". Indeed, it is clear from the publicly available information that the

11

only reasonable belief that Nats Emperor could have is that the allegations of alter ego are false. Therefore plaintiff cannot meet the reasonable grounds test for there is simply no basis for holding that the allegation that the two companies are alter egos of each other is "likely" to be true. Supra, at p. 7.

B.   **Plaintiff Has Failed To Sufficiently Allege a Prima Facie Alter Ego Claim Against Brobulk**

The complaint alleges an alter ego claim against Brobulk. The allegations contained therein however do not satisfy the pleading requirements of even Rule 8(a) of the Federal Rules of Civil Procedure, as recently interpreted by the Supreme Court in Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955, 167 L. Ed. 147 (2007), much less the more stringent test to be met under Rule E (2) (a).

An alter ego claim requires a finding that a corporation was used by another to "perpetuate a fraud" or was "so dominated" and its corporate form "disregarded" such that it primarily transacts the other's business. Wajilam Exports, 475 F.Supp.2d at 282 ("Veil-piercing is appropriate in two circumstances: where the parent used the corporate entity to perpetuate a fraud, or where the parent has so dominated and disregarded the corporate entity's form that the entity primarily transacted the parent's business rather than its own"). Under that standard "[a]ctual domination, rather than the opportunity to exercise control, must be shown". Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d at 323(*quoting* De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996). In the present case, there are no allegations of fraud.

12

The Second Circuit in <u>MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC</u>, 268 F.3d 58, 63 (2d Cir. 2001) has identified several factors relevant to the issue of whether one company is the alter ego of another:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debt by the dominating entity, and (10) intermingling of property between entities.

In <u>Twombly</u> the Supreme Court held with regard to Rule 8 (a) in an antitrust case, that a complaint must allege enough "facts" to show that a claim is "plausible" and not merely conceivable. 127 S. Ct. at 1966. <u>Goldstein v. Pataki</u>, 516 F.3d 50 (2d Cir. 2008) ( "at a bare minimum" the operative standard requires the 'plaintiff [to] provide the grounds upon which his claims rests through factual allegations sufficient to raise a right to relief above the speculative level'"). Indeed, the <u>Twombly</u> Court made a distinction between facts that were merely "consistent" with wrongful conduct and facts that would be "suggestive" enough to render the alleged conduct plausible. In particular, the Court upheld dismissal of a complaint alleging an antitrust conspiracy, despite "stray averments" that defendants had entered into an unlawful agreement, explaining that the plaintiff had alleged "merely legal conclusions." <u>Id</u>. at 1970.

A complaint, such as in the present case, which consists of conclusory allegations unsupported by factual assertions fails even under the liberal pleading requirements of Rule 8(a) as interpreted by <u>Twombly</u>. <u>Shenango Inc. v. American Coal Sales Co.</u>, 2007 U.S. Dist. LEXIS

13

58110, *4 (W.D.Pa. Aug. 9, 2007) ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in Twombly, such averments cannot support a veil-piercing claim").

In addition, Rule E contains a heightened pleading requirement when compared to Rule 8 (a). Rule E(2)(a), directs that a complaint in a case involving attachment must "state the circumstances from which the claim arises with such particularity that the defendant . . . will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P., Adm. Supp. R. E(2)(a). "This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings." Dolco Invs., Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d at 272 (quoting Ports Auth. v. Barge Katy-B, 427 F.3d 93, 105 (1st Cir. 2005); Brave Bulk Transp. v. Spot on Shipping, 2007 U.S. Dist. LEXIS 69751 *3(S.D.N.Y September 14, 2007 ) ("a Rule B attachment on an alleged alter ego's property cannot be sustained in the absence of a showing of at least some specific facts demonstrating the type of corporate domination and control sufficient to pierce the corporate veil, ... I must lift the attachment as against ZSL on that basis alone").

When applying this standard to the allegation in Plaintiff's Complaint, it is clear that Plaintiff has failed to state an alter ego claim with the particularity required. Most of Plaintiff's allegations are conclusory allegations of alter ego without any supporting factual basis. In fact, many of Plaintiff's alter ego allegations are blatantly untrue as a matter of public record and thus should never have been made. For example, Plaintiff's allegations at paragraphs 6 and

14

16 of its Complaint that Hawknet is a "wholly or partly owned subsidiary" of Brobulk, "or vice versa" are flatly untrue. As both Brobulk and Hawknet are United Kingdom companies, the ownership and management of these corporations, which are totally separate and unrelated, are a matter of public record. As Plaintiff has solicitors in London working on its claim against Hawknet, this information was readily ascertainable and it is therefore inexcusable that such allegations were made in the present action. Similarly, Plaintiff's allegation in paragraph 9 of the Complaint that the defendant corporations have no "separate, independent identity" is equally false as shown by these public filings. Needless to say, there is no factual basis set forth in the Complaint to support any of these allegations.

Moreover, the unsubstantiated allegation that "Brobulk is a shell corporation" somehow used by Hawknet is patently absurd as Brobulk is known in the shipping business to be part of the GAC group of companies (Verified Complaint, ¶ 8). The GAC group is one of the largest privately owned shipping and transport providers in the world with thousands of employees and hundreds of offices. This information was also readily available to Plaintiff on the Internet.

In several paragraphs of the Complaint, Plaintiff simply recites the legal elements of alter ego without any factual basis whatsoever. Plaintiff alleges, for example, that the corporations are alter egos because Hawknet "dominates and disregards Brobulk's corporate form (Verified Complaint, ¶10) and that Hawknet uses Brobulk as a "conduit" to pay its debts and obligations (Id. ¶ 7). Such conclusory allegations would not be acceptable under Rule 8 (a) and certainly prove nothing under the higher standard of Rule E (2).

15

The only specific factual allegations in the Complaint concern two freight payments received by Brobulk from subcharterers of the Vessel. These payments are not an indicia of alter ego, but were made pursuant to a short term financing arrangement between Hawknet and Brobulk as shown in the Paulsson Declaration. Essentially, Brobulk advanced a few hire payments to owners of vessels on charter to Hawknet, including Plaintiff's Vessel, and in return Brobulk was named as the recipient of freights under the sub-charter. Upon receipt of the freight Brobulk deducted the monies advanced, plus its commission, and remitted the balance to Hawknet. Thus, these arms length transactions shows the complaint to be entirely unsubstantiated.

Under the case law, Plaintiff has failed to carry its burden of pleading a prima facie maritime to support an attachment of Brobulk. Dolco Invs., Ltd., 486 F. Supp. 2d at 272 ("Dolco fails to meet this burden because it has not included any factual allegations that GML exercised complete domination over Moonriver. Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco "from time to time." ....Under the heightened standard of Fed.R.Civ.P.Supp.Rule E(2) (a), more is required") ; Brave Bulk Transp., supra, reaffirmed on reconsideration, 2007 U.S. Dist. LEXIS 81137 (S.D.N.Y., Oct. 30, 2007); Hawknet Ltd. v. Overseas Shipping Agencies, supra, (vacating attachment, but allowing amendment of complaint and a new attachment based on specific factual allegations supported by evidence; "Plaintiff has provided particularized allegations that TOM and MOS use the same address, employ the same personnel and agents, are owned by members of the same family, and share assets"); Wilhelmsen Premier Marine Fuels AS v. UBS Provedores PTY Ltd., 519 F.Supp.2d at 411 (upholding attachment

16

where plaintiff made particularized alter ego allegations and submitted evidence showing the two companies had "common addresses, common telephone numbers, common principals, intermingled advertising and email addresses")

In Brave Bulk, the court vacated an attachment where the complaint contained conclusory allegations on information and belief, similar to Plaintiff's herein. 2007 U.S. Dist. LEXIS 69751 *2 ("The verified complaint alleges that ZSL has no separate or independent identity from Spot On, that the two corporations use their names interchangeably with a design to fraudulently avoid payment of just debts"). The court on reconsideration reaffirmed its decision to vacate the attachment, but allowed the plaintiff an opportunity to file an amended complaint in light of the proposed specific factual allegations and evidence submitted on the motion in support the alter ego claim. The court however made clear that such factual information should not have to wait for as motion to vacate, but should have been included in the original complaint. As the court stated 2007 U.S. Dist. LEXIS 81137 at *15-16:

> The allegations set forth above are sufficient for the Court to conclude that Brave Bulk has a good faith basis for alleging that ZSL is Spot On's alter ego. However, I agree with Chief Judge Wood that the place where those allegations should appear is in the complaint-- not in material submitted to the Court for the first time in opposition to a motion to vacate. The wholly conclusory allegations in the Amended Complaint are, upon reflection, simply insufficient. Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment could disrupt the commercial activities of entities whose links to the real defendant in interest are tenuous of non-existent. By including specific factual allegations that support "on information and belief" contentions in the complaint, the plaintiff's counsel subjects himself to Rule 11 sanctions should they prove erroneous. That is, it seems, a salutary result.

As shown above in the present case, not only are the allegations legally insufficient to support an alter ego claim, but many of the primary allegations are incorrect and as the truth was readily discoverable--there is also a question of good faith basis for same.

## CONCLUSION

For all the foregoing reasons, the order of attachment dated April 22, 2008 should be vacated and Brobulk's funds released.

Dated: New York, New York
      May 6, 2008

                      Respectfully submitted,

                      CARDILLO & CORBETT,
                      Attorneys for Defendant
                      BROBULK LIMITED

                      By: _____
                          Tulio R. Prieto (TP 8455)

                        29 Broadway, Suite 1710
                        New York, New York 10006
                        212-344-0464

Of Counsel
James P. Rau