UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NATS EMPEROR SHIPPING LIMITED,          :

                Plaintiff,    :    **DECLARATION IN ACCORDANCE WITH 28 U.S.C. § 1746**

                                :    08 Civ. 3763 (BSJ)
     V.
                                :

HAWKNET LIMITED and BROBULK           :
LIMITED,
                                :
              Defendants.
------------------------------x

     Urban Bror Hugo Paulsson, declares, under penalty of perjury, as follows:

     1.   I am the managing director of defendant, Brobulk Limited ("Brobulk") and submit this declaration in support of Brobulk's motion to vacate the attachment obtained by plaintiff, Nats Emperor Shipping Limited ("Nats Emperor") of its funds in transit through New York intermediary banks and the order directing the attachment of its funds.

     2.   Nats Emperor joined Brobulk as a defendant in this action by alleging that Brobulk and defendant Hawknet Limited ("Hawknet") are alter egos of each other. As will become apparent below, such allegation was made by Nats Emperor with full knowledge that it is false.

1

3. Brobulk is an established ship operator of ocean going vessels carrying dry cargo commodities. Brobulk was incorporated under the laws of England and Wales on March 23, 2000. A copy of the Memorandum and Articles of Association of Brobulk are attached hereto as Exhibit A.

4. It is widespread knowledge in the shipping industry and publicly available information that Brobulk is part of the GAC group of companies. Such information was available and posted on the Internet well prior to April 21, 2008, the date of the filing of the complaint by Nats Emperor. See, http://www.gacworld.com/templates/gac Template.aspx?id=46752 GAC group serves the shipping, logistics, marine and related industries on all continents. The GAC group has more than 8,000 employees around the world, with close to 300 offices, including regional offices in Houston, Cairo, Singapore and Dubai where it has its corporate headquarters. The GAC group is one of the largest privately owned shipping and transport service provider in the world.

5. Hawknet is not and has never been part of Brobulk or of the GAC group and has never been owned in whole or in part, or controlled by any officer, director or officer of Brobulk or of any company in the GAC group. Brobulk, in turn, has never

been owned, or controlled in whole or in part, by Hawknet or by anyone connected with Hawknet; nor has any company in the GAC group had any such affiliation with Hawknet or with anyone connected with Hawknet. Brobulk and Hawknet have never shared offices and have always had different places of business. They have never had common officers, directors or shareholders.

6.  Brobulk has its offices at Walcot House, West Drive, Virginia Water, Surrey GU24 4ND, United Kingdom. Attached hereto as Exhibit B is a copy of Brobulk's Annual Return filed with Companies House, which acts as the registrar of companies in the United Kingdom listing the details of Brobulk's officers, including their business address and the name and address of its sole shareholder. This is publicly available information which was available to Nats Emperor and to Waterson Hicks, the London solicitors for Nats Emperor, prior to the filing of the complaint in this action.

7.  The corporate information regarding Hawknet, a company formed under the laws of the United Kingdom, was also available to Nats Emperor from Companies House prior to its filing the complaint. That information included Hawknet's address, the names and addresses of its officers and directors, the name and address of its two shareholders and its financial statements for

the year ended March 31, 2007. An examination of those documents shows that the address, officers, directors and shareholders of Hawknet and Brobulk are all different. A copy of the corporate information obtained for Hawknet from Companies House is attached hereto as Exhibit C.

8. The only transactions between Hawknet and Brobulk have been at arms' length. They involved short-term financing provided by Brobulk to Hawknet for a fee. The structure of each of the transactions was as follows:

(a) Brobulk agreed with Hawknet to pay certain installments of hire due from Hawknet to two shipowners. Under separate transactions, Brobulk paid two instalments of hire for the vessel TOLMI and one for the NATS EMPEROR, the ship owned by the plaintiff. Brobulk also loaned $200,000.00 directly to Hawknet to provide it with the cash necessary to make a payment for bunkers.

(b) Hawknet named Brobulk as the receiver of freight in sub-charters with respect to both the TOLMI and the NATS EMPEROR.

(c) When Brobulk received the freight from the sub-charterers, it deducted the hire it had paid, the loan it had made directly to Hawknet, plus its commission, and paid the

balance pursuant to Hawknet's instructions.

9. These transactions were arranged through a third party, a mutual acquaintance of the managing director of Hawknet, Guy Walker, and myself. That mutual acquaintance is Simon Rye of Agriprem Holdings Ltd ("Agriprem"). Agriprem also received a commission paid by Brobulk in connection with these transactions. The transactions were entered into by Brobulk with the understanding that Hawknet was undergoing temporary cash flow problems that would be alleviated by these secured loan transactions. At the time these transactions were entered into, I was not aware that Hawknet was or would become insolvent and would subsequently be seeking relief from its creditors.

10. Hawknet and Brobulk had previously entered into a similar transaction in November, 2007. The terms of that transaction were set forth in writing in a message dated November 6, 2007, from Guy Walker of Hawknet to me, with copy to Simon Rye. A copy of that message is attached hereto as Exhibit D. The parties never signed a formal agreement, but performed in accordance with the terms of the agreement set forth in Exhibit D. The parties also never signed a formal agreement with respect to the transactions involving the TOLMI and the NATS EMPEROR, but again performed in accordance with the terms

5

set forth in that original agreement with logical alterations to conform to the facts of these new transactions.

11. I understand that on or about April 15, 2008, Hawknet was placed into voluntary liquidation. On April 18, 2008, I received a fax from a firm of London solicitors, Waterson Hicks, in which they indicated that they were acting on behalf of Nats Emperor and in which they claimed that Hawknet was indebted to their clients, a copy of that fax is attached hereto as Exhibit E.

12. The fax was addressed to my attention and to the attention of the other directors of Brobulk, who are also officers of GAC. As I stated before, the fact that Brobulk is part of the GAC group is widely known in the shipping industry and the names of its directors are public information. Apparently aware of the separate and distinct existence of Hawknet and Brobulk, Waterson Hicks questioned the freight payment made by the sub-charterers to Brobulk and claimed that the freight payment could be treated as a voidable preferential payment on the part of Hawknet to Brobulk. Waterson Hicks asked Brobulk to hold the freight payment received from the sub-charterers of the NATS EMPEROR, as well as another payment received by Brobulk from the sub-charterer, in a separate

interest bearing account, claiming that their clients had a lien over such amounts, which they would seek to enforce in the insolvency proceeding commenced by Hawknet. No claim was made by Waterson Hicks that the two companies, Hawknet and Brobulk were alter egos of each other, because they knew such claim was false.

13. By fax dated April 25, 2008, Brobulk's solicitors, Winter Scott responded to Waterson Hicks, explaining the loan transaction entered into by Hawknet and Brobulk and stating that after deducting its commission, Brobulk had paid the freight received from the sub-charterers to Hawknet, and that it was holding the additional payment by the sub-charterer in the amount of $67,977.78, pending a determination by Hawknet's liquidator as to its proper disposition. The fax by Winter Scott noted that a creditors' meeting with respect to Hawknet's liquidation is scheduled for May 6, 2008 in London. A copy of the fax sent by Winter Scott to Waterson Hicks is attached hereto as Exhibit F.

14. Waterson Hicks replied to Winter Scott's fax by asking for additional details concerning the short term financing arrangement between Hawknet and Brobulk, as well as for the identity of the liquidator for Hawknet. Winter Scott replied that all the details of the financing arrangement would be

disclosed to the liquidator, and provided Waterson Hicks with the name and details of the liquidator. A copy of that exchange is attached hereto as Exhibits G and H.

15. It is respectfully submitted, therefore, that Nats Emperor obtained an ex parte order of attachment from this Court against the assets of Brobulk under the false claim that Brobulk and Hawknet are alter egos of each other. Nats Emperor has continued to maintain the attachment of Brobulk's assets, knowing that its allegations of alter ego are false and having notice of the exact nature of the transactions between Brobulk and Hawknet.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in London, England, on the 6th day of April, 2008.

_____
Urban Bror Hugo Paulsson