UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

NATS EMPEROR SHIPPING LIMITED,　　　　:

　　　　　　　　　　Plaintiff,　　　:　　**DECLARATION IN
　　　　　　　　　　　　　　　　　　　　　　ACCORDANCE WITH**
　　　　　　　　　　　　　　　　　:　　**28 U.S.C. § 1746**
　　　　V.　　　　　　　　　　　　　　　　08 Civ. 3763 (BSJ)

　　　　　　　　　　　　　　　　　:

HAWKNET LIMITED and BROBULK　　　　:
LIMITED,
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.
----------------------------------x

　　　　　Urban Bror Hugo Paulsson, declares, under penalty of

perjury, as follows:

　　　　　1.　　I am the managing director of defendant, Brobulk

Limited ("Brobulk") and submit this declaration in support of

Brobulk's motion to vacate the attachment obtained by plaintiff,

Nats Emperor Shipping Limited ("Nats Emperor") of its funds in

transit through New York intermediary banks and the order

directing the attachment of its funds.

　　　　　2.　　Nats Emperor joined Brobulk as a defendant in this

action by alleging that Brobulk and defendant Hawknet Limited

("Hawknet") are alter egos of each other.　As will become

apparent below, such allegation was made by Nats Emperor with

full knowledge that it is false.

1

3.    Brobulk is an established ship operator of ocean going vessels carrying dry cargo commodities.  Brobulk was incorporated under the laws of England and Wales on March 23, 2000.  A copy of the Memorandum and Articles of Association of Brobulk are attached hereto as Exhibit A.

4.    It is widespread knowledge in the shipping industry and publicly available information that Brobulk is part of the GAC group of companies.  Such information was available and posted on the Internet well prior to April 21, 2008, the date of the filing of the complaint by Nats Emperor.  See, http://www.gacworld.com/templates/gac_Template.aspx?id=46752 GAC group serves the shipping, logistics, marine and related industries on all continents.  The GAC group has more than 8,000 employees around the world, with close to 300 offices, including regional offices in Houston, Cairo, Singapore and Dubai where it has its corporate headquarters.   The GAC group is one of the largest privately owned shipping and transport service provider in the world.

5.    Hawknet is not and has never been part of Brobulk or of the GAC group and has never been owned in whole or in part, or controlled by any officer, director or officer of Brobulk or of any company in the GAC group.  Brobulk, in turn, has never

been owned, or controlled in whole or in part, by Hawknet or by anyone connected with Hawknet; nor has any company in the GAC group had any such affiliation with Hawknet or with anyone connected with Hawknet. Brobulk and Hawknet have never shared offices and have always had different places of business. They have never had common officers, directors or shareholders.

6.    Brobulk has its offices at Walcot House, West Drive, Virginia Water, Surrey GU24 4ND, United Kingdom. Attached hereto as Exhibit B is a copy of Brobulk's Annual Return filed with Companies House, which acts as the registrar of companies in the United Kingdom listing the details of Brobulk's officers, including their business address and the name and address of its sole shareholder. This is publicly available information which was available to Nats Emperor and to Waterson Hicks, the London solicitors for Nats Emperor, prior to the filing of the complaint in this action.

7.    The corporate information regarding Hawknet, a company formed under the laws of the United Kingdom, was also available to Nats Emperor from Companies House prior to its filing the complaint. That information included Hawknet's address, the names and addresses of its officers and directors, the name and address of its two shareholders and its financial statements for

the year ended March 31, 2007.  An examination of those documents shows that the address, officers, directors and shareholders of Hawknet and Brobulk are all different.  A copy of the corporate information obtained for Hawknet from Companies House is attached hereto as Exhibit C.

8.    The only transactions between Hawknet and Brobulk have been at arms' length.  They involved short-term financing provided by Brobulk to Hawknet for a fee. The structure of each of the transactions was as follows:

(a)    Brobulk agreed with Hawknet to pay certain installments of hire due from Hawknet to two shipowners. Under separate transactions, Brobulk paid two instalments of hire for the vessel TOLMI and one for the NATS EMPEROR, the ship owned by the plaintiff.  Brobulk also loaned $200,000.00 directly to Hawknet to provide it with the cash necessary to make a payment for bunkers.

(b)    Hawknet named Brobulk as the receiver of freight in sub-charters with respect to both the TOLMI and the NATS EMPEROR.

(c)    When Brobulk received the freight from the sub-charterers, it deducted the hire it had paid, the loan it had made directly to Hawknet, plus its commission, and paid the

4

balance pursuant to Hawknet's instructions.

9.    These transactions were arranged through a third party, a mutual acquaintance of the managing director of Hawknet, Guy Walker, and myself.  That mutual acquaintance is Simon Rye of Agriprem Holdings Ltd ("Agriprem").  Agriprem also received a commission paid by Brobulk in connection with these transactions.  The transactions were entered into by Brobulk with the understanding that Hawknet was undergoing temporary cash flow problems that would be alleviated by these secured loan transactions.  At the time these transactions were entered into, I was not aware that Hawknet was or would become insolvent and would subsequently be seeking relief from its creditors.

10.    Hawknet and Brobulk had previously entered into a similar transaction in November, 2007.  The terms of that transaction were set forth in writing in a message dated November 6, 2007, from Guy Walker of Hawknet to me, with copy to Simon Rye.  A copy of that message is attached hereto as Exhibit D.  The parties never signed a formal agreement, but performed in accordance with the terms of the agreement set forth in Exhibit D.  The parties also never signed a formal agreement with respect to the transactions involving the TOLMI and the NATS EMPEROR, but again performed in accordance with the terms

set forth in that original agreement with logical alterations to conform to the facts of these new transactions.

11.    I understand that on or about April 15, 2008, Hawknet was placed into voluntary liquidation.  On April 18, 2008, I received a fax from a firm of London solicitors, Waterson Hicks, in which they indicated that they were acting on behalf of Nats Emperor and in which they claimed that Hawknet was indebted to their clients, a copy of that fax is attached hereto as Exhibit E.

12.    The fax was addressed to my attention and to the attention of the other directors of Brobulk, who are also officers of GAC. As I stated before, the fact that Brobulk is part of the GAC group is widely known in the shipping industry and the names of its directors are public information. Apparently aware of the separate and distinct existence of Hawknet and Brobulk, Waterson Hicks questioned the freight payment made by the sub-charterers to Brobulk and claimed that the freight payment could be treated as a voidable preferential payment on the part of Hawknet to Brobulk.  Waterson Hicks asked Brobulk to hold the freight payment received from the sub-charterers of the NATS EMPEROR, as well as another payment received by Brobulk from the sub-charterer, in a separate

interest bearing account, claiming that their clients had a lien
over such amounts, which they would seek to enforce in the
insolvency proceeding commenced by Hawknet.  No claim was made
by Waterson Hicks that the two companies, Hawknet and Brobulk
were alter egos of each other, because they knew such claim was
false.

13.  By fax dated April 25, 2008, Brobulk's solicitors,
Winter Scott responded to Waterson Hicks, explaining the loan
transaction entered into by Hawknet and Brobulk and stating that
after deducting its commission, Brobulk had paid the freight
received from the sub-charterers to Hawknet, and that it was
holding the additional payment by the sub-charterer in the
amount of $67,977.78, pending a determination by Hawknet's
liquidator as to its proper disposition.  The fax by Winter
Scott noted that a creditors' meeting with respect to Hawknet's
liquidation is scheduled for May 6, 2008 in London.  A copy of
the fax sent by Winter Scott to Waterson Hicks is attached
hereto as Exhibit F.

14.  Waterson Hicks replied to Winter Scott's fax by asking
for additional details concerning the short term financing
arrangement between Hawknet and Brobulk, as well as for the
identity of the liquidator for Hawknet.  Winter Scott replied
that all the details of the financing arrangement would be

7

disclosed to the liquidator, and provided Waterson Hicks with the name and details of the liquidator.  A copy of that exchange is attached hereto as Exhibits G and H.

15.  It is respectfully submitted, therefore, that Nats Emperor obtained an ex parte order of attachment from this Court against the assets of Brobulk under the false claim that Brobulk and Hawknet are alter egos of each other.  Nats Emperor has continued to maintain the attachment of Brobulk's assets, knowing that its allegations of alter ego are false and having notice of the exact nature of the transactions between Brobulk and Hawknet.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in London, England, on the 6th day of April, 2008.

_____
Urban Bror Hugo Paulsson

# EXHIBIT

# A

*Memorandum*

*&*

*Articles of Association of:*

# BROBULK LIMTED

*A COMPANY LIMITED BY SHARES*

*Incorporated: 23rd March 2000*

*Registered Number: 3954644*



## SERVICES U.K. LIMITED

City Cloisters,  188/196 Old Street,  London  EC1V 9FR
Telephone  020 7490 3777
Facsimile  020 7490 3888
e-mail Cdfuk@btinternet.com

The Companies Act 1985

COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION

OF

BROBULK LIMITED

1. The name of the Company is "BROBULK LIMITED".*

2. The registered office of the Company will be situate in England.

3. The objects for which the Company is established are:-

(a)

(i) To carry on all or any of the businesses of ship enterprises, travel agents, storers carriers, conveyors and transporters of baggage, freight cargo, mails and passengers whether by air, sea, road or rail, caterers, suppliers of food and meals and general restaurateurs, postal and general, contractors, manufacturers, equipers, repairers, cleaners, hirers and suppliers of all means of transport and their constituent parts or materials and as oil and fuel dealers, merchants, importers and exporters in any or all the branches or departments of any such business.

(ii) To acquire, charter, lease, take or let on hire, operate, use, employ or turn to account, build, equip, service, repair, maintain, supply and deal in ships, helicopters, aircraft, airships, vessels, vehicles and craft of every description and parts and accessories of all kinds for any of the same.

(iii) To carry on all or any of the businesses of consultants, advisers and suppliers of management, personnel and training services, whether generally or for the purposes of or in connection with one or more of the types of business or activity which the Company has power to carry on, and to provide training and educational courses, instruction and materials, of every description, for employees of the Company and for other persons.

(iv) To carry on all or any of the businesses of carriers by air, sea, land or otherwise, and of freight forwarding, and to provide on such terms as the directors may consider appropriate all equipment, facilities and services necessary for or ancillary to the transport by whatever means, and whether for hire or reward or otherwise, of passengers and freight.

(v) To design, develop, construct, equip, maintain, operate and manage storage facilities (including underground storage facilities), warehouses, depots, offices and other buildings, transport facilities, roads, railways, structures, installations and facilities of all kinds, whether for the purposes of the Company or for sale or hire to, or in return for any consideration from, any person, and to

purchase or otherwise acquire, lease, charter and take or let on hire any of the same.

(vi)  To operate any concession granted by any other Government agency or agencies or any body or bodies, public or private for the handling, refuelling and servicing of aircraft and any other form of transport operating into and out of and between any airport, port garage, railway or freight terminal and to provide a service for the inspection, documentation and despatch of passengers, their luggage and cargo by air, sea, road or rail.**

(b)    To deal generally with goods, products and materials of every description required for any business carried on by the Company acting as distributors, dealers, wholesalers, retailers, importers, exporters or otherwise, and to assemble, process, buy, sell, exchange, hire, hire out, repair, service, maintain, alter, improve, manipulate, prepare for market and otherwise deal with them; to demonstrate, contract, advertise, finance, insure and underwrite in relation thereto, and to do all or any of the above acting as principals, agents, trustees, lessors, lessees or otherwise, either in the United Kingdom or elsewhere.

(c)    To carry on any other business of any description which may seem to the Company capable of being advantageously carried on in connection with or ancillary to the objects of the Company or calculated directly or indirectly to enhance their value or render them more profitable.

(d)    To purchase, sell, exchange, improve, mortgage, charge, rent, let on lease, hire, surrender, license, accept surrenders of, and otherwise acquire and deal with any freehold, leasehold or other property, chattels and effects, erect, pull down, repair, alter, develop or otherwise deal with any building or buildings and adapt the same for the purpose of the Company's business.

(e)    To purchase or otherwise acquire all or any part of the business or assets of any person, firm or Company, carrying on or formed to carry on any business which this Company is authorised to carry on or possessed of property suitable to the purposes of this Company, and to pay cash or to issue any shares, stocks, debentures or debenture stock of this Company as the consideration for such purchase or acquisition and to undertake any liabilities or obligations relating to the business or property so purchased or acquired.

(f)    To apply for, purchase or otherwise acquire any patents, licences or concessions which may be capable of being dealt with by the Company, or be deemed to benefit the Company and to sell, license, lease or grant rights thereto.

(g)    To sell, let, license, develop or otherwise deal with the undertaking, or all or any part of the property assets or rights of the Company upon such terms as the Company may approve, with power to accept shares, debentures or securities of, or interests in, or guarantees by, any other Company.

(h)    To invest and deal with the monies of the Company not immediately required for the purposes of the Company in such shares or upon such securities and subject to such conditions as may seem desirable.

(i)   To lend and advance money, give credit or guarantees, act as surety to such persons, firms or Companies, upon such terms and with or without security and subject to such conditions as may seem desirable.

(j)   To guarantee the payment of any debentures, debenture stock, bonds, mortgages, charges, obligations, interest, dividends, securities, monies or shares or the performance of contracts or engagements of any other Company or person and to give indemnities and guarantees of all kinds and to enter into partnership or any joint purse arrangement with any person, persons, firm or Company, having for its objects similar objects to those of this Company or any of them.

(k)   To borrow or raise money in such manner as the Company shall think fit, the borrowing powers of the Company to be unlimited, and in particular, by the issue of debentures or debenture stock, charged upon all or any of the Company's property, both present and future, including its uncalled capital, and to re-issue any debentures at any time paid off.

(l)   To draw, make, accept, endorse, discount, execute and issue promissory notes, bills of exchange, debentures, warrants, and other negotiable documents.

(m)   To purchase, subscribe for, or otherwise acquire and hold shares, stocks or other interests in, or obligations of any other Company or corporation.

(n)   To remunerate any person, firm or Company for services rendered or to be rendered in placing or assisting to place any of the shares in the Company's capital or any debentures, debenture stock or other securities of the Company or in or about the formation or promotion of the Company or the conduct of its business.

(o)   To pay out of the funds of the Company all costs and expenses of or incidental to the formation and registration of the Company and the issue of its capital and debentures including brokerage and commission.

(p)   To promote or aid in the promotion of any Company or Companies for the purpose of acquiring all or any of the property rights and liabilities of the Company or for any other purpose which may seem directly or indirectly calculated to advance the interests of this Company.

(q)   To make payments towards insurance and to support and subscribe to any charitable or public object and any institution, society, club or association which may in any way benefit the Company or its employees and to give pensions, gratuities or charitable aid  or to establish and support or assist in the establishment and support of funds and trusts calculated to benefit directors or ex-directors, employees or ex-employees of the Company or their wives, children or other relatives or dependants.

(r)   To remunerate the Directors of the Company in any manner the Company may think fit.

(s)    To distribute any property of the Company in specie among the members.

(t)    To do all such other things as are incidental or conducive to the attainment of the above objects or any of them.

It is hereby expressly declared that the foregoing sub-clauses shall be construed independently of each other and none of the objects therein mentioned shall be deemed to be merely subsidiary to the objects contained in any other sub-clauses.

4.    The liability of the members is limited.

5.    The Share Capital of the Company is £1,000 divided into 1,000 Ordinary Shares of £1 each, with power to increase or to divide the shares in the capital for the time being, into different classes having such rights, privileges and advantages as to voting and otherwise, as the Articles of Association may from time to time prescribe.

* The Company name was changed by a Special resolution dated 20th April 2000 from LUONGO LIMITED.

** Clause 3a of the Memorandum of Association was amended by a Special resolution dated 20th April 2000.

We, the subscribers to this Memorandum of Association, wish to be formed into a Company pursuant to this memorandum; and we agree to take the numbers of shares shown opposite our respective names.

----------------------------------------------------------------

| Name and Address of Subscribers | Number of shares taken by Subscriber |
|---|---|
| CDF FORMATIONS LIMITED<br>CITY CLOISTERS<br>196 OLD STREET<br>LONDON<br>EC1V 9FR | ONE |

----------------------------------------------------------------

DATED The 16th day of March 2000.

Witness to the above signatures:-

JUSTINE HUBARD
CITY CLOISTERS
196 OLD STREET
LONDON
EC1V 9FR

The Companies Act 1985

COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

BROBULK LIMITED

PRELIMINARY

1.   The regulations contained in Table A in the Schedule to the Companies (Tables A to F) Regulations 1985 (such Table being hereinafter called "Table A") shall apply to the Company save in so far as they are excluded or varied hereby, that is to say, Clauses 3, 24, 64 and 99 of Table A shall not apply to the Company, and in addition to the remaining Clauses of Table A, as varied by these Articles, the following shall be the regulations of the Company.

2. The Company is a private Company and shall not offer to the public (whether for cash or otherwise) any shares in or debentures of the Company, or allot or agree to allot (whether for cash or otherwise) any shares in or debentures of the Company with a view to all or any of those shares or debentures being offered for sale to the public.

SHARES

3. The shares of the Company shall be under the control of the Directors who may allot, grant options over, or otherwise deal with or dispose of any relevant securities (as defined by Section 80 (2) of the Companies Act 1985) to such persons on such terms and in such manner as they think fit.

4. All relevant securities of the Company from time to time unissued shall come under the general authority conferred by Article 3 hereof for a period of not more than five years from the date of incorporation of the Company unless varied or revoked or renewed by the Company in General Meeting (but not for more that five years at a time) and the Directors under the general authority shall be entitled to make at any time before the expiry of such authority any offer or agreement which will or may require securities to be allotted after the expiry of such authority.

5. Section 89 (1) of the Companies Act 1985 shall be excluded from applying in relation to any allotment of Shares in the Company.

6. The Company shall have the power to issue Shares which are to be redeemed or are liable to be redeemed at the option of the Company or the Shareholder subject to the provisions within Part V of the Companies Act 1985 and on such terms as may be provided by the resolution of the Company creating such redeemable Shares.

7. The Company may purchase its own Shares (including any redeemable Shares) subject to the provision of Part V of the Companies Act 1985.

8. The Company may make a payment in respect of the redemption or purchase of any of its Shares otherwise than out of its distributable profits or the proceeds of a fresh issue of Shares subject to Sections 159 or 162 (as the case may be) of the Companies Act 1985.

<u>**LIEN**</u>

9. The Company shall have a first and paramount lien on every Share (whether or not it is a fully paid Share) for all monies (whether presently payable or not) called or payable at a fixed time or called in respect of that Share and all Shares registered in the name of any person indebted or under liability to the Company whether he shall be the sole registered holder Thereof or shall be one of two or more joint holders or his estate and clause 8 of Table A shall be modified accordingly.

<u>**GENERAL MEETINGS**</u>

10. Every notice convening a General Meeting shall comply with the provisions of Section 372 (3) of the Companies Act 1985, as to giving information to members in regard to their right to appoint proxies, and notices of any other communications relating to any General Meeting which any Member is entitled to receive shall be sent to the Directors and to the Auditors for the time being of the Company.

11. If a quorum is not present within half an hour from the time appointed for a General Meeting, the General Meeting will stand adjourned to the same day in the next week at the same time and place or such time and place as the Directors may determine and if at the adjourned General Meeting a quorum is not present within half an hour from the time appointed therefor such adjourned General Meeting shall be dissolved and Clause 41 in Table A shall not apply to the Company.

<u>**TRANSFER OF SHARES**</u>

12. The Directors may in their absolute discretion and without assigning any reason therefor decline to register the transfer of a Share whether or not it is a fully paid share.

<u>**DIRECTORS**</u>

13. The shareholding qualification for Directors may be fixed by the Company in General Meeting and unless and until so fixed no qualification shall be required but they shall be entitled to receive notice of and to attend and speak at any General Meeting of the Company.

14. There shall be at least one Director and unless otherwise determined by the Company in General Meeting there shall not be any other limitations as to the number of Directors and if at any there shall be only one Director of the Company, he or she, may act as sole Director exercising all the powers, authorities and discretions vested in the Directors.

15. The first Director or Directors of the Company shall be the person or persons named in the statement under Section 10 of the Companies Act 1985.

16. The Directors may exercise all the powers of the Company to borrow money without limit as to amount and upon such terms and in such manner as they think fit and to mortgage or charge its undertaking, property, and uncalled capital, or any part thereof, and to issue Debentures, Debenture Stock, and other Securities whether outright or as security for any debt, liability or obligation of the Company or of any third party.

17. Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director to act as Auditor to the Company.

18. A Director may vote as a Director in regard to any contract or arrangement in which he is interested or upon any matter arising thereout, and if he shall so vote, his vote shall be counted and he shall be reckoned in estimating a quorum when any such contract or arrangement is under consideration and Clause 94 of Table A shall be modified accordingly.

---

NAMES AND ADDRESSES OF SUBSCRIBERS

---

CDF FORMATIONS LIMITED
CITY CLOISTERS
196 OLD STREET
LONDON
EC1V 9FR

---

DATED The 16th day of March 2000.

WITNESS to the above signatures:-

JUSTINE HUBBARD
CITY CLOISTERS
196 OLD STREET
LONDON
EC1V 9FR



# CERTIFICATE OF INCORPORATION

## ON CHANGE OF NAME

### Company No.  3954644

The Registrar of Companies for England and Wales hereby certifies that

LUONGO LIMITED

having by special resolution changed its name, is now incorporated

under the name of

BROBULK LIMITED

Given at Companies House, Cardiff, the 8th May 2000



THE OFFICIAL SEAL OF THE
REGISTRAR OF COMPANIES



*C O M P A N I E S   H O U S E*

C006

# EXHIBIT

# B



Home |    Bookmark site |    Links

About us | Forms | Press Desk | Careers | Contact us    ● **Info and guidance on** 

Login | My Account | My Download | ▤ My Order          Please select ▾          Plea

## Order Confirmation

Thank you for your order which is now being processed. Please click the Help button for further instruction



Your order reference number is **505-153106-02850976** .

When you receive a confirmation email, your order will be available to download from the following link
http://www.companieshouse.gov.uk/webcheck/marshal?link=download

**Please print or note the details of this screen in case there is an error with your email.**

Note: if you are purchasing company information for purposes outside of your business use the link fro confirmation email Companies House will send you.

| Company no. | Company name | Product | Price |
|---|---|---|---|
| 03954644 | BROBULK LIMITED | RETURN MADE UP TO 23/03/08; FULL LIST OF MEMBERS | £1.00 |
| 03954644 | BROBULK LIMITED | Current Appointments Report | £1.00 |
| 03954644 | BROBULK LIMITED | ACCOUNTS FOR 'SMALL' CO. MADE UP TO 31/12/06 | £1.00 |
| | | **Total** | **£3.00** |

**If you require a receipt to this order please print a copy of your confirmation email.**

If you have any further queries with regard to your order please call 0870 33 33 636 or email enquiries@companieshouse.gov.uk

SEARCH FOR ANOTHER CC

COMPANY REGISTRATION NUMBER 3954644

# BROBULK LIMITED

**ABBREVIATED ACCOUNTS**

**31 DECEMBER 2006**



SATURDAY

*AR2O7NXI*

A33    17/03/2007    315

COMPANIES HOUSE

# BROBULK LIMITED

**ABBREVIATED ACCOUNTS**

**YEAR ENDED 31 DECEMBER 2006**

| CONTENTS | PAGES |
|---|---|
| Independent auditor's report to the company | 1 |
| Abbreviated balance sheet | 2 |
| Notes to the abbreviated accounts | 3 to 4 |

# BROBULK LIMITED

### INDEPENDENT AUDITOR'S REPORT TO BROBULK LIMITED

### UNDER SECTION 247B OF THE COMPANIES ACT 1985

We have examined the abbreviated accounts set out on pages 2 to 4, together with the financial statements of Brobulk Limited for the year ended 31 December 2006 prepared under Section 226 of the Companies Act 1985.

This report is made solely to the company, in accordance with Section 247B of the Companies Act 1985. Our work has been undertaken so that we might state to the company those matters we are required to state to it in a special auditor's report and for no other purpose. To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the company for our audit work, for this report, or for the opinions we have formed.

### RESPECTIVE RESPONSIBILITIES OF THE DIRECTORS AND THE AUDITOR

The directors are responsible for preparing the abbreviated accounts in accordance with Section 246 of the Companies Act 1985. It is our responsibility to form an independent opinion as to whether the company is entitled to deliver abbreviated accounts prepared in accordance with Sections 246(5) and (6) of the Act to the Registrar of Companies and whether the abbreviated accounts have been properly prepared in accordance with those provisions and to report our opinion to you.

### BASIS OF OPINION

We conducted our work in accordance with Bulletin 2006/3 "The special auditor's report on abbreviated accounts in the United Kingdom" issued by the Auditing Practices Board. In accordance with that Bulletin we have carried out the procedures we consider necessary to confirm, by reference to the financial statements, that the company is entitled to deliver abbreviated accounts and that the abbreviated accounts to be delivered are properly prepared.

### OPINION

In our opinion the company is entitled to deliver abbreviated accounts prepared in accordance with Sections 246(5) and (6) of the Companies Act 1985, and the abbreviated accounts have been properly prepared in accordance with those provisions.

*Menzies Bolton Colby*

**MENZIES BOLTON COLBY**
Chartered Accountants
& Registered Auditors

Heathrow Business Centre
65 High Street
Egham
Surrey
TW20 9EY
16/3/07

1

# BROBULK LIMITED

**ABBREVIATED BALANCE SHEET**

**31 DECEMBER 2006**

| | Note | 2006 £ | £ | 2005 £ | £ |
|---|---|---|---|---|---|
| **FIXED ASSETS** | 2 | | | | |
| Tangible assets | | | 5,799 | | 2,802 |
| **CURRENT ASSETS** | | | | | |
| Debtors | | 1,692,081 | | 878,127 | |
| Cash at bank and in hand | | 208,230 | | 429,474 | |
| | | 1,900,311 | | 1,307,601 | |
| CREDITORS: Amounts falling due within one year | | 1,540,646 | | 1,163,123 | |
| **NET CURRENT ASSETS** | | | 359,665 | | 144,478 |
| **TOTAL ASSETS LESS CURRENT LIABILITIES** | | | 365,464 | | 147,280 |
| **PROVISIONS FOR LIABILITIES AND CHARGES** | | | 244,571 | | 249,957 |
| | | | 120,893 | | (102,677) |
| **CAPITAL AND RESERVES** | | | | | |
| Called-up equity share capital | 3 | | 1,000 | | 1,000 |
| Profit and loss account | | | 119,893 | | (103,677) |
| **SHAREHOLDERS' FUNDS/(DEFICIENCY)** | | | 120,893 | | (102,677) |

These abbreviated accounts have been prepared in accordance with the special provisions for small companies under Part VII of the Companies Act 1985.

These abbreviated accounts were approved by the directors on 1 March 2007 and are signed on their behalf by:

U. B. H. Paulsson

The notes on pages 3 to 4 form part of these abbreviated accounts.

# BROBULK LIMITED

**NOTES TO THE ABBREVIATED ACCOUNTS**

**YEAR ENDED 31 DECEMBER 2006**

1. **ACCOUNTING POLICIES**

   **Basis of accounting**

   The financial statements have been prepared under the historical cost convention, and in accordance with the Financial Reporting Standard for Smaller Entities (effective January 2005).

   **Turnover**

   Turnover comprises income on charters where all contractual obligations have been fulfilled, both to the customer and the ship owner.

   **Turnover and profit recognition**

   A prudent view is taken to ensure that unrealised profits are not recognised on a charter for which the full costs are uncertain. Accordingly, where a charter straddles more than one accounting period, both the income and the related expenditure are deferred to the accounting period in which all the contractual obligations are fulfilled and costs are definitive. This ensures that related income and expenditure are included in the same accounting period.

   **Fixed assets**

   All fixed assets are initially recorded at cost.

   **Depreciation**

   Depreciation is calculated so as to write off the cost of an asset, less its estimated residual value, over the useful economic life of that asset as follows:

   | | | |
   |---|---|---|
   | Plant & Machinery | - | Straight line basis over 3 years |
   | Fixtures & Fittings | - | Straight line basis over 5 years |

   **Operating lease agreements**

   Rentals applicable to operating leases where substantially all of the benefits and risks of ownership remain with the lessor are charged against profits on a straight line basis over the period of the lease.

   **Provisions for liabilities and charges**

   In accordance with FRS 12, the company provides for claims in respect of charter damage and damaged cargo when it is considered probable that a liability will arise. The provision is limited to the amount that is not expected to be covered by the company's insurers.

   **Foreign currencies**

   Assets and liabilities in foreign currencies are translated into sterling at the rates of exchange ruling at the balance sheet date. Transactions in foreign currencies are translated into sterling at the rate of exchange ruling at the date of the transaction. Exchange differences are taken into account in arriving at the operating profit.

   **Financial instruments**

   Financial instruments are classified and accounted for, according to the substance of the contractual arrangement, as either financial assets, financial liabilities or equity instruments. An equity instrument is any contract that evidences a residual interest in the assets of the company after deducting all of its liabilities.

2. **FIXED ASSETS**

   | | Tangible Assets £ |
   |---|---|
   | **COST** | |
   | At 1 January 2006 | 13,946 |
   | Additions | 4,982 |
   | **At 31 December 2006** | 18,928 |
   | | |
   | **DEPRECIATION** | |
   | At 1 January 2006 | 11,144 |
   | Charge for year | 1,985 |
   | **At 31 December 2006** | 13,129 |

# Current Appointments

Number of current appointments: 4

---

| SECRETARY: | PAULSSON, URBAN BROR HUGO | |
|---|---|---|
| Appointed: | 08/05/2000 | Date of Birth: 17/06/1961 |
| Nationality: | SWEDISH | |
| No. of Appointments: | 4 | |
| Address: | WALCOT HOUSE | |
| | WEST DRIVE | |
| | VIRGINIA WATER | |
| | SURREY | |
| | GU25 4ND | |

---

| DIRECTOR: | HEISSELBERG, LARS PETER | |
|---|---|---|
| Appointed: | 01/05/2004 | Date of Birth: 17/09/1958 |
| Nationality: | DANISH | |
| No. of Appointments: | 2 | |
| Address: | C/O GULF AGENCY COMPANY | |
| | POST BOX 18006 | |
| | DUBAI | |
| | DUBAI | |

---

| DIRECTOR: | PAULSSON, URBAN BROR HUGO | |
|---|---|---|
| Appointed: | 08/05/2000 | Date of Birth: 17/06/1961 |
| Nationality: | SWEDISH | |
| No. of Appointments: | 4 | |
| Address: | WALCOT HOUSE | |
| | WEST DRIVE | |
| | VIRGINIA WATER | |
| | SURREY | |
| | GU25 4ND | |

---

| DIRECTOR: | SAFVERSTROM, LARS GORAN | |
|---|---|---|
| Appointed: | 03/05/2000 | Date of Birth: 06/03/1952 |

| | |
|---|---|
| **Nationality:** | SWEDISH |
| **No. of Appointments:** | 6 |
| **Address:** | GULF AGENCY COMPANY LIMITED |
| | PO BOX 18006 JEBEL ALI |
| | DUBAI |
| | UAE |

**This Report excludes resignations**

# Recent Filing History

**Documents filed since 25/03/2007**

| FILING DATE | FORM | DESCRIPTION |
| --- | --- | --- |
| 15/04/2008 | 363a | RETURN MADE UP TO 23/03/08; FULL LIST OF MEMBERS |
| 02/04/2007 | 363a | RETURN MADE UP TO 23/03/07; FULL LIST OF MEMBERS |
| 25/03/2007 | AA | ACCOUNTS FOR 'SMALL' CO. MADE UP TO 31/12/06 |

**This Report excludes 88(2) Share Allotment documents**



# 363a(ef)

## Annual Return

XU7P2YWJ

*Received for filing in Electronic Format on the:* **15/04/2008**

*Company Name:*  **BROBULK LIMITED**

*Company Number:*  **03954644**

## Company Details

*Period Ending:* **23/03/2008**

*Company Type:* **PRIVATE COMPANY LIMITED BY SHARES**

*Pricipal Business Activities:*

*SIC codes:*

> 6110

| *Registered Office Address:* | *Register of Members Address:* | *Register of Debenture Holders Address:* |
|---|---|---|
| **HEATHROW BUSINESS CENTRE 65 HIGH STREET EGHAM SURREY TW20 9EY** | | |

---

*Electronically Filed Document for Company Number:* **03954644**                    *Page:* **1**

## Details of Officers of the Company

*Company Secretary 1:*

*Name:* **URBAN BROR HUGO PAULSSON**    *Address:* **WALCOT HOUSE WEST DRIVE**
**VIRGINIA WATER**
**SURREY**
**GU25 4ND**

---

*Director 1 :*

*Name:* **URBAN BROR HUGO**        *Address:* **WALCOT HOUSE WEST DRIVE**
**PAULSSON**                **VIRGINIA WATER**
**SURREY**
**GU25 4ND**

*Date of Birth:*        *Nationality:*            *Occupation:*
**17/06/1961**        **SWEDISH**            **MANAGING DIRECTOR**

---

*Director 2 :*

*Name:* **LARS PETER HEISSELBERG**    *Address:* **C/O GULF AGENCY COMPANY**
**POST BOX 18006**
**DUBAI**
**DUBAI**

*Date of Birth:*        *Nationality:*            *Occupation:*
**17/09/1958**        **DANISH**            **COMPANY DIRECTOR**

---

*Director 3 :*

| | | |
|---|---|---|
| *Name:* | **LARS GORAN SAFVERSTROM** | *Address:* | **GULF AGENCY COMPANY LIMITED PO BOX 18006 JEBEL ALI DUBAI UAE** |

*Date of Birth:* **06/03/1952**    *Nationality:* **SWEDISH**    *Occupation:* **PRESIDENT**

## Share Capital

*Issued Share Capital Details:*

| Class of Share | Number of Shares issued | Aggregate Nominal value of issued Shares |
|---|---|---|
| **ORDINARY** | **1000** | **GBP1000** |
| *TOTALS* | | |
| | **1000** | **GBP1000** |

## Full Details of Shareholders

The details below relate to individuals / corporate bodies that were shareholders as at 23/03/2008 or that had ceased to be shareholders since the made up date of the previous Annual Return

*Shareholding 1:*    **1000 ORDINARY Shares held as at 23/03/2008**

*Name:* **PETRA CHARTERING LTD**

*Address:* **HEATHROW BUSINESS CENTRE 65 HIGH STREET EGHAM SURREY TW20 9EY**

## *Authorisation*

*Authoriser Designation:* **director**          *Date Authorised:* **15/04/2008**          *Authenticated:* **Yes (E/W)**

## *Details of Officers of the Company*

*Company Secretary ]:*

*Name:*  **URBAN BROR HUGO PAULSSON**    *Address:*    **WALCOT HOUSE WEST DRIVE**
**VIRGINIA WATER**
**SURREY**
**GU25 4ND**

------------------------------------------------------------------------------

*Director 1 :*

*Name:*    **URBAN BROR HUGO**          *Address:*    **WALCOT HOUSE WEST DRIVE**
**PAULSSON**                                           **VIRGINIA WATER**
**SURREY**
**GU25 4ND**

*Date of Birth:*          *Nationality:*                      *Occupation:*
**17/06/1961**          **SWEDISH**                        **MANAGING DIRECTOR**

------------------------------------------------------------------------------

*Director 2 :*

*Name:*    **LARS PETER HEISSELBERG**    *Address:*    **C/O GULF AGENCY COMPANY**
**POST BOX 18006**
**DUBAI**
**DUBAI**

*Date of Birth:*          *Nationality:*                      *Occupation:*
**17/09/1958**          **DANISH**                         **COMPANY DIRECTOR**

------------------------------------------------------------------------------

*Director 3 :*

| | | | |
|---|---|---|---|
| *Name:* | **LARS GORAN SAFVERSTROM** | *Address:* | **GULF AGENCY COMPANY LIMITED PO BOX 18006 JEBEL ALI DUBAI UAE** |

*Date of Birth:*    **06/03/1952**    *Nationality:*    **SWEDISH**    *Occupation:*    **PRESIDENT**

## Share Capital

*Issued Share Capital Details:*

| Class of Share | Number of Shares issued | Aggregate Nominal value of issued Shares |
|---|---|---|
| **ORDINARY** | **1000** | **GBP1000** |
| *TOTALS* | | |
| | **1000** | **GBP1000** |

## Full Details of Shareholders

The details below relate to individuals / corporate bodies that were shareholders as at 23/03/2008 or that had ceased to be shareholders since the made up date of the previous Annual Return

*Shareholding 1:*    **1000 ORDINARY Shares held as at 23/03/2008**

*Name:*    **PETRA CHARTERING LTD**
*Address:*    **HEATHROW BUSINESS CENTRE 65 HIGH STREET EGHAM SURREY TW20 9EY**

## *Authorisation*

*Authoriser Designation:* **director**        *Date Authorised:* **15/04/2008**        *Authenticated:* **Yes (E/W)**



**Current Appointments Report for:**

**BROBULK LIMITED**

**03954644**

**Created: 29/04/2008**

# EXHIBIT

# C

COMPANY REGISTRATION NUMBER 2340237

# HAWKNET LIMITED

# FINANCIAL STATEMENTS

# 31 MARCH 2007

WEDNESDAY

*LS5NTWSM*

L17     30/01/2008     185
COMPANIES HOUSE

# HAWKNET LIMITED

## FINANCIAL STATEMENTS

## YEAR ENDED 31 MARCH 2007

**CONTENTS**                                                        **PAGE**

| | |
|---|---|
| Officers and professional advisers | 1 |
| The directors' report | 2 |
| Independent auditor's report to the shareholders | 4 |
| Profit and loss account | 6 |
| Balance sheet | 7 |
| Notes to the financial statements | 8 |

# HAWKNET LIMITED

## OFFICERS AND PROFESSIONAL ADVISERS

| | |
|---|---|
| **The board of directors** | G P W Walker<br>J C Walker |
| **Company secretary** | J C Walker |
| **Registered office** | Tuition House<br>27-37 St George's Road<br>London<br>SW19 4DS |
| **Auditor** | Shipleys LLP<br>Chartered Accountants<br>& Registered Auditors<br>10 Orange Street<br>Haymarket<br>London<br>WC2H 7DQ |

# HAWKNET LIMITED

## THE DIRECTORS' REPORT

### YEAR ENDED 31 MARCH 2007

The directors have pleasure in presenting their report and the financial statements of the company for the year ended 31 March 2007

**PRINCIPAL ACTIVITIES**
The principal activity of the company continues to be that of ship operating, management and associated services

**DIRECTORS**
The directors who served the company during the year were as follows

G P W Walker
J C Walker

**DIRECTORS' RESPONSIBILITIES**
The directors are responsible for preparing the Annual Report and the financial statements in accordance with applicable law and regulations

Company law requires the directors to prepare financial statements for each financial year Under that law the directors have elected to prepare the financial statements in accordance with United Kingdom Generally Accepted Accounting Practice (United Kingdom Accounting Standards and applicable law) The financial statements are required by law to give a true and fair view of the state of affairs of the company and of the profit or loss of the company for that period In preparing these financial statements, the directors are required to

- select suitable accounting policies and then apply them consistently,

- make judgements and estimates that are reasonable and prudent,

- prepare the financial statements on the going concern basis unless it is inappropriate to presume that the company will continue in business

The directors are responsible for keeping proper accounting records that disclose with reasonable accuracy at any time the financial position of the company and enable them to ensure that the financial statements comply with the Companies Act 1985 They are also responsible for safeguarding the assets of the company and hence for taking reasonable steps for the prevention and detection of fraud and other irregularities

In so far as the directors are aware

- there is no relevant audit information of which the company's auditor is unaware, and

- the directors have taken all steps that they ought to have taken to make themselves aware of any relevant audit information and to establish that the auditor is aware of that information

- 2 -

# HAWKNET LIMITED

## THE DIRECTORS' REPORT *(continued)*

### YEAR ENDED 31 MARCH 2007

**DONATIONS**
During the year the company made the following contributions

| | 2007 £ | 2006 £ |
|---|---|---|
| Charitable | 861 | 570 |

Included within Charitable Donations are amounts of £511 and £250 donated to the Canon Collins Trust and Breast Cancer Charity respectively

**AUDITOR**
A resolution to re-appoint Shipleys LLP as auditor for the ensuing year will be proposed at the annual general meeting in accordance with section 385 of the Companies Act 1985

**SMALL COMPANY PROVISIONS**
This report has been prepared in accordance with the special provisions for small companies under Part VII of the Companies Act 1985

Registered office
Tuition House
27-37 St George's Road
London
SW19 4DS

Signed by order of the directors

J C WALKER
Company Secretary

Approved by the directors on 21ˢᵗ January 2008.

- 3 -

# HAWKNET LIMITED

## INDEPENDENT AUDITOR'S REPORT TO THE SHAREHOLDERS OF HAWKNET LIMITED

### YEAR ENDED 31 MARCH 2007

We have audited the financial statements of Hawknet Limited for the year ended 31 March 2007 which comprise the Profit and Loss Account, Balance Sheet and the related notes These financial statements have been prepared in accordance with the Financial Reporting Standard for Smaller Entities (effective January 2005) and on the basis of the accounting policies set out therein

This report is made solely to the company's shareholders, as a body, in accordance with Section 235 of the Companies Act 1985 Our audit work has been undertaken so that we might state to the company's shareholders those matters we are required to state to them in an auditor's report and for no other purpose To the fullest extent permitted by law, we do not accept or assume responsibility to anyone other than the company and the company's shareholders as a body, for our audit work, for this report, or for the opinions we have formed

### RESPECTIVE RESPONSIBILITIES OF DIRECTORS AND AUDITOR

The directors' responsibilities for preparing the financial statements in accordance with applicable law and United Kingdom Accounting Standards (United Kingdom Generally Accepted Accounting Practice) are set out in the Statement of Directors' Responsibilities

Our responsibility is to audit the financial statements in accordance with relevant legal and regulatory requirements and International Standards on Auditing (UK and Ireland)

We report to you our opinion as to whether the financial statements give a true and fair view and are properly prepared in accordance with the Companies Act 1985 We also report to you whether in our opinion the information given in the Directors' Report is consistent with the financial statements

In addition we report to you if, in our opinion, the company has not kept proper accounting records, if we have not received all the information and explanations we require for our audit, or if information specified by law regarding directors' remuneration and other transactions is not disclosed

We read the Directors' Report and consider the implications for our report if we become aware of any apparent misstatements within it

### BASIS OF AUDIT OPINION

We conducted our audit in accordance with International Standards on Auditing (UK and Ireland) issued by the Auditing Practices Board An audit includes examination, on a test basis, of evidence relevant to the amounts and disclosures in the financial statements It also includes an assessment of the significant estimates and judgements made by the directors in the preparation of the financial statements, and of whether the accounting policies are appropriate to the company's circumstances, consistently applied and adequately disclosed

We planned and performed our audit so as to obtain all the information and explanations which we considered necessary in order to provide us with sufficient evidence to give reasonable assurance that the financial statements are free from material misstatement, whether caused by fraud or other irregularity or error In forming our opinion we also evaluated the overall adequacy of the presentation of information in the financial statements

# HAWKNET LIMITED

## INDEPENDENT AUDITOR'S REPORT TO THE SHAREHOLDERS OF HAWKNET LIMITED *(continued)*

### YEAR ENDED 31 MARCH 2007

**OPINION**

In our opinion

- the financial statements give a true and fair view, in accordance with United Kingdom Generally Accepted Accounting Practice applicable to Smaller Entities, of the state of the company's affairs as at 31 March 2007 and of its profit for the year then ended,

- the financial statements have been properly prepared in accordance with the Companies Act 1985, and

- the information given in the Directors' Report is consistent with the financial statements

SHIPLEYS LLP
Chartered Accountants
& Registered Auditors

10 Orange Street
Haymarket
London
WC2H 7DQ

2 1 JAN 2008

- 5 -

# HAWKNET LIMITED

## PROFIT AND LOSS ACCOUNT

### YEAR ENDED 31 MARCH 2007

|  | Note | 2007 £ | 2006 £ |
|---|---|---|---|
| **TURNOVER** |  | 38,513,614 | 21,233,768 |
| Cost of sales |  | (37,318,867) | (20,146,904) |
| **GROSS PROFIT** |  | 1,194,747 | 1,086,864 |
| Administrative expenses |  | (1,100,844) | (689,341) |
| **OPERATING PROFIT** | 2 | 93,903 | 397,523 |
| Interest receivable |  | 3,672 | 579 |
| Interest payable and similar charges |  | (51,626) | (165,079) |
| **PROFIT ON ORDINARY ACTIVITIES BEFORE TAXATION** |  | 45,949 | 233,023 |
| Tax on profit on ordinary activities |  | (21,944) | (60,712) |
| **PROFIT FOR THE FINANCIAL YEAR** |  | 24,005 | 172,311 |

The notes on pages 8 to 11 form part of these financial statements

# HAWKNET LIMITED

## BALANCE SHEET

### 31 MARCH 2007

| | Note | 2007 £ | £ | 2006 £ | £ |
|---|---|---|---|---|---|
| **FIXED ASSETS** | | | | | |
| Tangible assets | 3 | | 38,450 | | 38,847 |
| **CURRENT ASSETS** | | | | | |
| Debtors | 4 | 6,422,121 | | 2,022,692 | |
| Cash at bank | | 673,675 | | 342,591 | |
| | | 7,095,796 | | 2,365,283 | |
| **CREDITORS· Amounts falling due within one year** | 5 | (6,958,378) | | (2,252,267) | |
| **NET CURRENT ASSETS** | | | 137,418 | | 113,016 |
| **TOTAL ASSETS LESS CURRENT LIABILITIES** | | | 175,868 | | 151,863 |
| **CAPITAL AND RESERVES** | | | | | |
| Called-up equity share capital | 10 | | 1,000 | | 1,000 |
| Profit and loss account | 11 | | 174,868 | | 150,863 |
| **SHAREHOLDERS' FUNDS** | | | 175,868 | | 151,863 |

These financial statements have been prepared in accordance with the special provisions for small companies under Part VII of the Companies Act 1985 and with the Financial Reporting Standard for Smaller Entities (effective January 2005)

These financial statements were approved by the directors and authorised for issue on ⌐ʼ|(/DƧ/ , and are signed on their behalf by

J C WALKER

The notes on pages 8 to 11 form part of these financial statements

- 7 -

# HAWKNET LIMITED

## NOTES TO THE FINANCIAL STATEMENTS

### YEAR ENDED 31 MARCH 2007

1. **ACCOUNTING POLICIES**

   **Basis of accounting**

   The financial statements have been prepared under the historical cost convention, and in accordance with the Financial Reporting Standard for Smaller Entities (effective January 2005)

   **Cash flow statement**

   The accounts do not include a cash flow statement because the company, as a small entity, is exempt from requirement to prepare such a statement Financial Reporting Standard for Smaller Entities (effective January 2005)

   **Turnover**

   Turnover represents the invoiced value of goods sold and services provided, excluding VAT, and arises wholly from outside the United Kingdom

   **Fixed assets**

   Tangible fixed assets are stated at cost less depreciation

   **Depreciation**

   Depreciation is calculated so as to write off the cost of an asset, less its estimated residual value, over the useful economic life of that asset as follows

   Fixtures & Fittings        -    20-25% per annum

   **Operating lease agreements**

   Rental Costs under operation leases are charged to the profit and loss account when incurred

   **Foreign currencies**

   Transactions denominated in foreign currencies are translated at rates ruling the time of the transaction Balances denominated in foreign currencies are translated at rates ruling at the balance sheet date All differences are taken to the profit and loss account

   **Financial instruments**

   Financial instruments are classified and accounted for, according to the substance of the contractual arrangement, as either financial assets, financial liabilities or equity instruments An equity instrument is any contract that evidences a residual interest in the assets of the company after deducting all of its liabilities

- 8 -

# HAWKNET LIMITED

## NOTES TO THE FINANCIAL STATEMENTS

### YEAR ENDED 31 MARCH 2007

2. **OPERATING PROFIT**

Operating profit is stated after charging

|  | 2007 £ | 2006 £ |
|---|---|---|
| Directors' emoluments | 72,583 | 80,046 |
| Directors' pension contributions | 271,079 | 7,377 |
| Staff pension contributions | 16,920 | - |
| Depreciation of owned fixed assets | 13,363 | 9,921 |
| Auditor's fees | 9,001 | 10,000 |

3. **TANGIBLE FIXED ASSETS**

|  | Fixtures & Fittings £ |
|---|---|
| **COST** | |
| At 1 April 2006 | 128,703 |
| Additions | 12,966 |
| **At 31 March 2007** | 141,669 |
| **DEPRECIATION** | |
| At 1 April 2006 | 89,856 |
| Charge for the year | 13,363 |
| **At 31 March 2007** | 103,219 |
| **NET BOOK VALUE** | |
| **At 31 March 2007** | 38,450 |
| At 31 March 2006 | 38,847 |

4. **DEBTORS**

|  | 2007 £ | 2006 £ |
|---|---|---|
| Trade debtors | 3,116,054 | 507,387 |
| Amounts owed by related undertakings | 363,506 | 349,146 |
| Amounts owed by joint venture | 274,554 | 1,077,895 |
| Directors current accounts | 90,289 | - |
| Other debtors | 2,577,718 | 88,264 |
|  | 6,422,121 | 2,022,692 |

- 9 -

# HAWKNET LIMITED

## NOTES TO THE FINANCIAL STATEMENTS

### YEAR ENDED 31 MARCH 2007

5.  **CREDITORS: Amounts falling due within one year**

|  | 2007 £ | 2006 £ |
|---|---|---|
| Loan facility | 470,765 | 446,036 |
| Trade creditors | 4,447,523 | 1,680,925 |
| Corporation tax | 14,261 | 60,712 |
| Other taxation and social security | 10,057 | 9,561 |
| Other creditors | 2,015,772 | 55,033 |
|  | 6,958,378 | 2,252,267 |

6.  **COMMITMENTS UNDER OPERATING LEASES**

At 31 March 2007 the company had aggregate annual commitments under non-cancellable operating leases as set out below

|  | 2007 £ | 2006 £ |
|---|---|---|
| Operating leases which expire |  |  |
| Within 1 year | 50,873 | 47,821 |
| Within 2 to 5 years | 194,431 | - |
|  | 245,304 | 47,821 |

7.  **CONTINGENCIES**

At the year end, the company had three outstanding legal claims, all of which have been going on for a number of years  Following legal consultation, the directors do not believe there is any need to provide or disclose any amounts involved, in accordance with Financial Reporting Standard for Smaller Entities (effective January 2005)

8.  **TRANSACTIONS WITH THE DIRECTORS**

At the year end, included in debtors is an amount of £90,289 due from G P W Walker and J C Walker, directors of the company  The maximum amount due during the year was £120,022  On 1 June 2007, G P W Walker paid £140,000 into the company to repay this loan

**HAWKNET LIMITED**

**NOTES TO THE FINANCIAL STATEMENTS**

**YEAR ENDED 31 MARCH 2007**

9.   **RELATED PARTY TRANSACTIONS**

Included in debtors are the following balances with companies in which the directors hold a material interest

|  | 2007 £ | 2006 £ |
|---|---|---|
| Slieve Donard Trading Limited | 136,210 | 138,284 |
| Subbies com Limited | 153,148 | 152,747 |
| The Spacemiles Co Limited | 71,875 | 56,263 |
| The Moonmiles Co Limited | 737 | 680 |
| Guy Walker Shipping Limited | 1,537 | 1,172 |
| Amounts due from joint venture | 274,554 | 1,077,895 |

The movement in the balances above relate to purchases made by Hawknet Limited on behalf of these companies

10.  **SHARE CAPITAL**

Authorised share capital:

|  | 2007 £ | 2006 £ |
|---|---|---|
| 1,000 Ordinary Class shares of £1 each | 1,000 | 1,000 |

Allotted, called up and fully paid:

|  | 2007 No | £ | 2006 No | £ |
|---|---|---|---|---|
| Ordinary Class shares of £1 each | 1,000 | 1,000 | 1,000 | 1,000 |

11.  **PROFIT AND LOSS ACCOUNT**

|  | 2007 £ | 2006 £ |
|---|---|---|
| Balance brought forward | 150,863 | (21,448) |
| Profit for the financial year | 24,005 | 172,311 |
| Balance carried forward | 174,868 | 150,863 |

12.  **CONTROL**

The company is controlled by its directors

- 11 -



# 363a(ef)

## *Companies House*
*— for the record —*

| **Annual Return** |
| --- |

*Company Name:*    **HAWKNET LIMITED**

*Company Number:*    **02340237**

*Received for filing in Electronic Format on the:* **04/02/2008**

XF387WXN

## *Company Details*

*Period Ending:* **27/01/2008**

*Company Type:* **PRIVATE COMPANY LIMITED BY SHARES**

*Principal Business Activities:*

 *SIC Codes*
  **7487**

| *Registered Office:*<br>*Address:* | *Register of*<br>*Members Address:* | *Register of Debenture*<br>*Holders Address:* |
| --- | --- | --- |
| **TUITION HOUSE**<br>**27-37 ST GEORGES ROAD**<br>**WIMBLEDON**<br>**LONDON**<br>**SW19 4DS** | **At Registered Office** | **Not Applicable** |

## *Details of Officers of the Company*

*Company Secretary:*

| *Name:* | **COMPANY SECRETARY JANET**<br>**CHATRES WALKER** | *Address:* | **10 CAMBRIDGE AVENUE**<br>**NEW MALDEN**<br>**SURREY   KT3 4JZ** |
| --- | --- | --- | --- |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Director 1:*

| *Name:* | **GUY PETER WOLF WALKER** | *Address:* | **10 CAMBRIDGE AVENUE** |
| --- | --- | --- | --- |
| *Date of Birth:* | **21/06/1953** | | **NEW MALDEN** |
| *Nationality:* | **BRITISH** | | **SURREY   KT3 4JZ** |
| *Occupation:* | **DIRECTOR OF COMPANIES** | | |

---

------------------------------------------------------------

*Director 2:*

| | | | |
|---|---|---|---|
| *Name:* | **COMPANY SECRETARY** | *Address:* | **10 CAMBRIDGE AVENUE** |
| | **JANET CHATRES WALKER** | | **NEW MALDEN** |
| *Date of Birth:* | **12/11/1946** | | **SURREY   KT3 4JZ** |
| *Nationality:* | **AUSTRALIAN** | | |
| *Occupation:* | **HOMOEOPATH** | | |

## Share Capital

*Issued Share Capital Details:*

| Class of share | Number of shares issued | Aggregate nominal value of issued shares |
|---|---|---|
| **ORDINARY** | **1000** | **GBP1000** |
| *TOTALS* | **1000** | **GBP1000** |

## Full Details of Shareholders

The details below relate to individuals / corporate bodies that were shareholders as at 27/01/2008, or that had ceased to be shareholders since the made up date of the previous Annual Return.

*Shareholding 1:*

**500 ORDINARY Shares held as at 27/01/2008**

| | |
|---|---|
| *Name:* | **GUY PETER WOLF WALKER** |
| *Address:* | **10 CAMBRIDGE AVENUE** |
| | **NEW MALDEN** |
| | **SURREY   KT3 4JZ** |

------------------------------------------------------------

*Shareholding 2:*

**500 ORDINARY Shares held as at 27/01/2008**

| | |
|---|---|
| *Name:* | **JANET CHATRES WALKER** |
| *Address:* | **10 CAMBRIDGE AVENUE** |
| | **NEW MALDEN** |
| | **SURREY   KT3 4JZ** |

## Authorisation

*Authoriser Designation:* **DIRECTOR** *Date Authorised:* **04/02/2008** *Authenticated:* **Yes (E/W)**



## The Company Record for:
## HAWKNET LIMITED
## 02340237

## Created: 02/05/2008

# Company Register Information

| | | |
|---|---|---|
| **Company Number:** | 02340237 | Date of Incorporation:27/01/1989 |
| **Company Name:** | HAWKNET LIMITED | |
| **Registered Office:** | 6-7 LUDGATE SQUARE | |
| | LONDON | |
| | EC4M 7AS | |
| **Company Type:** | Private Limited Company | |
| **Country of Origin:** | United Kingdom | |
| **Status:** | Active | |
| **Nature Of Business (SIC(92)):** | 7487 - Other business activities | |
| **Mortgage: Number of Charges:** | 5 ( 1 outstanding / 0 part satisfied / 4 satisfied ) | |

## Previous Names

No previous name information has been recorded over the last 20 years.

## Key Filing Dates

| | |
|---|---|
| **Accounting Reference Date:** | 30/09 |
| **Last Accounts Made Up To:** | 31/03/2007 (FULL) |
| **Next Accounts Due:** | 30/07/2009 |
| **Last Return Made Up To:** | 27/01/2008 |
| **Next Return Due:** | 24/02/2009 |
| | |
| **Last members list:** | 27/01/2008 |
| **Last Bulk Shareholders List:** | Not available |

# Current Appointments

**Number of current appointments: 3**

---

| | | |
|---|---|---|
| **SECRETARY:** | WALKER, JANET CHATRES | |
| | COMPANY SECRETARY | |
| **Appointed:** | pre27/01/1992 | Date of Birth: 12/11/1946 |
| **Nationality:** | AUSTRALIAN | |
| **No. of Appointments:** | 7 | |
| **Address:** | 10 CAMBRIDGE AVENUE | |
| | NEW MALDEN | |
| | SURREY | |
| | KT3 4JZ | |

---

| | | |
|---|---|---|
| **DIRECTOR:** | WALKER, GUY PETER WOLF MR | |
| **Appointed:** | pre27/01/1992 | Date of Birth: 21/06/1953 |
| **Nationality:** | BRITISH | |
| **No. of Appointments:** | 11 | |
| **Address:** | 10 CAMBRIDGE AVENUE | |
| | NEW MALDEN | |
| | SURREY | |
| | KT3 4JZ | |

---

| | | |
|---|---|---|
| **DIRECTOR:** | WALKER, JANET CHATRES | |
| | COMPANY SECRETARY | |
| **Appointed:** | pre27/01/1992 | Date of Birth: 12/11/1946 |
| **Nationality:** | AUSTRALIAN | |
| **No. of Appointments:** | 7 | |
| **Address:** | 10 CAMBRIDGE AVENUE | |
| | NEW MALDEN | |
| | SURREY | |
| | KT3 4JZ | |

**This Report excludes resignations**

3

# Mortgage Charge Details

**Number of Charges:**     5 (1 outstanding / 0 part satisfied / 4 satisfied)

charge details:

**Description:**     DEBENTURE

**Person(s) Entitled:**

THE ROYAL BANK OF SCOTLAND PLC

**Amount Secured:**

ALL MONIES DUE OR TO BECOME DUE FROM THE COMPANY TO THE CHARGEE ON ANY ACCOUNT
WHATSOEVER

**Acquisition Date:**

Created: 29/06/2006          Form Type: 395          Registered: 01/07/2006

**Short Particulars:**

FIXED AND FLOATING CHARGES OVER THE UNDERTAKING AND ALL PROPERTY AND ASSETS PRESENT
AND FUTURE INCLUDING GOODWILL BOOKDEBTS UNCALLED CAPITAL BUILDINGS FIXTURES FIXED PLANT
AND MACHINERY

# Recent Filing History

**Documents filed since 23/01/2007**

| FILING DATE | FORM | DESCRIPTION |
| --- | --- | --- |
| 17/04/2008 | 287 | REGISTERED OFFICE CHANGED ON 17/04/08 FROM:TUITION HOUSE27-37 ST GEORGES ROADWIMBLEDONLONDONSW19 4DS |
| 02/04/2008 | 225 | ACC. REF. DATE EXTENDED FROM 31/03/2008 TO 30/09/2008 |
| 05/02/2008 | 363a | RETURN MADE UP TO 27/01/08; FULL LIST OF MEMBERS |
| 31/01/2008 | AA | FULL ACCOUNTS MADE UP TO 31/03/07 |
| 30/01/2007 | 363a | RETURN MADE UP TO 27/01/07; FULL LIST OF MEMBERS |
| 23/01/2007 | AA | FULL ACCOUNTS MADE UP TO 31/03/06 |

**This Report excludes 88(2) Share Allotment documents**

# EXHIBIT

# D

-----Original Message-----
From: mail@hawknet.co.uk [mailto:mail@hawknet.co.uk]
Sent: 07 November 2007 10:41
To: upaulsson brobulk
Subject: Re: RE: RE: RE: Finance

Doc-No. 877458  7/NOV/2007  10:30 (UTC) GUY

From : Hawknet Ltd
To    : Brobulk
CC    : Simon Rye


Urban / Guy

Pls send your full banking details and will insert same on recap.

The vessel is coming open ex yard Zhoushan 13/15th she sails to Qingdao where she
loads the Network Steel cargo. Shifting time about 1.5 to 2 days. Expect her to load
17th through22/23rd freight payment will be week 48 26/29th November.


Rgds




------------Original message-------------

From :    "upaulsson brobulk" <upaulsson.brobulk@gacworld.com>
To :      mail@hawknet.co.uk
CC :      srye2003@yahoo.co.uk
Date   :  Tue, 6 Nov 2007 18:07:44 -0000
Subject : RE: RE: RE: Finance


Guy

Thanks below and once fixed can you show me the recap/addendum where it says we will
receive the freight directly, also pse estimate time from delivery to arrival l/port,
loading and frt paid.

Thank you.


Krgds
Urban

-----Original Message-----
From: mail@hawknet.co.uk [mailto:mail@hawknet.co.uk]
Sent: 06 November 2007 17:59
To: upaulsson brobulk
Subject: Re: RE: RE: Finance

Doc-No. 876818  6/NOV/2007  17:57 (UTC) GUY

From : Hawknet Ltd
To    : "upaulsson brobulk" <upaulsson.brobulk@gacworld.com>
To    : Simon Rye

Urban + Simon / Guy

We are not fully fixed still some details to go, but by and large we are there - pls
confirm you are happy with everything enclosed.

Per our various discussions

We have finally fixed the Originator description below. The ship is with Industrial
Carriers at the moment and they are our contract partners. Cargo is steels loading

China basis dely ZHOUSHAN ATONSHINC- REDEL DLOSP 1 SP TN CHOPT SKAW/PASSERO RANGE INCL UK/IRELAND

The ships ETDely 13/15th November

All the recaps are enclosed herewith. The actual Owners Bank Details will forward to you.

ORIGINATOR (EX JIN SHENG)
PAN 85 BC ALL DETS ABTS
38,594 MT DWAT/11.028M SSW/TPC 46.16
LOA 189.98/BM 28.40M
5 H/H 48363.7/46426 CBM GR/BL
VESSEL IS CAPABLE OF STEAMING AND MAINTAINING A SPEED OF ABOUT 13.5 KNOTS BASIS GOOD
WEATHER CONDITIONS NOT EXCEEDING BF4 AND DOUGLAS SEA STATE
3
OR BELOW, NO ADVERSE CURRENTS  AN NO NEGATIVE INFLUENCE OF SWELL ON ABOUT
26 MTONS IFO 18C LADEN PLUS ABOUT 1.5 MT MDO AT SEA.
VSL CONSUMES MDO WHEN MANEOUVERING IN/OUT PORT, RESTRICTIVE WATERS,ESTUARIES AND IN
POOR WEATHER INPORT PER 24 HRS : WORKING ABT 3 MTS MDO: IDLE ABT 1.5 MTS MDO CR 4 X 25
MT SWL AHL FTTD/VSL IS NOT CO2 FTTD ALL DETS ABTS


"This Agreement is between

  Hawknet Limited, a UK registered company (no....), 27/37 St George's Road, Wimbledon

  and

  Brobulk Limited, a UK registered company (no...) , insert address

  Whereas Hawknet propose to charter m.v. Originator for delivery Zhoushan with 13/15
November
  with a view to carrying, among other things, a cargo of 20,500 mts and Steel plate
for account of
  Network Steel Cardenal arcelo Spinola 2 , 6th Floor.

  In consideration of Brobulk agreeing to pay 1st hire and bunkers on delivery
estimated at between USD 1 and 1.2 Million (exact amount to be advised)
  to owners of the above-mentioned vessel direct,
  Hawknet shall assign to Brobulk the entire freight due under the Network Steel C/P
12/10/2007.. and confirm that Network Steel
  shall be instructed to insert Brobulk's name and banking details into the
aforementioned C/P.
  Immediately upon receipt of freight, Brobulk are to deduct the amount already paid
in hire and bunkers plus their service fee of

  USD 100,000.- and forward the balance to Hawknet.


  If, after Brobulk has paid hire and bunkers, the vessel is rejected or somehow
prevented from loading the above-mentioned cargo

  Hawknet  undertake to repay Brobulk the monies paid plus the service fee within
maximum 30 days from date of payment.


  Copies of C/Ps or recaps between Hawknet and Network Steel and between Hawknet and
mv Originator to be attached to this Agreement.

  Rgds

  Guy Walker
  Hawknet Ltd.
  Phone: +44 (0)20 8947 4988
  Fax:   +44 (0)20 8947 8266
  Telex: 926080
  Email: mail@hawknet.co.uk

4

# EXHIBIT

# E

From: 02079293748      To: 01344843413      Page: 1/1    Date: 18/04/2008 15:08:20



## wh
## waterson hicks

SOLICITORS

130 Fenchurch Street
London EC3M 5LY

Telephone : 020 7929 6060
Facsimile  : 020 7929 3748
Email : law@watersonhicks.com
Web : www.watersonhicks.com

**FACSIMILE TRANSMISSION**

DATE : 18 April 2008

PAGES : 1

TO : Brobulk Limited
ATTN : Urban Bror Paulsson/Lars Peter Heisselberg/Lars Goran
FAX : 01344 843413
EMAIL : brobulk@gacworld.com

FROM : John Hicks
REF : JWH/WB/1192-17

**"NATS EMPEROR"**

We are the London solicitors instructed by the Owners of the "NATS EMPEROR".

The vessel was time chartered by our clients to Hawknet Limited. Hawknet Limited subchartered the vessel to ConAgra International Fertiliser Company pursuant to a Voyage Charterparty dated 27th March 2008. That Voyage Charter included a provision that instead of the freight being paid to Hawknet it would be paid to yourselves. If the freight had been paid to Hawknet it would have been available for Hawknet to use for hire payment to our clients and for bunkers supplies to "NATS EMPEROR". Instead hire has not been paid to our clients, nor have bunkers been supplied by Hawknet. The financial difficulties of Hawknet were known at the time the Voyage Charter was concluded on 27th March. Hawknet inform us they are going into administration.

As such, the payment of freight to you may be considered pursuant to English law, as a voidable preferential payment. In the circumstances we ask you to immediately confirm that you will hold the sums of US$1,558,233.76 and US$67,977.78 on a separate interest bearing trust account pending further instructions from us.

This message is also to be treated as a formal notice of our clients' lien over these sums and you are placed on notice that these sums should not be disposed of by you. If the sums are disposed of by you then you may be at risk of having to pay an equivalent total amount to our clients and/or in any administration proceedings.

Our clients reserve the right to show this message to any Court and/or Trustee in Bankruptcy or other officer who may have jurisdiction over the matter of Hawknet's administration/liquidation.

Please confirm by return that you are holding the above sums accordingly.

Yours faithfully,

**WATERSON HICKS**

CONFIDENTIALITY NOTICE

The contents of this fax and any attachments are confidential, for the use of the addressee only and may be legally privileged.   If you are not the intended recipient of this fax, or the employee or the agent responsible for delivering it to the intended recipient any copying, distribution or other action taken or omitted to be taken in reliance upon it is prohibited and may be unlawful. Please return the fax and any attachments to us and destroy any copies which may have been made.  Thank you.

J.W. Hicks, M.J. Wisdom, B.M. Isola, M.S. Aspinall, T.D. Baker, A.S. Ridings

Geneva: tel +4122 3109767
Address: 11 rue de Candolle, 1205 Geneva, Switzerland

Regulated by the Solicitors Regulation Authority

jwh 041807 brobulk

This fax was sent with GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

# EXHIBIT

# F



# Winter Scott
Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

---

## FAX TRANSMISSION

| | |
|---|---|
| DATE: | 25th April 2008 |
| TO: | 020 7929 3748 |
| | Waterson Hicks |
| | For the attention of John Hicks |
| FROM: | Tim Houghton / Christopher Wood |
| OUR REF: | TJH/nma/2/214 |
| NO. OF PAGES: | 2 |

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

---

Dear Sirs,

Re:  MV "NATS EMPEROR"

We refer to your letter of 18th April and our letter of 22nd April relating to your concern that payments are due to your clients, the Owners of the Nats Emperor, by Hawknet Ltd ("Hawknet") in respect of the time charter of the Nats Emperor. We understand that Hawknet is being placed into creditors' voluntary liquidation and that there will be a creditors' meeting on 6th May.

Brobulk received the freight of $1,558,233.76 because it had security over the freight in respect of short-term finance it had provided to Hawknet which enabled Hawknet to pay hires including the hire of $542,100 due to your clients on about 27th March. Your clients presumably already know that the payment of the $542,100 was made direct by Brobulk to your clients on this date. Brobulk received the freight of $1,558,233.76 on 9th April. After deducting the amounts of the hires it had paid and the commission due, Brobulk paid over the balance on the same day, 9th April, to Hawknet and with a payment of part to Mr Walker.

These matters do not give any basis for your suggestion that the payment of the freight may be considered a "voidable preferential payment".

Further, given that the $1,558,233.76 has been dealt with as explained above, Brobulk does not hold such amount and therefore does not give the confirmation you seek as to

---

Partners: Glenn Winter  Ken Scott  Michael Ellis  Damian Wilkes  Tim Houghton  James King  Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority                                        VAT No GB 819417416

the amount being held in a separate account. Brobulk confirms it has received the sum of $67,977.78: it is retaining this amount pending clarification whether any set-off is to be applied in respect of amounts due by Hawknet, but it is not holding the amount in a separate account. There is no reason for it to be held separately. We do not see any basis for the suggestion in your letter that your clients have a lien over this amount: please explain, failing which Brobulk intends to pay the $67,977.78 over to Hawknet's liquidator if it concludes no set-off is available.

Yours faithfully,

WINTER SCOTT

# EXHIBIT

# G

# wh

## waterson hicks

**SOLICITORS**

130 Fenchurch Street
London EC3M 5LY

Telephone : 020 7929 6060
Facsimile : 020 7929 3748
Email : law@watersonhicks.com
Web : www.watersonhicks.com

### FACSIMILE TRANSMISSION

DATE    : 28 April 2008

PAGES : 1

TO      : Winter Scott
ATTN    : Tim Houghton/Christopher Wood
REF     : TJH/nma/2/214
FAX     : 020 7726 2371

FROM  : John Hicks
REF     : JWH/WB/1192-17

"NATS EMPEROR"

Thank you for your fax of 25th April.

We have no information as to any creditors' meeting on 6th May regarding Hawknet – will you please advise the name of the provisional Liquidator.

We note your explanation of the short term finance arrangement between your clients and Hawknet. Will you please let us have a copy of the loan agreement and state how much was paid to Mr. Walker, to which account and explain why any amount was paid to Mr. Walker.

Our clients have a lien under the Charterparty between themselves and Hawknet for all subfreights and subhires payable to Hawknet up to the extent of the outstanding sum due from Hawknet to our clients which we currently estimate in the region of US$2,000,000 and this may increase. The amount of US$67,977.78 which you say your clients have received is therefore due to our clients unless there is a Liquidator who has preference. For this reason we await to hear from you as to the identity of the provisional Liquidator by return.

Yours faithfully,

*[signature]*

**WATERSON HICKS**

**CONFIDENTIALITY NOTICE**

The contents of this fax and any attachments are confidential, for the use of the addressee only and may be legally privileged.  If you are not the intended recipient of this fax, or the employee or the agent responsible for delivering it to the intended recipient any copying, distribution or other action taken or omitted to be taken in reliance upon it is prohibited and may be unlawful.  Please return the fax and any attachments to us and destroy any copies which may have been made.  Thank you.

J.W. Hicks, M.J. Wisdom, B.M. Isola, M.S. Aspinall, T.D. Baker, A.S. Ridings

Geneva: tel  +4122 3109767
Address: 11 rue de Candolle, 1205 Geneva, Switzerland

Regulated by the Solicitors Regulation Authority

# EXHIBIT

# H

# Winter Scott
## Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

---

## FAX TRANSMISSION

**DATE:**          **29 April 2008**

**TO:**            **020 7929 3748**
                   Waterson Hicks
                   John Hicks

**FROM:**          **Tim Houghton**
**OUR REF:**       TJH/nma/2/214

**NO. OF PAGES:**  2

---

**CONFIDENTIALITY NOTICE:** This facsimile is intended only for the addressee.  It may contain privileged and/or confidential information.  If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

---

Dear Sirs,

**Re:   MV "NATS EMPEROR"**

Thank you for your fax dated 28th April 2008.  Hawknet have provided our Clients with a copy of a letter that they have received from Grosvenor Partners LLP dated 15th April 2008 (attached), in which they accept Hawknet's instructions in relation to placing the company into creditors voluntary liquidation pursuant to the provisions of the Insolvency Act 1986.  We suggest that you contact Mr M.P. Bassford, Grosvenor Partners directly in order to obtain further details of the creditors meeting.

As to the query set out in the second paragraph of your fax, we are not in a position to provide any further details or a copy of the loan agreement.  You will be aware that the information and documents which you have requested will be confidential to Hawknet or Mr Walker.  In addition, we have grave misgivings about providing information and documents to a single creditor of Hawknet.  The liquidator will have all the information and documents that you have requested, and we suggest that you pursue your enquiries with him once he is appointed.  We wish to make it absolutely clear that our Clients will comply fully with any requests for information and documents made by the liquidator once he is appointed.

---

Partners:  Glenn Winter   Ken Scott   Michael Ellis   Damian Wilkes   Tim Houghton   James King   Graeme Lloyd
Associates:  Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority                                    VAT No GB 819417416

Finally, we note your comment with regard to the lien on sub freights and the sum of US$67,977. This too is a matter which will need to be considered with the liquidator. We confirm that our Clients will retain this sum pending clarification of the position with the liquidator, and pending clarification whether any set-off is available. If it were to become necessary to do so, our Clients reserve the right to interplead in respect of such amount.

Yours faithfully,


**WINTER SCOTT**