UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
NATS EMPEROR SHIPPING LIMITED, :

               Plaintiff,    :

    v.                                        :        08 Civ. 3763 (BSJ)

                                        :

HAWKNET LIMITED and BROBULK
LIMITED,                             :

              Defendants.  :
------------------------------------------------------x

**REPLY MEMORANDUM OF LAW OF
DEFENDANT BROBULK LIMITED IN
SUPPORT OF ITS MOTION TO VACATE
THE ATTACHMENT AGAINST ITS
PROPERTY**

                                                    CARDILLO & CORBETT
                                                    Attorneys for Defendant
                                                    BROBULK LIMITED
                                                    29 Broadway
                                                    New York, New York 10006
                                                    Tel: 212-344-0464
                                                    Fax: 212-797-1212

Tulio R. Prieto
James P. Rau
Of Counsel

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PLAINTIFF HAS FAILED TO SUSTAIN ITS
BURDEN OF ALLEGING A PRIMA FACIE
ALTER EGO CLAIM AGAINST BROBULK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF AUTHORITIES

**Cases:**

Bell Atlantic Corporation v. Twombly,
127 S. Ct. 1955, 167 L. Ed. 147 (2007) ................................................. 5

Dolco Inv., Ltd. v. Moonriver Dev., Ltd.,
486 F. Supp. 2d 261 ............................................................................. 5

Hawknet Ltd. v. Overseas Shipping Agencies, 2008 U.S. Dist. LEXIS
35542 (S.D.N.Y. April 29, 2008) ......................................................... 4

SPL Shipping v. Gujarat Cheminex Ltd.,
2007 U.S. Dist. Lexis 18562 (March 15, 2007) ................................... 4

Tide Line Inc. v. Eastrade Commodities, Inc.,
2006 U.S. Dist. Lexis 95870, 2007 AMC 252 (S.D.N.Y. 2006) .......... 4

Ullises Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d
318 (S.D.N.Y. 2006) ............................................................................ 5

Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.,
475 F. Supp.2d 275 (S.D.N.Y. 2006) ................................................... 6

World Reach Shipping Ltd. v. Industrial Carriers Inc.,
2006 U.S. Dist. Lexis 83224 (S.D.N.Y. Nov. 9, 2006) ........................ 4

## PRELIMINARY STATEMENT

This memorandum of law is submitted by defendant, Brobulk Limited ("Brobulk") in reply to the answering papers submitted by the plaintiff, Nats Emperor Shipping Limited ("Nats Emperor"), and in further support of its motion to vacate the attachment of its property by Nats Emperor and the ex parte Order of Maritime Attachment obtained by Nats Emperor from this Court.

The Court is respectfully referred to the Declarations of Urban Bror Hugo Paulsson and of Tulio R. Prieto, Esq., as well as the Reply Declarations of Mr. Paulsson and Mr. Prieto and the Declaration of Timothy James Houghton, Esq., for the facts. Briefly, the facts show that there is no basis whatsoever for the claim that Brobulk and the defendant, Hawknet Limited, are alter egos of each other. Indeed, Nats Emperor has now attempted to change the basis of its claim against Brobulk, abandoning the baseless allegations made in the Verified Complaint of domination and control. Nats Emperor now suggests in its papers, without there being any allegations of fraud in its Verified Complaint, that Brobulk and Hawknet were engaged in some sort of unspecified fraud on Hawknet's creditors. This desperate attempt to salvage this ill-conceived attachment must fail.

As stated, the Verified Complaint fails to plead fraud at all, let alone with any particularity. In addition, the facts show that any such pleading, had Nats Emperor been brazen enough to attempt it, would have no basis in fact. The loan transactions between Brobulk and Hawknet have been shown to be arms' length transactions, one company lending the other money on a secured basis for a fee. The naming of Brobulk as the payee of the sub-freights payable by

the sub-charterers of the NATS EMPEROR and the TOLMI was simply a device to secure the advances made by Brobulk to the owners of those vessels. Nats Emperor benefitted to the tune of $542,100 by a payment of hire made by Brobulk to it on behalf of Hawknet. Obviously, Nats Emperor makes no mention of this payment, because it directly contradicts the insinuation that it was somehow defrauded by Brobulk.

The contention by Nats Emperor made only in its Memorandum in Opposition that Brobulk attempted to avoid the attachment orders of this Court against Hawknet is a scurrilous accusation made without any regard for the facts. None of the actions listed at page 5 of Nats Emperor's Memorandum, upon which Nats Emperor purports to base its accusation was pending at the time the loan transactions were agreed upon and made.

The insinuation that Brobulk somehow interfered with any lien rights that Nats Emperor may have had with respect to sub-freights is utter nonsense. According to its own allegations made in the Verified Complaint, Nats Emperor's rights to exercise a lien on the sub-freights did not arise until April 14, 2008, when Hawknet failed to pay hire. This was six days after the sub-charterer had paid the sub-freights.

In an illegitimate attempt to use the attachment as some sort of discovery device in connection with Hawknet's insolvency proceedings in London, Nats Emperor's English solicitor, Mr. John Hicks, insinuates that Brobulk has concealed the details of the loan from Hawknet's liquidator. Nothing could be further from the truth. As shown by the Declaration of Mr. Houghton, Brobulk's solicitor, he has made it plain to Mr. Hicks and to the liquidator, without any prompting by the liquidator, that Brobulk will cooperate fully and provide the liquidator with any details or documents in Brobulk's possession that the liquidator may require.

It should be noted that the details of these loan transactions should be contained in Hawknet's records which are available to the liquidator.

## ARGUMENT

### PLAINTIFF HAS FAILED TO SUSTAIN ITS BURDEN OF ALLEGING A PRIMA FACIE ALTER EGO CLAIM AGAINST BROBULK

As there was no evidence introduced by Plaintiff in its answering papers to support its alter ego claim, it has failed the "reasonable grounds" standard for the attachment. (See Brobulk Brief, pages 7, 11-12 ). As shown below, and in Brobulk's Moving Brief, it has also failed to meet the prima facie pleading standard for an alter ego claim.

Plaintiff has failed to carry its burden to sustain the attachment as it has utterly failed to show by specific factual allegations that Brobulk dominated and controlled Hawknet (or "vice versa"). In fact, Plaintiff does not dispute the evidence submitted by Brobulk, that Hawknet and Brobulk are incontrovertibly separate and unrelated corporations, without any common management or ownership. Thus, all of Plaintiff's unsubstantiated and conclusory allegations purportedly showing "domination and control" have shown to be both false and wholly inadequate as a matter of pleading (See Brobulk's Moving Brief, pages 12-17 ).

Plaintiff's entire basis for claiming Brobulk and Hawknet are alter egos now rests solely upon the allegations that Brobulk received two payments from Hawknet's subcharterers. (Verified Complaint¶¶ 12-14). Without specific factual allegations of domination and control showing disregard of the corporate form, these two payments --even assuming they were unexplained which they are not-- would be totally insufficient to plead alter ego.

Although Plaintiff quotes from several cases which supposedly support its

3

position at pages 2-3 of its brief, it ignores the following language from those same quotes referring to the elements of domination and control alleged in those complaints which are lacking herein as a matter of both pleading and substance. E.g. SPL Shipping v. Gujarat Cheminex Ltd., 2007 U.S. Dist. Lexis 18562 *3 (March 15, 2007) ("there existed such unity of ownership and interest...that no separation exists between, Nirma and Gujarat, such that the corporate form has been disregarded, and that Nirma has dominated and used Gujarat for their own purposes such that there is no meaningful difference between the three entities and the intermingling of funds between the several entities" ); World Reach Shipping Ltd. v. Industrial Carriers Inc., 2006 U.S. Dist. Lexis 83224 (S.D.N.Y. Nov. 9, 2006) ("ICI dominates and disregards BlueCoast's corporate form to the extent that BlueCoast is actually carrying on ICI's business and operations as if the same were its own.... BlueCoast was intimately involved in the details of the Charter Agreement" ).

In the cases cited at page 3-5 of its brief, Plaintiff once again only focuses on the factor of payments made, or received, by one company on behalf of the alleged alter ego, and ignores all of the other significant allegations and evidence, that are absent in the present case. Eg., Hawknet Ltd. v. Overseas Shipping Agencies, 2008 U.S. Dist. LEXIS 35542 *4 (S.D.N.Y. April 29, 2008) ( "Plaintiff has provided particularized allegations that TOM and MOS use the same address, employ the same personnel and agents, are owned by members of the same family, and share assets"); Tide Line Inc. v. Eastrade Commodities, Inc. , 2006 U.S. Dist. Lexis 95870 *7 n.3 (S.D.N.Y. 2006) (complaint alleged that subservient company was "merely a shell-corporation" which had no assets, employees or office of its own, used the dominant company's letterhead, and for which the dominant company routinely transacted business despite

4

no contractual agreement to do so); <u>Ullises Shipping Corp. v. FAL Shipping Co.</u>, 415 F. Supp. 2d 318, 322-23 (S.D.N.Y. 2006), overruled on other grounds, 460 F.3d at 445 (2d Cir. 2006) (companies were owned and controlled by a certain family and shared employees, a general manager, and the same legal address, offices, fax and telephone numbers).

In <u>Dolco Inv., Ltd. v. Moonriver Dev., Ltd.</u>, 486 F. Supp. 2d 261, 273, Judge Sweet explicitly ruled in vacating an attachment that allegations of payments made by one company for another without more do not satisfy the pleading requirements for a prima facie alter ego claim as follows:

> Dolco fails to meet this burden because it has not included any factual allegations that GML exercised complete domination over Moonriver. Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco "from time to time." ... <u>Dolco points only to two instances where GML made payments on behalf of Moonriver, but makes no allegation of intermingling of funds, nor any other factor relevant to the inquiry.</u> ... <u>Under Fed.R.Civ.P.Supp.R. E(2)(a), Dolco's solitary allegation insufficiently alerts Defendants to the basis of its alter ego claim.</u>
> (Emphasis added)

In the case at bar as in <u>Dolco</u>, Plaintiff's Verified Complaint is totally inadequate to plead an alter ego claim. Indeed, here even this solitary allegation concerning payments is undercut by the undisputed evidence of a loan between Brobulk and Hawknet, which shows why payments were made to Brobulk by the subcharterers in the first instance. Moreover, as pointed out in Brobulk's moving brief, these alter ego allegations would not even meet the lesser pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court in <u>Bell Atlantic Corporation v. Twombly</u>, 127 S. Ct. 1955, 167 L. Ed. 147 (2007), a case which Plaintiff did not mention, much less try to distinguish in its brief.

In addition, recognizing the inadequacy of its pleading based on the factors of domination and control, Plaintiff has effectively abandoned this theory of alter ego. In fact, in its answering papers, Plaintiff does not even use the phrase "domination and control". Instead, Plaintiff incredibly seems to be trying to rely on a fraud based theory of alter ego.[1]

As stated in paragraph 2 of the Hicks Declaration "it is evident that Brobulk was used as a vehicle to perpetuate a fraud" (see Hicks Declaration ¶11). Plaintiff also states at page 6 of its brief: "Simply stated evidence of intent to defraud creditors through the use of another corporate entity to divert funds will readily support such a pleading".

No allegations of fraud, however, are alleged in the Verified Complaint. The alter ego claim based on fraud obviously cannot be sustained without any allegations pertaining to same.

Moreover, it is totally improper to raise such a serious allegation for the first time in opposition papers, rather than a complaint containing specific factual allegations and support, so that Brobulk could understand the claim and respond. Indeed, the "fraud" that Brobulk is supposed to have committed is virtually incomprehensible. The only apparent "ground" for this baseless and false assertion is that Brobulk by receiving the two or three payments from the subcharterers were "facilitating and abetting Hawknet's efforts to avoid its debts and the attachment orders of this Court" (Plaintiff's Brief, page 5).

---

[1] In Brobulk's moving brief at page 12, it was made clear that under the law, alter ego could be based either on fraud or domination and control. Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp.2d 275, 282 (S.D.N.Y. 2006) ("Veil-piercing is appropriate in two circumstances: where the parent used the corporate entity to perpetuate a fraud, or where the parent has so dominated and disregarded the corporate entity's form that the entity primarily transacted the parent's business rather than its own"). Mr. Hicks in his declaration (¶11) refers to this page of Brobulk's brief, in an attempt to salvage its action under a new fraud based theory of alter ego. This attempt must fail for the reasons discussed above.

6

This allegation is totally untrue as these payments were made before any attachment orders were issued against Hawknet (Paulsson Reply Dec. ¶ 5; Prieto Reply Dec., ¶ 2). There is also no good faith basis to allege that Brobulk was somehow acting to aid Hawknet in avoiding its debts. In fact, Plaintiff was paid over $500,000 in hire by Brobulk as a result of the loan arrangement with Hawknet. It is therefore ludicrous for Plaintiff to be claiming a fraud in the circumstances. It should also be pointed out that Plaintiff's failure to mention this payment of hire from Brobulk in its Verified Complaint or answering papers indicates that it recognized that the Brobulk loan to Hawknet resulting in this payment assisted it, rather than harmed it.

In short, as none of these "fraud" allegations appear in the Verified Complaint they can provide no basis for the alter ego claim.

## CONCLUSION

For all the foregoing reasons, the order of attachment dated April 22, 2008 should be vacated and Brobulk's funds released.

Dated: New York, New York
       May 13, 2008

Respectfully submitted,

CARDILLO & CORBETT,
Attorneys for Defendant
BROBULK LIMITED

By: _____
Tulio R. Prieto (TP 8455)

29 Broadway, Suite 1710
New York, New York 10006
212-344-0464

7