UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
NATS EMPEROR SHIPPING LIMITED,

                Plaintiff(s),

      -against-

HAWKNET LIMITED and BROBULK LIMITED,

               Defendant(s).
-----------------------------------X

1:08-CV 08-3763 (BSJ)

FIRST
AMENDED
VERIFIED
COMPLAINT

Plaintiff, NATS EMPEROR SHIPPING LIMITED, (Plaintiff or "NATS EMPEROR"), by its attorneys, MAHONEY & KEANE, LLP, as and for a Complaint against Defendants, HAWKNET LIMITED ("HAWKNET") and BROBULK LIMITED ("BROBULK"), alleges, upon information and belief, as follows:

1.    This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.  Jurisdiction is based upon 28 U.S.C. § 1333, as well as the Court's diversity, pendent, supplementary and ancillary jurisdiction.

2.    Plaintiff makes a claim against Defendants for breach of a maritime contract (see infra).

3.    Plaintiff is a legal entity duly organized and existing pursuant to the laws of a foreign country.

4.    Defendant HAWKNET is a business entity organized and existing pursuant to the laws of a foreign country.

5.    Defendant BROBULK is a business entity organized and existing pursuant to the laws of a foreign country.

6.   Upon information and belief, HAWKNET is a wholly or partly owned subsidiary of Defendant BROBULK, or vice versa.

7.   Upon information and belief, HAWKNET uses Defendant BROBULK as a conduit to pay its debts and obligations and is otherwise an alter ego of BROBULK, or vice versa.

8.   Upon information and belief, BROBULK is a shell corporation through which Defendant HAWKNET conducts business, and vice versa.

9.   Upon information and belief, HAWKNET has no separate, independent identity from Defendant BROBULK, and vice versa.

10.  Upon information and belief, Defendant HAWKNET is the alter ego of Defendant BROBULK because HAWKNET dominates and disregards BROBULK's corporate form to the extent that HAWKNET is actually carrying on the business and operations of BROBULK, as if they were its own, or vice versa.

11.  Upon information and belief, BROBULK acts as a paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant HAWKNET and/or receives payments being made to Defendant HAWKNET, or vice versa.

12.  Defendant BROBULK was named as a receiving agent for Defendant HAWKNET in a sub-charter agreement for the use of the M/V NATS EMPEROR, while the relevant contract was in effect.

13.  On or about April 8, 2008, Defendant BROBULK received a payment on behalf of Defendant HAWKNET, from the sub-charterer of the M/V NATS EMPEROR, in or about the amount of $1,558,233.76 while the relevant contract was in effect.

14.  On or about April 10, 2008, Defendant BROBULK received a payment on behalf of Defendant HAWKNET, in or about the amount of $67,977.78 from the sub-charterer of the M/V NATS EMPEROR, while the relevant contract was in effect.

15. That a bill of lading was issued dated on/or about April 5, 2008 showing shipped cargo from Yantia, China whereas the vessel had not arrived at the Yantia, China on the date of issuance.  The freight paid pursuant to the fraudulent and pre-dated bill of lading was later used to pay BROBULK the payments referenced to herein.

16.  That BROBULK otherwise received freight payments due HAWKNET and arranged for disbursements other than to HAWKNET all of which was in aide of an effort to defraud plaintiff.

17. That BROBULK improperly and fraudulently paid itself a "commission" out of freight payments due HAWKNET and upon which plaintiff had a lien.

18.  Further the activities of BROBULK and HAWKNET were intended to defraud and _inter_ _alia_ defeat valid liens of plaintiff on sub-freights due to be received by HAWKNET but wrongfully and fraudulently diverted to BROBULK, GUY WALKER and others out of sub-freights earned by the M/V NATS EMPEROR and due HAWKNET.

19  BROBULK improperly and fraudulently paid itself a "commission" and did  disburse funds to Mr. Guy Walker among others out of funds properly due plaintiff.

20.  That at the times relevant in or about $159,896.79 was paid to GUY WALKER from freight payments due HAWKNET upon which

plaintiff had a lien.

21.    In   entering  into  a  purported  loan  agreement  with HAWKNET,  BROBULK  knew  or  should  have  known  that  HAWKNET  was insolvent  and  otherwise  incapable  of  paying  its  just  debts  and that  purported  loans  and  other  arrangements  were  to  the  detriment and  to  defraud  plaintiff,  _inter alia_  of  its  rightful  lien  on  sub-freights  due  under  the  charter  of  the  M/V  NATS  EMPEROR.

22.    That  the  purported  loan  by  BROBULK  to  HAWKNET  which resulted  in  the  diversion  of  sub-freights  due  on  the  M/V  NATS EMPEROR  was  negligent,  wrongful,  fraudulent  and  _inter alia_ intended  to  deprive  plaintiff  of  its  proper  lien  on  sub-freights and  otherwise  from  collecting  debts  from  HAWKNET.

23.    That  HAWKNET  at  all  times  knew  it  was  insolvent  and incapable  of  performing  the  charter  of  the  M/V  NATS  EMPEROR  by virtue  of  _inter alia_  its  breach  of  contract  with  ZINIFEX  CENTURY LTD.  resulting  in  just  debts  in  excess  of  US  $35,000,000.00  which rendered  HAWKNET  insolvent  and  which  fact  was  or  should  have  been known  to  BROBULK  at  all  times  relevant.

24.  The  purported  loan  agreement  between  BROBULK  and  HAWKNET was  entered  into  in  an  effort  to  defraud  creditors  and  in particular  to  deprive  plaintiff  of  its  charter  hire.

25.  That  the  purported  loan  agreement  between  BROBULK  and HAWKNET  and  transferred  freight  monies  earned  by  the  M/V  NATS EMPEROR  were  in  violation  of  _bona fide_  corporate  activities  and done  to  deceive  and  defraud  lawful  creditors  through  the  improper use  of  alter  ego  corporate  activities.

26.  Upon  information  and  belief  Defendants  are  affiliated companies  such  that  Defendant  BROBULK  is  now  or  will  soon  be holding assets belonging to Defendant HAWKNET, or vice versa.

27.  Upon  information  and  belief,  BROBULK  is  a  wholly  or partly owned subsidiary of Defendant HAWKNET, or vice versa.

28. Plaintiff, as owner, and Defendant HAWKNET, as charterer, entered into a time charter agreement dated February 29, 2008, for the use of the M/V NATS EMPEROR.

29. Under  the  charter  agreement,  Defendant  was  required  to make  payments  to  Plaintiff  for  hire,  freight,  dead  freight, bunkering,  port  expenses,  and  other  costs  associated  with operating the M/V NATS EMPEROR.

30.  On or about April 14, 2008, Defendant informed Plaintiff that it would not continue to pay for hire, freight, bunkers, port fees, or any other costs, as required by the charter agreement.

31.  On  or  about  April  14,  2008,  Defendant  revoked  the charter agreement entered into by the parties.

32.  Defendant breached the relevant agreement by unlawfully and  in  contravention  of  the  terms  of  the  agreement,  failing  to pay,  among  other  aspects,  hire,  freight,  dead  freight,  bunkering, as well as port dues, agency fees, loss of hire, survey fees, and other  costs  and  damages  associated  with  Defendant's  breach, including interest and legal fees.

33.  As  a  result  of  the  foregoing,  Plaintiff  has  incurred, and will continue to incur, costs and expenses for which Defendant is liable under the terms of the agreement between the parties.

34.  Plaintiff  has  placed  Defendant  on  notice  of  its  claim

that Defendant has breached the referenced agreement.

35.  Despite  Plaintiff's  repeated  demands,  Defendant  has
failed to pay the amounts due and owing to Plaintiff under the
agreement.

36.  Pursuant to the agreement, disputes are to be settled by
arbitration  in  London,  and  Plaintiff  will  shortly  commence
arbitration with Defendant, accordingly.

37.  Under the rules of such arbitration, interest, costs,
and attorneys' fees are routinely awarded to the prevailing party.

38.  As a result of Defendant's breach of the agreement,
Plaintiff has sustained damages, and, as best as can now be
estimated, Plaintiff expects to recover the following amounts by
way of arbitral award:

| | |
|---|---|
| Principal Claim | $1,102,000.00 |
| Interest (for a period of 3 yrs at 6.0%) | $210,499.63 |
| Attorneys' and Expert's Fees, Arbitration Expenses | $367,000.00 |
| **Total** | **$1,679,499.63** |

39. Plaintiff sues on its own behalf and as agent and trustee
on behalf of any other party who may now have or hereinafter
acquire an interest in this action.

40.  All conditions precedent required of Plaintiff in the
aforesaid agreement have been performed.

41.  Defendant cannot be found, within the meaning of Rule B
of the Federal Rules of Civil Procedure Supplemental Rules for

Certain Admiralty and Maritime Claims, within this District, but, upon information and belief, Defendant has or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Citibank, HSBC Bank USA NA, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., American Express Bank Ltd., Mellon Bank and/or UBS, which are believed to be due and owing to Plaintiff.

42. For the purpose of obtaining personal jurisdiction over Defendant and securing Plaintiff's claim as described above, Plaintiff seeks and order from this Court directing the Clerk of the Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching any assets, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit freights, sub-freights, charter hire, sub-charter hire, and/or other assets belonging to, due or for the benefit of Defendant, including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to the aforesaid garnishees and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served.

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That, since Defendant cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Court direct the Clerk of the Court to issue an order, pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including but not limited to the Bank of America, Bank of New York, Citibank, HSBC Bank USA NA, J.P. Morgan Chase, Standard Chartered Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., American Express Bank Ltd., Mellon Bank, UBS and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$1,679,499.63** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

C.    That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

     D.   That Plaintiff has such other and further relief as this Honorable Court may deem just and proper.

Dated:    New York, NY
          May 19, 2008

                        Respectfully submitted,

                        MAHONEY & KEANE, LLP
                        Attorneys for Plaintiff
                        NATS EMPEROR SHIPPING LIMITED

By:    _____
                        Edward A. Keane (EK 1398)
                        11 Hanover Square
                        at 76 Beaver Street
                        New York, NY 10006
                        Tel. (212) 385-1422
                        Fax (212) 385-1605
                        File No. 12/3574/B/08/4

<u>ATTORNEY VERIFICATION</u>

STATE OF NEW YORK   :
                    : SS.:
COUNTY OF NEW YORK   :

EDWARD A. KEANE, being duly sworn, deposes and says:

1. I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

2. I am the attorney of record for Plaintiff, NATS EMPEROR SHIPPING LIMITED, in this action. I am fully authorized to make this Verification on Plaintiff's behalf.

3. I have read the foregoing First Amended Verified Complaint. and the contents thereof are true and accurate to the best of my knowledge, information and belief.

4. The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

5. The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated:    New York, New York
         May 20, 2008

                                        Edward A. Keane (EK 1398)

Sworn to before me this
20th day of May, 2008

_____
Notary Public

JUDITH G. WOLFSON
NOTARY PUBLIC
State of New York No. 02WO5079944
Qualified in New York County