James H. Hohenstein
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
Telephone: (212) 513-3200
Telefax: (212) 385-9010
E-mail:  jim.hohenstein@hklaw.com
        chris.nolan@hklaw.com

ATTORNEYS FOR DEFENDANT,
BROBULK LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATS EMPEROR SHIPPING LIMITED,<br><br>Plaintiff,<br><br>-against-<br><br>HAWKNET LIMITED and BROBULK LIMITED,<br><br>Defendants. | 08 Civ. 3763 (BSJ) |

**BROBULK LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO VACATE MARITIME ATTACHMENT ORDER**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................................. 1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ........................................ 3

    A.    Nats Emperor's Original Complaint .................................................................. 3

    B.    Brobulk's Original Motion to Vacate ................................................................ 3

    C.    Nats Emperor's First Amended Verified Complaint ........................................ 4

    D.    Brobulk's Requests for Relief to the Court ....................................................... 4

**ARGUMENT** ............................................................................................................................ 7

    A.    THIS COURT HAS THE INHERENT POWER TO VACATE THE ATTACHMENT ORDER ON EQUITABLE GROUNDS ............................................................ 7

    B.    NATS EMPEROR'S REFUSAL TO INITIATE A PROCEEDING IN ENGLAND AGAINST BROBULK TO DETERMINE THE SUBSTANTIVE ISSUES AGAINST IT SUPPORT THE VACATUR OF THE ATTACHMENT ORDER ................................. 10

**CONCLUSION** ....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,
460 F.3d 434 (2d Cir. 2006) ................................................................................................. 7-10

*Blake Maritime v. Petrom*,
No. 05 Civ. 8033, 2005 WL 2875335 (S.D.N.Y. Oct. 31, 2005) .............................................10

*Chiquita Int'l Ltd. v. M/V Bosse*,
518 F. Supp. 2d 589 (S.D.N.Y. 2007) ........................................................................8, 9, 10, 12

*DSND Subsea AS v. Oceanografia, S.A. DE CV*,
No. 07 Civ. 576, 2008 WL 3020856 (S.D.N.Y. July 29, 2008) ...............................................13

*Glory Wealth Shipping Serv. Ltd. v. Five Ocean Corp.*,
No. 08 Civ. 1102, 2008 WL 3166680 (S.D.N.Y. Aug. 4, 2008) ...........................................7, 10

*Greenwich Marine v. S. S. Alexandra*,
339 F.2d 901 (2d Cir.1965) ................................................................................................10, 16

*Maersk, Inc. v. Neewra, Inc.*,
443 F.Supp.2d 519 (S.D.N.Y. 2006) ...................................................................................... 8-9

*Navision Shipping A/S v. Yong He Shipping (HK) Ltd.*,
No. 07 Civ. 9517, 2008 WL 3271999 (S.D.N.Y. Aug. 8, 2008) ..............................................15

*OGI Oceangate Trans. Co. v. RP Logistics Pvt. Ltd.*,
No. 06 Civ. 9441, 2007 WL 1834711 (S.D.N.Y. June 26, 2007) ..............................................7

*ProShipLine Inc. v. Aspen Infrastructures Ltd.*
No. 07 Civ. 10969, 2008 WL 336471 (S.D.N.Y. Feb. 1, 2008) ................................................8

*Sixteen Thirteen Marine S.A. v. Congentra A.G.*,
No. 08 Civ. 1318, 2008 WL 2885307 (S.D.N.Y. July 25, 2008) .............................................13

*Tide Line Inc. v. Eastrade Commodities, Inc.*,
No. 06-CV 1979, 2006 WL 4459297, 2007 AMC 252 (S.D.N.Y. Aug. 15, 2006) ......... *passim*

*Transp. Contractors, Ltd. v. Industries Chemiques du Senegal*,
411 F.Supp.2d 386 (S.D.N.Y.2006) .........................................................................................10

*Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*,
519 F. Supp. 2d 399 (S.D.N.Y. 2007) .........................................................................11-12, 14-15

**OTHER AUTHORITIES**

Fed. R. Civ. B .................................................................................................................... *passim*

Fed. R. Civ. P. E(4)(f) .................................................................................................. 1, 7, 14

## **PRELIMINARY STATEMENT**

Defendant Brobulk Limited ("Brobulk" or "Defendant") respectfully submits this motion pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to vacate the Court's *Ex Parte* Order for Process of Maritime Attachment dated April 22, 2008 (the "Attachment Order") (Docket Entry No. 3), obtained by Plaintiff Nats Emperor Shipping Ltd. ("Nats Emperor" or "Plaintiff") some four months ago. Because the circumstances surrounding the Court's issuance of the Attachment Order (as well as its May 14th Order directing Plaintiff to file an amended complaint by May 20th), have changed significantly, it is both appropriate and necessary to re-consider whether Plaintiff should still be entitled to sustain and maintain its Attachment Order against Brobulk.

Specifically, day after day, month after month, after the attachment of over one-half million dollars of Brobulk's property and while Nats Emperor presumably continues to daily serve the Attachment Order on garnishee banks, Nats Emperor has failed to initiate legal proceedings on the merits in any venue anywhere in the world against Brobulk, or upon information and belief, against defendant Hawknet Limited ("Hawknet"). Because of Nats Emperor's unexplained and prejudicial dilatory conduct, Brobulk respectfully asks this Court to determine the following simple question: When is enough, enough? Brobulk submits the answer is now.

On behalf of their clients, admiralty practitioners in this District are afforded the powerful ability to attach the assets of a defendant in aid of and as security for the proceeding where the underlying merits of the dispute will be resolved, which proceedings, in the majority of Supplemental Rule B cases, do not take place in this District. Maritime attachments are premised on the notion that peripatetic maritime entities are difficult to enforce a judgment against – so much so that pre-judgment attachments are allowed in this area of law much more

than any other. Although the proceeding (usually an arbitration) need not be commenced at the time of filing a Supplemental Rule B application, a plaintiff should not and cannot be allowed to attach a defendant's assets in aid of a proceeding which a plaintiff committed to promptly commence as stated in its complaint but does not do so. Stated differently, given the reach and power of the Supplemental Rule B process, a plaintiff has a concomitant duty to move promptly to adjudicate the claim which forms the basis for the Rule B action. To utterly fail in that duty should not be without consequences.

This Court is faced with such a situation here. Nats Emperor has attached hundreds of thousands of dollars of Brobulk's monies but has refused to commence legal proceedings against Brobulk in London, notwithstanding its promises in its Verified Complaint (Docket Entry No. 1) and its First Amended Verified Complaint (Docket Entry No. 23) to initiate arbitration. Indeed, this Court, based on Nats Emperor allegations in both Complaints, allowed Plaintiff the right to seek to attach $367,000 for "attorneys' and expert's fees, arbitration expenses" for an arbitration which some four months later it has yet to commence or to take any other action to resolve its claims against Brobulk. This should not be allowed to stand.

Nats Emperor has misapplied Supplemental Rule B and abused its process with its continual inaction. This Honorable Court, sitting in admiralty as a court of equity, has the inherent power to vacate the Attachment Order Nats Emperor obtained many months ago based on representations it has unilaterally failed to live up to.

Even apart from the allegations in the Verified Complaint and the First Amended Verified Complaint, because of the numerous times Nats Emperor has been put on notice of its failings by Brobulk, it should not be afforded any additional time to initiate legal proceedings against Brobulk. Instead, it is appropriate for this Court to send a message to all practitioners in

this District that failure to initiate underlying proceedings on a timely basis will not be countenanced and mandates the vacatur of an order of attachment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Nats Emperor's Verified Complaint

According to the allegations made by Nats Emperor in its initial Verified Complaint dated April 21, 2008, Nats Emperor entered into a time charter party dated February 29, 2008, with defendant, Hawknet covering the vessel NATS EMPEROR (the "Vessel"). Nats Emperor claims that Hawknet "revoked" the charter party, causing damages to Nats Emperor in the principal amount of $1,102,000. (Verified Complaint ¶¶ 20, 27). To this principal amount, Nats Emperor added interest, attorneys' fees and costs in the amount of $577,299.63, for a total claim of $1,679,499.63. (*Id.* ¶ 27).

With respect to Brobulk, Nats Emperor alleged that Hawknet is the *alter-ego* of Brobulk "or vice versa." (*Id.* ¶¶ 6-16).

Nats Emperor also recognized that the Vessel charter party contained an arbitration clause. It stated, "[p]ursuant to the agreement, disputes are to be settled by arbitration in London, and Plaintiff will shortly commence arbitration with Defendant, accordingly." (*Id.* ¶ 25) (emphasis added). In its Verified Complaint, Nats Emperor failed to define what entities "Defendant" referred to, but it sued two companies, Hawknet and Brobulk, alleged that its claim "against Defendants" was for the breach of a maritime contract, and refers to "Defendant Hawknet" and "Defendant Brobulk" throughout the pleading. (*Id.* ¶¶ 2, 4, 5, etc.).

### B.     Brobulk's Original Motion to Vacate

On May 6, 2008, Brobulk moved this Court by Order to Show Cause why the Attachment Order should not be vacated on the grounds that Nats Emperor's *alter-ego* allegations with respect to Brobulk were wholly insufficient. (Docket Entry No. 14). After fully briefing this

issue, this Court held a hearing on May 14, 2008 wherein it (1) denied Brobulk's motion to vacate the Attachment Order; (2) directed Nats Emperor to file an amended complaint, based on representations made at the hearing, by May 20, 2008; and (3) allowed the parties limited discovery for a period of sixty days concerning Nats Emperor's *alter-ego* allegations directed against Brobulk. (Docket Entry No. 22).

### C.  Nats Emperor's First Amended Verified Complaint

On May 19, 2008, Nats Emperor filed its First Amended Verified Complaint ("FAVC") against Hawknet and Brobulk. The allegations against Hawknet and the total amount sought to be attached did not change in any material way. With respect to Brobulk, Nats Emperor expanded on its *alter-ego* allegations and allegations of fraudulent activities. (FAVC ¶¶ 8-35). Most relevant for the purposes of this motion, although nearly a month had passed since it filed its original verified complaint, Nats Emperor repeated the same sentence concerning arbitration, stating it "will shortly commence arbitration with Defendant, accordingly." (FAVC ¶ 36) (emphasis added).

### D.  Brobulk's Requests for Relief to the Court

Subsequently, Brobulk submitted a letter to the Court on June 11, 2008 concerning the FAVC and the *alter-ego* issues surrounding discovery. Recognizing the *prima facie* standard for review of Rule B applications, Brobulk stated that it would not be filing another motion to vacate on those grounds. As such, Brobulk requested that the Court's discovery order as to the *alter-ego* issues be rescinded. While Nats Emperor objected to Brobulk's request, this Court ultimately granted Brobulk's rescission request in a June 24, 2008 Order based on Brobulk's "definitive statement that it will not file a motion to vacate on the alter-ego issue." (Docket Entry No. 28).

The other issue raised by Brobulk in its June 11th letter concerned Nats Emperor's refusal to initiate any legal proceedings against Brobulk as to the substantive allegations made against it, as raised in Nats Emperor's pleadings and notwithstanding the statements that it would be filing a proceeding "shortly." Brobulk requested a status conference where a stay of this action would be discussed based on Nats Emperor's inactivity.

In particular, Brobulk's June 11th letter noted that on May 23, 2008, Brobulk's English attorneys wrote Nats Emperor's English attorneys referring to the arbitration allegation in the Complaint in this action and called upon Nats Emperor to commence some sort of proceedings against Brobulk forthwith, as alleged.[1] On May 27, 2008, Nats Emperor's London attorneys responded to Brobulk's demand and stated the reference in ¶ 36 of the Complaint was to Hawknet, not Brobulk.[2] Further, in the letter, Plaintiff's London counsel stated "[i]t has never been asserted that our clients had an arbitration agreement with Brobulk. Until the *alter ego* issue is resolved that remains the situation." (*Id.*).

On June 9, 2008, Brobulk's English attorneys responded to the strange position take by Nats Emperor's counsel in their May 27, 2008 letter. Besides noting again that Nats Emperor just recently in the FAVC alleged that arbitration would be commenced shortly, Nats Emperor was reminded that the substantive issues could not be heard in the ancillary New York Rule B proceeding. As such, the very reasonable solution was a London arbitration between Nats Emperor and Brobulk which it would agree to participate in on an expedited basis. Indeed, Brobulk was willing to work through the summer months to have Nats Emperor's substantive

---

[1] A copy of the May 23rd letter is attached as Exhibit 1 to the Affirmation of Christopher R. Nolan dated August 21, 2008 ("Nolan Aff."). It was also included as Exhibit B to the June 11th letter.

[2] A copy of the May 27th letter is attached as Exhibit 2 to the Nolan Aff. It was also included as Exhibit C to the June 11th letter.

claims heard and adjudicated, "with a view to a final hearing by the end of August or as soon as possible thereafter."[3]   Of course, Nats Emperor did not commence such an arbitration.

Brobulk's English attorneys once again raised the issues of arbitration and English High Court proceedings, or lack thereof, in a letter to Nats Emperor's counsel on July 3, 2008.  After noting it had almost been a month since Brobulk's arbitration offer to which no answer was received, Nats Emperor was reminded of its option to sue in a court of law:  "[o]f course, your Clients may prefer to sue Brobulk in English High Court, which your Clients are perfectly at liberty to do.  Brobulk are, of course, present within the jurisdiction of the High Court, but in order to make matters easier for you we confirm that we have instructions to accept service of a High Court Claim Form on behalf of Brobulk."[4]  Nats Emperor still did not commence an English High Court proceeding, even with the service of process offer.

In total, there have been seven letters to this Court from Brobulk and Nats Emperor concerning the issue of if/when an action in England would be initiated by Nats Emperor.[5]  Because of Nats Emperor's position in London, which is unchanged since May 27, Brobulk is left in the curious situation of Nats Emperor alleging an *alter ego* and fraud theory in an ancillary Rule B proceeding in New York, alleging that it would commence arbitration in London which it has not, and Plaintiff having attached Brobulk's funds in New York without stating when or how the substantive issues of *alter ego* and fraud will be determined.

---

[3] A copy of the June 9th letter is attached as Exhibit 3 to the Nolan Aff. It was also included as Exhibit D to the June 11th letter.

[4] A copy of the July 3rd letter is attached as Exhibit 4 to the Nolan Aff. It was also enclosed with a July 9, 2008 letter to the Court from Brobulk.

[5] The seven letters are dated June 11, 2008 (Brobulk), June 19 (Nats Emperor), June 20 (Brobulk), July 9 (Brobulk), July 10 (Nats Emperor), July 11 (Brobulk), and August 13 (Brobulk).

## ARGUMENT

### A. THIS COURT HAS THE INHERENT POWER TO VACATE THE ATTACHMENT ORDER ON EQUITABLE GROUNDS

It is within this Court's broad discretion to vacate the Attachment Order. In order to sustain an *ex parte* order of attachment pursuant to Rule B, the plaintiff must show:

> 1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006).

Because "the ease with which a *prima facie* case for attachment can be made creates a real risk of abusive use of the maritime remedy," *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.*, 384 F. Supp. 2d 726, 729 (S.D.N.Y. 2005), *vacated on other grounds*, 460 F.3d 434 (2d Cir. 2006), Rule E(4)(f) provides that any person claiming an interest in the attached property may have "a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated or other relief granted consistent with these rules." Fed.R.Civ.P.Supp.R. E(4)(f).[6]

Even if the technical requirements for a Rule B attachment have been met, the Second Circuit in *Aqua Stoli* provided three equitable grounds wherein an attachment may be vacated:

> 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district

---

[6] When considering the adequacy of a plaintiff's claim, courts within this district have applied different standards. Though some courts employ a more stringent "reasonable grounds" evidentiary standard and assess the offering of proof a plaintiff produces in support of claim (and meeting its burden under Rule E(4)(f)), the majority of courts interpreting *Aqua Stoli* have applied the *prima facie* pleading standard when determining whether to uphold the plaintiff's maritime attachment. *See, e.g., Glory Wealth Shipping Serv. Ltd. v. Five Ocean Corp.*, No. 08 Civ. 1102, 2008 WL 3166680, at *2-3 (S.D.N.Y. Aug. 4, 2008) (collecting cases assessing both standards and ultimately joining the majority of courts in employing the *prima facie* standard); *OGI Oceangate Trans. Co. v. RP Logistics Pvt. Ltd.*, No. 06 Civ. 9441, 2007 WL 1834711, at *4 (S.D.N.Y. June 26, 2007) (same). Here, the Court need not determine whether the reasonable grounds or *prima facie* standard is proper, as Nats Emperor's inactivity is not an adequacy of pleading failure, but a failure to follow-through with prosecuting the substance of its claims against Brobulk in a legal proceeding.

where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

460 F. 3d at 436.

However, under certain circumstances, courts can expand these "guidelines" under their "'inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of plaintiff.'" *Chiquita Int'l Ltd. v. M/V Bosse*, 518 F. Supp. 2d 589, 597-98 (S.D.N.Y. 2007) (quoting *Maersk, Inc. v. Neewra, Inc.*, 443 F.Supp.2d 519, 528 (S.D.N.Y. 2006)) (other internal quotations omitted) (citing cases); *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 07 Civ. 10969, 2008 WL 336471, at *7 (S.D.N.Y. Feb. 1, 2008).

The *M/V Bosse* court, for example, vacated an attachment because the plaintiff abused the Rule B attachment process. In *M/V Bosse*, the court addressed issues concerning two separate Rule B actions initiated by nearly the same parties arising out of damages suffered from delays in shipping Chiquita bananas. 518 F. Supp. 2d at 591 (referring to the separate Rule B actions as the "Chiquita Action" and the "Bosse Action"). The Chiquita Action involved plaintiffs Chiquita International Limited ("Chiquita") and Great White Fleet Limited ("GWF") obtaining a Rule B Order against defendants *M/V Bosse* (the Vessel), Bosse Shipping Ltd. ("Bosse") and Holy House Shipping AB ("Holy House"), resulting from the cargo-delay damages. *Id.*

Separately, and while the Chiquita action was still pending, Bosse filed a Rule B action against GWF also in the Southern District of New York seeking damages arising out of the Chiquita bananas shipment by way of fines, bunkering costs, and indemnity for any monies owed to Chiquita in the Chiquita Action. *Id.* at 592. In both Actions, defendants filed motions to vacate the attachments on various grounds. Focusing on the Bosse Action, the court declined to address the merits of the arguments because it has nothing to do with whether a *prima facie* claim had been shown, along with whether the technical requirements for a Rule B had been met.

*Id.* at 597. Instead, the court focused on the three equitable guidelines set forth by the *Aqua Stoli* court and found that the plaintiff Bosse had run afoul of at least two of them. *M/V Bosse*, 518 F. Supp. 2d at 598 (quoting *Aqua Stoli*, 460 F.3d at 444).

In particular, the court noted that defendant GWF in the Bosse Action was subject to suit in a convenient jurisdiction, the Southern District, where it had initiated the Chiquita Action. In other words, because GWF was present in the Southern District of New York by virtue of having initiated the Chiquita Action, Bosse's attempt to use Rule B failed because GWF already was present within the jurisdiction for purposes of the dispute at issue. Moreover, concerning the second equitable guideline, the plaintiff could obtain *in personam* jurisdiction over defendant GWF in the Southern District because of the Chiquita Action. *Id.* By filing a separate Rule B action and attaching assets when it already had jurisdiction over defendant GWF in the Chiquita Action, the court found that defendant Bosse abused the attachment process by violating the equitable guidelines set forth in *Aqua Stoli*:

> Essentially, Bosse abused the attachment process and took advantage of the *ex parte* nature of a Rule B order, despite Bosse's knowledge that GWF already was before the Southern District of New York in the related *Chiquita* action arising out of the same facts and between the same parties. The purpose of a maritime attachment is to 'secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory.' *Aqua Stoli Shipping Ltd.*, 460 F.3d at 435. GWF, however, was not an 'absent party,' and securing jurisdiction was unnecessary considering the pending *Chiquita* action. Given Bosse's knowledge of the pending *Chiquita* action, seeking an *ex parte* order of attachment in the *Bosse* action was an improper practice and showed a want of equity on the part of Bosse. *See Maersk, Inc.*, 443 F.Supp.2d at 528. Ultimately, Bosse's actions are not in accordance with the purposes of maritime attachments.

*M/V Bosse*, 518 F. Supp. at 599-600. As a result of the plaintiff's improper acts, the *M/V Bosse* court granted the defendant's motion to vacate. *Id.* at 600.

A short time after, Judge Sweet followed Judge Leisure's *M/V Bosse* decision with a similar holding in *ProShipLine* where the court vacated a Rule B attachment obtained by a

defendant in one Rule B action (ProShipLine) which then had filed a separate Rule B proceeding based on counterclaims that should have been alleged in the original Rule B proceeding. In so ruling, Judge Sweet addressed his authority to vacate an attachment on equitable grounds:

> As the Second Circuit has stated, '[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.' *Transp. Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F.Supp.2d 386, 396 (S.D.N.Y.2006) (citing *Greenwich Marine v. S. S. Alexandra*, 339 F.2d 901, 905 (2d Cir.1965)). *See also Blake Maritime v. Petrom*, No. 05 Civ. 8033(PAC), 2005 WL 2875335, at *2 (S.D.N.Y. Oct. 31, 2005) ('[A] district court has the inherent authority to vacate an attachment 'upon a showing of any improper practice' or a 'manifest want of equity on the part of plaintiff.'' (internal citations omitted)), *cited in Transp. Contractors, Ltd.*, 411 F.Supp.2d at 386.

*ProShipLine*, 533 F. Supp. 2d at 429.

Because it is clear this Court has the authority to vacate an attachment on equitable grounds, the ultimate question then becomes whether such action is appropriate here. Brobulk submits the answer is "yes" as Nats Emperor has abused the attachment process by failing to initiate any arbitration or other English legal proceeding against Brobulk in a prompt manner. Under strikingly similar circumstances, Chief Judge Kimba Wood in *Tide Line Inc. v. Eastrade Commodities, Inc.*, No. 06-CV 1979, 2006 WL 4459297, 2007 AMC 252, 272-74 (S.D.N.Y. Aug. 15, 2006), succinctly addressed the inherent problems with attaching a defendant's monies and then taking no further action, as discussed below.

### B. NATS EMPEROR'S REFUSAL TO INITIATE A PROCEEDING IN ENGLAND AGAINST BROBULK TO DETERMINE THE SUBSTANTIVE ISSUES AGAINST IT SUPPORT THE VACATUR OF THE ATTACHMENT ORDER

Supplemental Rule B proceedings are ancillary security actions not meant to determine the merits of the underlying disputes. *See Chiquita*, 518 F. Supp. 2d at 597; *Glory Wealth*, 2008 WL 3166680, at *3 (recognizing the Second Circuit's view in *Aqua Stoli* that the Rule B attachment process should be "a limited inquiry."). This Court acknowledged during a previous

- 10 -

hearing that it did not expect to have to consider the merits of the dispute between the parties.[7] And while Nats Emperor was not required to initiate a legal proceeding against Brobulk before filing its Rule B application in April, it cannot sit on its hands thereafter and refuse to bring an appropriate action in England against Brobulk. *See Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, 519 F. Supp. 2d 399, 403-04 (S.D.N.Y. 2007) (admonishing the plaintiff for having failed to initiate an arbitration and ruling that it would vacate the order of attachment if a proceeding was not commenced somewhere else shortly).

The plaintiff in *Tide Line* similarly attempted to do nothing after attaching the assets of one of the defendants. In *Tide Line*, the defendant Transclear, S.A. filed a motion to vacate *inter alia* as to insufficient *alter-ego* allegations in the plaintiff Tide Line, Inc.'s complaint. After granting the motion to vacate, while allowing Tide Line to amend its pleadings (and leaving the attachment in place), the court emphasized another problem it saw in the horizon with respect to the plaintiff's claims against Transclear. *Tide Line*, 2007 A.M.C. at 272.

During a hearing on the motion to vacate, the plaintiff was unable to explain why an *alter-ego* defendant was not being included in London arbitration when it had made *alter-ego* allegations against the defendant in its complaint. 2007 A.M.C. at 273-74. Chief Judge Wood noted that a non-signatory to a contract could be compelled to arbitration on an *alter-ego* theory, though did not decide the issue at that time because the issue was not brought before the court. *Id.* at 273. The court further noted though that the plaintiff provided no support for the notion of

---

[7] A copy of the May 14 hearing transcript is attached as Exhibit 4 to the Nolan Aff. It was also included as Exhibit A to the June 11 letter. *See* Hearing Transcript, 10:8-10. Counsel for Plaintiff also stated he would discuss with Plaintiff's English solicitors whether the dispute between Plaintiff and Brobulk could be resolved in London. (*Id.* 18:14-21). In the June 11th letter, Brobulk also suggested that a stay of these proceedings would be appropriate in light of an arbitration proceeding. Of course, Nats Emperor's continued failure to initiate an arbitration against Brobulk dictated instead its moving for vacatur of the Attachment Order. Nonetheless, Brobulk reserves all of its rights with respect to this issue.

litigating *alter-ego* liability in the New York court when arbitration proceeds elsewhere against the other defendant. *Id.*

Here, this Court is asked to solve the issue that rightly troubled Chief Judge Wood in *Tide Line*. There are presumably four possible scenarios with which Nats Emperor could have followed before this point: (1) Nats Emperor could have tried to have the substantive *alter-ego* and fraud claims against Brobulk litigated in this Court; (2) Nats Emperor could have initiated London arbitration against Brobulk and Hawknet; (3) Nats Emperor could have initiated arbitration solely against Brobulk; or (4) Nats Emperor could have filed its tort action against Brobulk in the English High Court by way of a Claim Form. Nats Emperor has instead done nothing.

With respect to the first option, it is not possible. As Chief Judge Wood noted in *Tide Line*, there is no authority for having the substantive issues alleged by Nats Emperor decided in this Rule B proceeding. 2007 A.M.C. at 273. From a practical standpoint, Brobulk would move to dismiss on *forum non conveniens* grounds if Nats Emperor attempted to do so as there is no connection whatsoever to New York with respect to the substantive issues. *See Wilhelmsen*, 519 F. Supp. 2d at 403 n.2 (noting that a dismissal on *forum non conveniens* grounds, when a plaintiff intimated it would seek to have the merits decided in the Rule B proceeding, "would seem to have considerable merit[]."). All of the documents, possible witnesses, and counsel engaged to determine the substantive issues are in England. Moreover, all of the key transactions alleged by Nats Emperor took place in England which obviously implicates English substantive law. Thus, there cannot be, and should not be, any determination of the ultimate legal issues involving Brobulk here. *See Chiquita Int'l*, 518 F.Supp.2d at 597 ("The Court need not and should not, reach the merits of the [Rule B] motion as that is properly left to the London

arbitration to decide."); *Sixteen Thirteen Marine S.A. v. Congentra A.G.*, No. 08 Civ. 1318, 2008 WL 2885307, at *4, *6-10 (S.D.N.Y. July 25, 2008) (noting throughout the opinion on a myriad of legal issues that it would not "usurp the role of the London arbitrators whose job it is to decide these issues."); *DSND Subsea AS v. Oceanografia, S.A. DE CV*, No. 07 Civ. 576, 2008 WL 3020856, at *10 (S.D.N.Y. July 29, 2008) ("[n]either plaintiff nor defendant has expressed an intention-or indeed, an ability—to litigate the underlying claims in this District" and noting that the plaintiff instead, properly, initiated arbitration in London).

Concerning options two and three, Brobulk, <u>in writing</u>, agreed to participate in a London arbitration with Nats Emperor. Unlike in *Tide Line* where Chief Judge Wood stated a motion to compel arbitration against the defendant may be necessary and that theoretically English law may bar said defendant from appearing in the arbitration, 2007 A.M.C. at 273, no such impediment exists here. In Brobulk's English counsel's May 23 and June 9 letters, it stated in every way imaginable that Brobulk would be willing to participate in a London arbitration with Nats Emperor to resolve the legal issues raised by Nats Emperor in the New York Rule B proceedings. Indeed, Brobulk went to so far as to agree to appoint the London arbitrator itself (in the May 23rd letter) or participate in an arbitration commenced by Nats Emperor, all pursuant to the parties entering into an arbitration agreement which it was ready, willing, and able to do (in the June 9th letter).[8] *See* Nolan Aff. Exhs. 1 and 3. And to resolve any doubt, Brobulk again in the context of this motion confirms it is willing and ready to participate in a London arbitration concerning the allegations raised by Nats Emperor in its Rule B application.

---

[8] Brobulk respectfully reserves its right to file a declaration with its reply papers should Nats Emperor improperly argue that English law precludes Nats Emperor and Brobulk from arbitrating their dispute in London or any other English law issue.

Finally, with respect to the fourth option, i.e., of Nats Emperor instituting a lawsuit against Brobulk in the English High Court, Nats Emperor is able to do so today without any agreement from Brobulk. Both parties have English attorneys already retained, the witnesses are there, as well as the necessary documents to defend the wrongful *alter-ego* and fraud claims. And as an entity with its principal place of business in England, Brobulk is without question subject to jurisdiction there. Nats Emperor is fully aware of this. However, when Brobulk raised the issue of English High Court litigation in its May 23rd letter, Nats Emperor ignored it in its May 27th response letter. *See* Nolan Aff. Exhs. 1 and 2. Brobulk's attorneys went so far as to offer to accept service of process on behalf of Brobulk in its July 3rd letter only to be ignored. *Id.* Exh. 4. And now, nearly two months later, no suit has been filed in the English High Court.

With Nats Emperor refusing to take any step,[9] let alone options (1), (2), (3), or (4), this Court is left with deciding whether it is equitable to allow Nats Emperor to continue to restrain Brobulk's monies *ad infinitum*. Brobulk respectfully submits that Nats Emperor has had numerous opportunities to initiate London arbitration against Brobulk or an English court proceeding to determine the substantive issues and has refused to do so. As early as May 23, 2008 in England, and in letter after letter to this Court and Nats Emperor (on June 11, June 20, July 9, July 11, and again on August 13 before filing this motion), Brobulk raised the issue of initiating legal proceedings against it and Nats Emperor still refused to do so.

Under similar circumstances, courts within this District since Chief Judge Wood's *Tide Line* decision have expressed the same displeasure against plaintiffs that abuse the Rule B process by their inaction.

For example, in *Wilhelmsen*, Judge McMahon recognized that a plaintiff did not have to commence an action before filing a Rule B, but that there is no excuse for not doing so soon

---

[9] Nats Emperor has even failed to formally serve Brobulk pursuant to Fed. R. Civ. P. 4(m).

thereafter. 519 F. Supp. 2d at 403. In concluding its ruling on the issue, the court stated, "this Court will not hesitate to lift the attachment after a reasonable time if Wilhelmsen fails to initiate litigation on the merits somewhere." *Id.* at 404.

This month, Judge Chin provided another stern warning to the admiralty Bar and the plaintiff in particular in *Navision Shipping A/S v. Yong He Shipping (HK) Ltd.*, No. 07 Civ. 9517, 2008 WL 3271999, at *5 (S.D.N.Y. Aug. 8, 2008). After denying the defendant's motion to vacate and motion to dismiss on grounds different than the motion at bar, Judge Chin concluded his opinion by stating:

> Nevertheless, it is troubling that more than seven months have elapsed and Navision has yet to prosecute its claims against Shanghai Fareast in any jurisdiction. The Order of Attachment freezes Shanghai Fareast's property pending litigation in another jurisdiction, but Navision should not be permitted to tie up the property indefinitely by delaying commencement of the other action. Accordingly, if Navision does not proceed with its underlying action within ninety days of this decision, Shanghai Fareast may move to vacate the Order of Attachment on the grounds that Navision has failed to prosecute its underlying claim.

2008 WL 3271999, at *5.

In *Navision*, there is no indication in the opinion that the defendant was as vigilant as Brobulk in raising the issue of the plaintiff's continual failure to prosecute its underlying claim in an arbitration or any venue for that matter, let alone whether the defendant briefed the issue in its motion. This may explain Judge Chin's allowance of a 90-day grace period before considering vacatur of the order of attachment. Here, however, Nats Emperor has no excuse whatsoever. It has been put on notice multiple times and chose to do nothing – forcing Brobulk to expend time and money preparing this motion and this Court to expend its valuable time and energies deciding Brobulk's motion seeking immediate judicial relief from Nats Emperor's prejudicial actions.

As it is within the Court's inherent power to adapt a ruling based on the equities of a particular situation, *Greenwich Marine*, 339 F.2d 901 at 905, the totality of the circumstances warrant vacating the Attachment Order and dismissal of Brobulk from this action on the grounds of Nats Emperor's abuse of the Supplemental Rule B attachment process.

## CONCLUSION

For the foregoing reasons, Brobulk respectfully request that the Court grant its motion to vacate the Attachment Order, along with such other and further relief as this Court deems fair and just.

Dated: New York, New York
      August 21, 2008

HOLLAND & KNIGHT LLP

By: _____
James H. Hohenstein
Christopher R. Nolan
195 Broadway
New York, New York 10007
Telephone: (212) 513-3200
Telefax: (212) 385-9010
jim.hohenstein@hklaw.com
chris.nolan@hklaw.com

*Attorneys for Defendant, Brobulk Ltd.*

# 5556161_v1