James H. Hohenstein
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY  10007-3189
Telephone: (212) 513-3200
Telefax: (212) 385-9010
E-mail:  jim.hohenstein@hklaw.com
      chris.nolan@hklaw.com

ATTORNEYS FOR DEFENDANT,
BROBULK LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATS EMPEROR SHIPPING LIMITED,<br><br>      Plaintiff,<br><br>    -against-<br><br>HAWKNET LIMITED and BROBULK LIMITED,<br><br>      Defendants. | 08 Civ. 3763 (BSJ)<br><br>**AFFIRMATION OF<br>CHRISTOPHER R. NOLAN** |

CHRISTOPHER R. NOLAN, an attorney admitted to practice in the State of New York,

affirms under penalty of perjury:

1.    I am a member of the bar of this Court and associated with the law firm of

Holland & Knight LLP, attorneys for Defendant, Brobulk Limited ("Brobulk" or "Defendant").  I

make this affirmation for the convenience of the Court and in support of Brobulk's motion for an

Order, pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and

Asset Forfeiture Actions to vacate the Court's *Ex Parte* Order for Process of Maritime

Attachment dated April 22, 2008.

2.    Attached hereto as Exhibit 1 is a true and correct copy of a letter dated May 23, 2008, from Brobulk's English attorneys to Plaintiff Nats Emperor Shipping Limited's ("Nats Emperor"), English attorneys with respect to this action.

3.    Attached hereto as Exhibit 2 is a true and correct copy of a letter dated May 27, 2008, from Nats Emperor's English attorneys to Brobulk's English attorneys with respect to this action.

4.    Attached hereto as Exhibit 3 is a true and correct copy of a letter dated June 9, 2008, from Brobulk's English attorneys to Nats Emperor's English attorneys with respect to this action.

5.    Attached hereto as Exhibit 4 is a true and correct copy of a letter dated July 3, 2008, from Brobulk's English attorneys to Nats Emperor's English attorneys with respect to this action.

6.    Attached hereto as Exhibit 5 is a true and correct copy of a transcript for the May 4, 2008, hearing before this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 21, 2008.

_____
CHRISTOPHER R. NOLAN

# EXHIBIT 1



# Winter Scott
## Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

DATE:             23 May 2008

TO:               020 7929 3748
                  Waterson Hicks
ATTENTION:        John Hicks Esq
FROM:             Tim Houghton
OUR REF:          TJH/nma/2/214
NO. OF PAGES:     2

**CONFIDENTIALITY NOTICE:** This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Dear Sirs,

Re:   MV "NATS EMPEROR"

We refer to the Amended Complaint filed by your client in the District Court for the Southern District of New York, between your Clients as Plaintiff and Hawknet Ltd and our Clients as Defendants.

Paragraph 36 of the Amended Complaint repeats the statement made in paragraph 25 of the original Complaint filed on 21 April that:

> *"Pursuant to the agreement [i.e. the time charter dated 29 February 2008], disputes are to be settled by arbitration in London, and Plaintiff will shortly commence arbitration with Defendant, accordingly."*

Your client has not taken any steps to commence an arbitration since it made that statement to the New York Court in the original Complaint more than 4 weeks ago.

In the circumstances, we call upon you to commence arbitration proceedings within 1600 London time, 27th May 2008. If you do not do so, we shall conclude that, contrary to the statements that your Clients have made to the Court in New York, they in fact have no intention to commence arbitration proceedings.

**EXHIBIT**

**B**

ALL-STATE LEGAL®

Partners: Glenn Winter  Ken Scott  Michael Ellis  Damian Wilkes  Tim Houghton  James King  Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority

VAT No GB 819417416

You will be aware, of course, that our Clients dispute every aspect of your Clients' alleged claim, including its assertion that there is between your Clients and Brobulk Ltd an arbitration agreement. Brobulk are not a party to the charterparty. There is thus no agreement between our respective clients for their disputes to be decided by arbitration. For the avoidance of doubt, therefore, we deny that the arbitrator whom you appoint has jurisdiction over your Clients' purported claim, but we will nevertheless appoint an arbitrator in response (whilst objecting to jurisdiction for the purposes of section 31 of the Arbitration Act 1996 and reserving our position under section 67 thereof) for the narrow purpose of allowing the arbitrators to rule on whether they have jurisdiction. Assuming the ruling is in our client's favour, your Clients will then be required instead to pursue their alleged claim by the appropriate method of High Court proceedings brought by way of a Claim Form.

Further, there could be no possible basis for the assertions of alter ego and fraud to be repeated in the arbitral proceedings or in the High Court claim. They are insupportable in the New York claim and they would be equally insupportable in the London proceedings. Your firm will of course be fully aware of the Code of Conduct's prohibition on alleging fraud where there is no material which can reasonably be believed to establish a fraud and you and your Clients will be aware too of the costs consequences of making such serious and unsupported allegations.

Yours faithfully,

WINTER SCOTT

# EXHIBIT 2



**wh**

**waterson hicks**

SOLICITORS

130 Fenchurch Street
London EC3M 5LY

FACSIMILE TRANSMISSION

DATE   :   27 May 2008

PAGES :   1

| | | |
|---|---|---|
| TO | : | Winter Scott |
| ATTN | : | Tim Houghton |
| REF | : | TJH/nma/2/214 |
| FAX | : | 020 7726 2371 |

| | | |
|---|---|---|
| FROM | : | John Hicks |
| REF | : | JWH/WB/1192-17 |

Telephone  : 020 7929 6060
Facsimile   : 020 7929 3748
Email : law@watersonhicks.com
Web  : www.watersonhicks.com

<u>"NATS EMPEROR"</u>

We refer to your fax of 23rd May.

Our clients had a time charter with Hawknet which was subject to arbitration. The reference to commencing arbitration proceedings against the Defendant therefore means against Hawknet. It has never been asserted that our clients had an arbitration agreement with Brobulk. Until the alter ego issue is resolved that remains the situation. You advised us for the first time on 25th April that Hawknet had been placed into liquidation and you identified the Liquidator on 29th April. You will be aware that the process of liquidation serves to prevent Claimants from pursuing claims against a Defendant in liquidation without the consent of the Court.

Since it has never been suggested there is an arbitration agreement in existence between your clients and our clients it is unnecessary for you to commence arbitration proceedings.

As for the matters raised in the final paragraph of your fax these are now the subject of discovery in the New York proceedings and it is not appropriate for us to comment upon them here.

Yours faithfully,

WATERSON HICKS

CONFIDENTIALITY NOTICE
The contents of this fax and any attachments are confidential, for the use of the addressee only and may be legally privileged.   If you are not the intended recipient of this fax or the employee or the agent responsible for delivering it to the intended recipient any copying, distribution or other action taken or omitted to be taken in reliance upon it is prohibited and may be unlawful. Please return the fax and any attachments to us and destroy any copies which may have been made. Thank you.

J.W. Hicks, M.J. Wisdom, B.M. Isola, M.S. Aspinall, T.D. Baker, A.S. Ridings

Geneva: tel. +4122 3109767
Address: 11 rue de Candolle, 1205 Geneva, Switzerland
Regulated by the Solicitors Regulation Authority.



EXHIBIT

C

HSK LP 6 11/08

# EXHIBIT 3



# Winter Scott
Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

DATE:             9th June 2008

TO:               020 7929 3748
                  Waterson Hicks
ATTENTION:        John Hicks Esq

FROM:             Tim Houghton
OUR REF:          TJH/nma/2/214
NO. OF PAGES:     3

**CONFIDENTIALITY NOTICE:** This facsimile is intended only for the addressee.  It may contain privileged and/or confidential information.  If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Dear Sirs,

Re:  MV "NATS EMPEROR"

We refer to your fax dated 27th May 2008, and respond as follows:

1.      You have said that paragraph 36 of your Clients' amended complaint refers to the commencement of arbitration proceedings against Hawknet, rather than against Brobulk. With respect, we have difficulty in following this. You go on in your fax to state that your Clients cannot commence proceedings against Hawknet because Hawknet are in liquidation, and that you found out about this on 25th April 2008. Your Clients' amended complaint is dated 19th May 2008. Please explain how it is that your Clients were able to state on 19th May 2008 that they would shortly be commencing arbitration proceedings against Hawknet if they believed that they were prevented from doing so by reason of Hawknet's pending liquidation.

2.      You say that:

        *"It has never been asserted that our clients had an arbitration agreement with Brobulk. Until the alter ego issue is resolved that remains the situation."*



EXHIBIT
D
H9KLtr: 6/11/08

Partners:  Glenn Winter   Ken Scott   Michael Ellis   Damian Wilkes   Tim Houghton   James King   Graeme Lloyd
Associates:  Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority                                    VAT No GB 819417416

We have the greatest difficulty in understanding your position, and would point out as follows:

(a)    As we understand the case that has been advanced on behalf of your Clients, you say that Hawknet is Brobulk's alter ego and thus Brobulk is liable to your Clients in the same way as Hawknet. In effect, you are asserting a contractual liability by Brobulk to your Clients under the relevant charterparty, on the basis that Brobulk is, to all intents and purposes, Hawknet and thus a party to the charterparty. We do not follow how it is that Brobulk can be said to be Hawknet's alter ego but not a party to the arbitration agreement contained in the relevant charterparty.

(b)    It is not clear how it is that you envisage the "*alter ego issue*" will be resolved. If you have it in mind to litigate this issue in the District Court, then you are mistaken. The Judge in the District Court proceedings, the Hon Barbara S Jones, clearly does not envisage determining that issue, stating as she did that she was not and would "*hopefully never*" decide the substantive issues. The District Court has taken jurisdiction in respect of the question of whether your Clients have satisfied the requirements of Rule B only.

3.    We would add that your suggestion that Hawknet's pending liquidation prevents your Clients from pursuing their claim against Hawknet in arbitration is mistaken. That would be the case if Hawknet were to be a form of compulsory liquidation, but they are in fact in creditors' voluntary liquidation. As such, your Clients may commence and pursue proceedings against Hawknet, although the liquidator may, should he see fit to do so, apply for a stay of those proceedings.

In the circumstances, if you are to maintain the attachment, you must commence substantive proceedings against Brobulk in England where the alter ego issue can and will be decided. On your analysis, given that your claim is based on an alter ego / piercing the corporate veil analysis, we do not see how you can avoid doing so in arbitration pursuant to clause 61 of the charterparty.

As you will by now be very well aware, Brobulk completely deny your Clients' various allegations, and it follows that they deny that they are a party to the charterparty and the arbitration agreement that it contains. However, in order to assist with the expeditious resolution of this matter, we can confirm that Brobulk would be prepared to agree to an ad hoc arbitration of your Clients' claims subject to your Clients' agreement to:

(1)    Stay the District Court proceedings, with the funds presently attached remaining in New York unless alternative security or an escrow arrangement is agreed;

(2)    Commence London arbitration against Brobulk forthwith; and

(3)    An expedited arbitration with a view to a final hearing by the end of August or as soon as possible thereafter.

For the purposes of the ad hoc arbitration, it would be necessary for our respective Clients to enter into an arbitration agreement. Brobulk are willing to agree that the reference should be on the same basis as clause 61 of the Charterparty, although this proposal is entirely without prejudice to Brobulk's position that they are not a party to the Charter and thus the arbitration agreement contained in that clause.

If we do not receive a positive response to the above proposal within **1700 London time on Wednesday 11th June 2008**, we shall assume that our Clients' proposal has been refused and immediately advise Judge Jones of this refusal, putting the relevant correspondence before her.

In the meantime, please confirm whether your Clients have re-fixed the Vessel. If so, please provide us with a copy of the replacement fixture, showing the rate of hire and the charter period.

We look forward to hearing from you.

Yours faithfully,


WINTER SCOTT

# EXHIBIT 4



# Winter Scott
Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

DATE: 3rd July 2008

TO: 020 7929 3748
Waterson Hicks

ATTENTION: John Hicks Esq

FROM: Tim Houghton
OUR REF: TJH/nma/2/214

NO. OF PAGES: 3

**CONFIDENTIALITY NOTICE:** This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Dear Sirs,

Re: MV "NATS EMPEROR"

Thank you for your fax dated 27th June 2008.

We should start by saying that we are surprised not to have received an answer to our offer of arbitration as set out in our fax dated 9th June 2008. It appears to us that you should by now have been able to take a view on whether that offer is acceptable, and thus we look forward to hearing from you in this regard at your earliest convenience. Of course, your Clients may prefer to sue Brobulk in the English High Court, which your Clients are perfectly at liberty to do. Brobulk are, of course, present within the jurisdiction of the High Court, but in order to make matters easier for you we confirm that we have instructions to accept service of a High Court Claim Form on behalf of Brobulk.

We turn now to your suggestion that, in order to save the costs of proceedings "*wherever they may take place*", it would be constructive for Brobulk to disclose "*copies of the agreements concluded between them* [i.e. Brobulk] *and Hawknet together with evidence of the payments made pursuant to it.*" We find this request rather puzzling, because we sent a bundle of correspondence and other documents relating to the loans to the Liquidator of Hawknet on 22nd May 2008. We understand that your firm represents your Clients on the Creditors' Committee of Hawknet, and thus we would

Partners: Glenn Winter   Ken Scott   Michael Ellis   Damian Wilkes   Tim Houghton   James King   Graeme Lloyd
Associates: Richard Verney (not admitted)                                               VAT No GB 819417416
Regulated by the Solicitors Regulation Authority

have thought that you would have known about this and might perhaps have obtained copies from the Liquidator. We shall proceed on the basis that you have not already seen and taken copies of the documents sent to the Liquidator, but please confirm the position.

As Mr Paulsson of Brobulk explained in his declarations in the New York proceedings, which we believe you have seen, Hawknet and Brobulk did not sign any formal agreements in respect of the loan transactions, and instead the arrangements were made in correspondence and over the telephone. Brobulk are willing in principle to provide you with copies of the correspondence and other contemporaneous documents relating to the relevant loan transactions. However, we would point out the following:

1.    Despite the fact that you have made wide-ranging allegations against Hawknet and Brobulk in the United States, you have for some reason chosen not to specify in correspondence in England the nature of the claim that your Clients have it in mind to bring against Brobulk, let alone particularised the basis for any such claim.

As you know, in England disclosure follows the framing of the claim, and the way in which the claim is put defines the scope of the disclosure obligation. This approach is embodied in paragraph 4 of the "Practice Direction - Protocols", which explains how the parties should behave in cases which are not covered by a specific pre-action protocol. Paragraph 4.2 makes clear that the pre-action procedure should begin with "*the claimant writing* [to the defendant] *to give details of the claim*", and paragraph 4.3 goes on to state that the letter should "*give sufficient concise details to enable the recipient to understand and investigate the claim without extensive further information*". Paragraph 4.6 states that the defendant should then supply copies of the documents requested by the claimant, or explain why they are not being supplied.

Of course, whilst your Clients are free to pursue their claim in the English High Court, we have proposed London arbitration which has a less formalised procedure. However, even in arbitration, disclosure follows the identification and particularisation of the claim. This is the case even in relation to advance disclosure prior to service of submissions under paragraph 10 of the Second Schedule to the LMAA Terms, which states that any application for advance disclosure must explain "*the rival positions of the parties in question.*"

We would therefore ask you to explain the claim that your Clients have it mind to bring against Brobulk. If you do so and the documents that you have requested are relevant to that claim, then (subject to the point made in paragraph 2 below) we shall provide you with copies accordingly.

2.    You will appreciate that the documents that you have requested are confidential not only to Brobulk (who are willing to waive confidentiality for these purposes) but also to Hawknet. If you had commenced proceedings either in London arbitration pursuant to the offer contained in our fax of 9th June, or in the

English High Court, then Brobulk's disclosure obligations would be such that they could disclose the documents without first obtaining Hawknet's consent. However, you have not commenced proceedings of any kind in England, and as such we must ask you to obtain the consent of Hawknet's Liquidator to our release to you of copies of the relevant documents. Given that you sit on the Creditors' Committee, we do not anticipate that you will have any difficulties with this.

We look forward to hearing from you as soon as possible in relation to the above, so that progress may be made in this matter.

Yours faithfully,

WINTER SCOTT

# EXHIBIT 5

85EANATA.txt

85EANATAps                                                                    1
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

NATS EMPEROR SHIPPING LIMITED,


                Plaintiff,

        v.                                  08 CV 3763 (BSJ)

HAWKNET LIMITED and BROBULK LIMITED,

                Defendants.

------------------------------------x

                                        New York, N.Y.
                                        May 14, 2008
                                        3:00 p.m.

Before:


                HON. BARBARA S. JONES

                                District Judge


                        APPEARANCES

MAHONEY & KEANE, LLP
        Attorneys for Plaintiff
BY:  EDWARD A. KEANE

CARDILLO & CORBETT
        Attorneys for Defendants
BY:  TULIO PRIETO
     JAMES P. RAU




                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

85EANATAps                                                                    2
        (In open court)
        THE CLERK:  In the matter of Nationals Emperor
Shipping Ltd. v. Hawknet Ltd., et al., is the plaintiff ready?
Counsel, your appearances for the record.
        MR. KEANE:  Good morning, your Honor -- good
afternoon.  Edward Keane for the firm Mahoney & Keane, for the
plaintiff, Nationals Emperor Shipping Ltd.
        THE COURT:  All right.  And for the movant?
        MR. PRIETO:  Tulio Prieto for the movant, your Honor,
of Cardillo & Corbett, and Mr. James Rau, my partner.
        THE COURT:  You know, we don't have microphones at
your desks, so it's very hard for me to hear you unless you
really speak up.  If you want to stand at the podium, if you
                        Page 1

EXHIBIT

A

Hwk Ltr: 6/14/08

ALL-STATE LEGAL®

85EANATA.txt

14  want to move closer, whatever you want to do is fine, but
15  please speak up.
16      All right.  I guess my first question is actually for
17  you, Mr. Keane.  What are you pleading?
18      MR. KEANE:  Your Honor, can I address one issue of
19  housekeeping first?
20      THE COURT:  Sure.
21      MR. KEANE:  We had a second affirmation or declaration
22  from solicitors in London which I had hand-delivered, I hope,
23  to your Honor's chambers a courtesy copy, and filed, but I want
24  to check whether you received that.  I have an extra copy if
25  needed.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

85EANATAps                                                      3

1       THE COURT:  I did get some materials today, but I'm
2  not sure that was one of them.  I think I got the reply papers
3  this morning.
4       MR. KEANE:  If I can, I can hand up --
5       THE COURT:  What's the -- who is the declarant?
6       MR. KEANE:  John Hicks.
7       THE COURT:  Oh, it's a second declaration of
8  Mr. Hicks?
9       MR. KEANE:  Second declaration, yes.
10      THE COURT:  I haven't seen that.
11      MR. KEANE:  If I may, your Honor.
12      THE COURT:  All right.  I want to start first, though,
13  just with the pleadings, Mr. Keane.  You pled alter ego.  I
14  think you argued fraud.  What is it?
15      MR. KEANE:  Your Honor, first, you have to understand,
16  we are learning the facts as time goes by.
17      THE COURT:  I'm sure.
18      MR. KEANE:  The Hicks declarations talk a lot about
19  his meeting at the creditors liquidation hearing at Hawknet in
20  London, and the materials provided --
21      THE COURT:  You're now talking about this second
22  declaration?
23      MR. KEANE:  The first as well, which is Exhibit 4.  So
24  it is an ongoing learning process for us as well.  But what we
25  say is that, in essence, there was a sort of Ponzi scheme

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

85EANATAps                                                      4

1  perpetuated between Brobulk and Hawknet by misallocating
2  corporate assets and creating fictitious inter-corporation
3  activities, all to the detriment of my client.  And essentially
4  what they've done is, by this alleged loan for millions of
5  dollars, about $4 million in total, which has -- according to
6  Mr. Walker, who is the managing director of Hawknet, there are
7  no documents whatsoever, while Brobulk's solicitor and
8  Brobulk's director have said that there was some
9  correspondence, which they anticipated the liquidator in London
10  would have, but he doesn't have, because Walker, at the
11  creditors meeting, said there were no documents.
12      whatever.  This $4 million loan managed to scrape off
13  about $160,000, which went directly into Mr. Guy Peter Fawkes
14  Walker's pocket, as far as we can see from Brobulk's director's
15  affidavit, $200,000 in Brobulk's accounts, and another $10,000
16  for a fellow named Simon Rye, who supposedly somehow
17  facilitated all of this no-document, arms-length bona fide
18  transaction, which, coincidentally, happened to keep Hawknet

Page 2

85EANATA.txt

19  alive just long enough with fraudulent bills of lading that its
20  predated bills of lading which allowed Hawknet to receive about
21  a million 5 in freight from its subcharterer, which it would
22  not have received until attachments in this court were already
23  out there, but in April, because the bill of lading was
24  predated, they managed on April, I think, 9, to get payment, on
25  April -- they would have been paid on April 11.  By April 10,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                5
     85EANATAps
 1  the house of cards had started to collapse.  Attachments were
 2  issued, not by us but by others.  It strains credulity that any
 3  of this was just pure coincidence or good fortune on the part
 4  of Brobulk to get its money out to take its $200,000 fee, which
 5  is a pretty extraordinary payment, that managed to give Mr. Guy
 6  Walker $160,000, although his corporation was at that time and
 7  had been for probably a year in debt or exposed to about $35
 8  million in an arbitration, which, it's unclear because we
 9  haven't had a chance to discover these things, but we do
10  know --
11          THE COURT:  Let me just say this.  I haven't had a
12  chance to read the second declaration.  But when I read your
13  papers and read the first declaration, I understand your theory
14  of fraud, let me just say that.  But my question is, let's
15  forget about -- well, we have two different standards in the
16  circuit.  Some judges are applying the prima facie case where
17  we just go by the pleadings.  Others are going to reasonable
18  grounds, fair probability, whatever you want to call it, and
19  are looking at evidence.  I have in the past, it's my
20  recollection, used the reasonable grounds test, although in
21  preparation for this case, having read more cases, it looks as
22  though, as I think Judge Sweet said in a number of his cases,
23  the weight of authority of how to read Aqua Stoli is that I'm
24  supposed to look at the pleadings and see if you've made out a
25  prima facie case.  So without adding allegations that aren't in
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                6
     85EANATAps
 1  your complaint, tell me what it is that you have pled.
 2          MR. KEANE:  We have pled alter-ego status, which I
 3  think as a term of art subsumes fraud.  That is, the use of
 4  corporations to defraud creditors or other third parties is the
 5  heartbeat of an alter-ego allegation.  Otherwise there's no
 6  point in it.  So we've alleged that and I've said the case law
 7  is clear, that that subsumes the more specific saying, you
 8  fraudulently used this corporation.  That's what alter-ego
 9  assertions in pleadings means.
10          We've also said that Brobulk is a shell, or vice
11  versa, which, really, I think, is the case.  You can read it to
12  read: Hawknet is a shell corporation through which defendant
13  Brobulk conducts business and vice versa.  And in fact that's
14  exactly what I think happened here.  They used a shell
15  corporation, which was already insolvent, was insolvent upon
16  the most minimal inquiry, the most minimal due diligence, which
17  I assume a corporation which is conducting bona fide businesses
18  would engage in, which is lending $4 million without a sheet of
19  paper supposedly or signing anything, I think due diligence
20  would require it to say, do you have any arbitrations that are
21  claiming, say, $35 million against your bankrupt or shell
22  corporation.
23          We also say, "Hawknet is actually carrying more
                            Page 3

85EANATA.txt

24  business and operations of Brobulk or vice versa," which is
25  exactly what was going on.  Brobulk was receiving the freights
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              7

    85EANATAps
1   due to Hawknet which my client would have been entitled to
2   assert a lien on, at this, this good fortune of having Brobulk
3   continue to breathe just in time to get the last charter
4   payment.
5            THE COURT:  I think, to be specific, you allege two
6   transactions.
7            MR. KEANE:  Oh, yes.  Definitely.  We get into more,
8   but just generally the paying agents, receiving agents.  And
9   then we alleged the two specific transactions that burnt us and
10  that were known to us at the time.  Now, if I was to replead, I
11  would have more information.  I would be able to say that they
12  were in fact insolvent at the day this transaction was entered
13  into and other things.  So I don't think that, under any of the
14  standards the courts have used, that kind of specificity -- I
15  know there's a heightened standard for pleading under Rule E,
16  but I don't think I have to try the case in my complaint.
17           THE COURT:  I think that's right.
18           All right.  May I hear from the defendant.
19           MR. PRIETO:  Yes, your Honor.  There are no
20  allegations of fraud contained in the complaint.  It is clear
21  what happened here, your Honor.  As a matter of fact, as
22  admitted by Mr. Hicks in his declaration yesterday, in
23  paragraph 2, he says, at the time that we filed this complaint,
24  little was known about why this happened, why the transactions
25  happened.  Well, he didn't ask any questions, your Honor.  He
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              8

    85EANATAps
1   shot first and then asked questions.  That's not the way you do
2   this.  This is not an instrument of discovery, your Honor.
3   This is a power instrument and has been abused in this case,
4   without any basis.  They abandoned completely their allegations
5   of domination and control, your Honor, once it became clear
6   that they were refuted.  And they knew this, your Honor, before
7   they filed this complaint.  They knew these were separate
8   companies.  They knew that Brobulk belonged to a group of large
9   companies that had nothing to do with -- nothing in common with
10  Hawknet.  The only thing was this transaction, which has been
11  explained in the materials supplied to the Court.  And those
12  two transactions by themselves could not and did not provide a
13  basis for piercing the veil or calling these two companies
14  alter ego, especially, especially in view of the fact that
15  these were separate companies and they knew it.  And yet they
16  went ahead, your Honor, and attached my client's money on
17  allegations, pure allegations made wholly on a conclusory
18  basis, without any facts to support domination or control,
19  without any facts to support any sort of subsidiary
20  relationship.  And they knew it.  And yet they went ahead, your
21  Honor.  And now, you know, Mr. Hicks says, well, he saw, in my
22  brief, he saw, well, fraud is a possible ground.  "Oh, that's
23  it.  That's it.  That's it now.  That's what I really meant.
24  It was fraud."  This is absurd, your Honor.  This is an abusive
25  process.
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                              9

                        Page 4

85EANATA.txt

85EANATAps

```
1        THE COURT:  Mr. Keane.
2        MR. KEANE:  I would say, your Honor, the exhibits
3   attached in movant's papers, which include, under Exhibit H, a
4   series of correspondence back and forth between solicitors,
5   demonstrate that we did ask, and we were stonewalled.  On April
6   29, Brobulk's solicitors, Winter Scott, say, "as to this query
7   set out in the second paragraph of your fax," where we asked
8   for the specifics about the loan agreement that was alleged,
9   "'We are not in a position to provide any further details or a
10  copy of the loan agreement.  You will be aware that the
11  information and documents which you have requested will be
12  confidential to Hawknet or Mr. Walker.'"
13       Well, that is complete stonewalling.  First of all, it
14  would be confidential to Brobulk and Brobulk would be able to
15  release that information if it chose to.  Secondly, later, they
16  assumed the position that there were no such documents, and you
17  have an affidavit from Paulsson, which is subsequently
18  contradicted because Paulsson says, well, their attorneys say
19  that there should have been some correspondence made available
20  to the liquidator but generally we did it like we did the last
21  one and there's really nothing you can see.  So Scott Winter is
22  saying, if you go through the right channels, we show you that
23  which does not exist.  It's complete nonsense.
24       But we did inquire.  We made the good-faith effort to
25  resolve this.  And what we met with was a lot of double-speak:
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

85EANATAps

```
1   You can't see what doesn't exist because we won't show you, but
2   some day maybe, if you ask the liquidator nicely, we'll tell
3   you that there really are no such documents, but we thought
4   that Mr. Walker, or, rather, Hawknet would have those documents
5   if you said the right incantation to get those documents.  It's
6   all nonsense.
7        MR. PRIETO:  Your Honor --
8        THE COURT:  Let me just say, I'm not here to -- at the
9   moment, at least, and hopefully never -- to decide or have to
10  decide what he knew when he knew it.  I'm assuming he had the
11  information, he tried to get it.  I'm also assuming the
12  solicitors on the other side may have had very good reasons for
13  not giving it to you.  I think one of the things they said was,
14  they would be happy to give it to the liquidator.
15       But leaving that aside for the moment, what we're
16  talking about here is piercing the corporate veil.  And you can
17  do it two ways.  You can do it through allegations of alter
18  ego, or you can do it through allegations of fraud.  I happen
19  to agree with you that most piercing of the corporate veil is
20  done in the context of fraud.  And I think some of the
21  allegations you make here, which are conclusory, are probably
22  overpleading the conclusory alter-ego-type allegations.  So it
23  seems to me the question for me is, is there enough here.  And
24  under the heightened standard as you mentioned, is there enough
25  here.  Because I don't think you have to prove your case.  But
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

85EANATAps

```
1   I do think you have to plead it and there have to be some
2   allegations very specific in that.
3        If I look at the additional evidence you presented and
4   the additional allegations that are not in the complaint, I
```

Page 5

85EANATA.txt

```
 5   think you have enough, more than enough.  So the only question
 6   for me is whether you needed more in here or not.  And it looks
 7   like -- and actually, this is a question for Brobulk.  In
 8   looking at these cases -- thank you, Mr. Keane.
 9           MR. KEANE:  Thank you, your Honor.
10           THE COURT:  -- it looks awfully slim to me.
11           MR. PRIETO:  I'm sorry, your Honor?
12           THE COURT:  I say that the allegations look awfully
13   slim that have prevailed, and, you know.
14           MR. PRIETO:  Your Honor, if you look at the last two
15   cases, Dolco and Brave Bulk, in which Mr. Keane or his firm was
16   involved, those allegations were even more explicit and more
17   factual than he made in this complaint, your Honor, and the
18   Court said, you can't go arrest people -- someone who wasn't
19   even involved with the main contract that you're suing under.
20   You cannot go attach the property based on such flimsy
21   allegations.  And, your Honor, they were more factual; they
22   contained more facts, more allegations, than Mr. Keane's
23   complaint.
24           THE COURT:  I looked at Dolco, and honestly did not
25   have time to necessarily analyze it.  What was the other case
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

                                                                    12

85EANATAps
```
 1   you mentioned?
 2           MR. PRIETO:  Brave Bulk.  They're both -- Brave Bulk.
 3           THE COURT:  Brave Bulk.
 4           MR. PRIETO:  They're both cited in my brief, your
 5   Honor.  I should add, your Honor, Mr. Keane and the English
 6   solicitor keep referring to the lack of documentation.
 7   Mr. Paulsson explained that --
 8           THE COURT:  He said they were going in principle on
 9   the agreement from November of 2007.
10           MR. PRIETO:  Exactly.  That was provided, your Honor.
11           MR. KEANE:  If I can be heard, your Honor, I was
12   involved in the Brave Bulk v. Spot On before Judge McMahon, and
13   I can ask for the alternative relief of holding the funds and
14   allowing me to repled.  I just find it so wasteful.  In that
15   case there were specific allegations about addresses being
16   commingled, whatever.  In this case we have specific
17   allegations about funds being paid.  We didn't have that in
18   Spot On.  I understand there's a heightened pleading, but we
19   did move away from field code some century or so ago.
20           THE COURT:  You moved away from what?
21           MR. KEANE:  The field code where you could demur if
22   the pleading wasn't completely pristine and precise.
23           THE COURT:  Right.
24           MR. KEANE:  If Brobulk does not know what we're saying
25   about their activities, I would be stunned, because
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

                                                                    13

85EANATAps
```
 1   Mr. Paulsson seemed to be spot on in his affidavit in resisting
 2   this attachment.
 3           THE COURT:  Well, there is still some value in writing
 4   it down.  I understand your argument.
 5           MR. KEANE:  I can only say this.  Alternatively, we
 6   would ask that the attachment remain while we replead.  But,
 7   honestly --
 8           THE COURT:  I guess that's what Judge --
 9           MR. KEANE:  That's what Judge McMahon did do, yes, and
                           Page 6
```

85EANATA.txt
10  other judges have done it.
11              THE COURT:  Right.
12              MR. KEANE:  It just seems, you know, people complain
13  about the waste of litigation and expense.  Honestly, if
14  Brobulk can, with a straight face, say they don't understand
15  what we are saying, I will replead.  But I really don't think
16  it's necessary.  And I do think the specificity that's required
17  under the case law specifically addressing the payments that
18  were made by Brobulk on behalf of Hawknet and the funds that
19  went from Hawknet to Brobulk, I think that that's more than
20  sufficient, with the alter-ego and paying-agent allegations and
21  the rest of it.  And how much more specific can I get?  Until I
22  take depositions or until something more is known, something
23  happened that is not consistent with true arms-length dealings
24  between two corporations.  One of them was clearly insolvent by
25  any standard.  There apparently were no inquiries made.  None
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                14

85EANATAps
1   of it sits right.  I think we're entitled to investigate that.
2   And I think that's what the complaint is driving at.  And I
3   think they know that.  And their papers are replete with --
4   completely on top of it.
5               THE COURT:  I think in reading all the papers I
6   understand everybody's positions factually.  There are great
7   disputed issues of facts.  The only question is whether you
8   have alleged enough.
9               Mister -- I'm sorry, what is your name again, sir?
10              MR. PRIETO:  Prieto, your Honor.
11              THE COURT:  Prieto?
12              MR. PRIETO:  Yes.
13              Your Honor, one case that Mr. Keane did not address
14  was the Supreme Court case in Twombly, the decision in Twombly.
15  That case makes clear that you must allege something that's
16  plausible, not simply speculative.  And that's exactly what
17  they did in this case.  They said, oh, there are two payments
18  and there's domination and control.  Domination and control,
19  it's been shown to be completely false, your Honor.  They are
20  being refuted in this case.  And they know it.
21              And the second allegation with the two payments, well,
22  so what?  Two payments between two corporations -- a
23  corporation can be appointed to receive money for another.
24  That doesn't mean that you're entitled to pierce the corporate
25  veil.  It's simply speculative at that point, your Honor.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                15

85EANATAps
1   That's what he's done.  That's what he's done in his complaint.
2               And it's not simply a question of notice.  It's a
3   question of saying exactly -- making enough factual allegations
4   that you will be responsible, under Rule 11, as the Court in
5   Brave Bulk said, if you're not sure of these allegations.
6               This is not what they did in this case, your Honor.
7   And this cavalier attitude, which it is by Mr. Hicks, of, well,
8   we don't know but we went ahead, I don't think that should be
9   allowed, your Honor, by this Court.
10              THE COURT:  All right.  Anything else?
11              MR. KEANE:  I would just say, Mr. Hicks was not
12  cavalier.  I mean, he knew certain facts.  He learned more
13  facts.  That's really what he says.  He knew that the ship was
14  not in port when the bills of lading were issued.  He knew that
                            Page 7

85EANATA.txt

```
15    there would be payments.
16          THE COURT:  I don't know when he knew that.  And
17    that's fine.  None of that is in the complaint, obviously.  And
18    I don't think you have to specify everything, believe me.  I
19    understand the difference, and I know that you can't know
20    everything.
21          Just give me a few minutes and I'll be back.
22          MR. KEANE:  Thank you, your Honor.
23          MR. PRIETO:  Thank you.
24          (Recess)
25          THE COURT:  Well, Mr. Keane, I think I've said this
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                              16
      85EANATAps
1     before.  If I were to decide that the test that would be
2     approved in this circuit was the reasonable grounds test, I
3     would have no doubt that you have provided sufficient
4     information here to support allegations of fraud and sufficient
5     to pierce the corporate veil.  If the test in the circuit
6     ultimately turns out to be, and frankly as I read Aqua Stoli, I
7     guess I think it will, that it's a prima facie pleading, then I
8     think we have a much closer question here.
9           And so, in other words, I guess what I'm saying is,
10    which test is the correct test matters, and I am not going to
11    vacate the attachment in this case, but I am going to strongly
12    suggest you replead.  How quickly can you replead?
13          MR. KEANE:  Ten days?  Is that sufficient?  Or five
14    days?
15          THE COURT:  Why don't I give you five.
16          MR. KEANE:  Five?  Fine, your Honor.
17          THE COURT:  There's a mountain of allegations here,
18    and many or most of them are substantiated in either the
19    statements of your solicitor, Mr. Hicks, or documents.  So I
20    think five should be sufficient.
21          MR. KEANE:  Fine.
22          THE COURT:  And then of course Brobulk may move again
23    for vacatur of the attachment.
24          OK.
25          MR. KEANE:  Thank you, your Honor.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                              17
      85EANATAps
1           MR. PRIETO:  Your Honor, if he is going to be allowed
2     to replead again, will we set a brief discovery schedule?
3     Should we do it at this time?
4           THE COURT:  Why don't I actually give you a real date
5     for the repleader instead of just saying five days.  What is
6     today?  The 14th?
7           MR. KEANE:  14th.
8           THE COURT:  Can you do it by Monday, Mr. Keane?
9           MR. KEANE:  Could I have till Tuesday?
10          THE COURT:  Tuesday, fair enough.  5/20, May 20?
11          MR. KEANE:  That's fine, your Honor.
12          THE COURT:  All right.  Now, Mr. Prieto, what is it
13    that you would like to do?
14          MR. PRIETO:  Well, your Honor, if he is going to be
15    allowed to replead, then I would like this case to proceed
16    quickly, because, as I said, my client's money is attached and
17    in the end I don't think they're going to be able to pierce the
18    corporate veil.
19          THE COURT:  No, and I've read your set of evidence, if
                          Page 8
```

85EANATA.txt

20  you want to call it that, as well, and I think I can't make any
21  decisions on the merits, obviously.  But it's clear there are
22  huge disputed issues of fact here.
23          MR. PRIETO:  Could we have, like, a 60 days' schedule
24  to complete discovery in this case if he does replead?
25          THE COURT:  All right.  Well, I'm pretty sure
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                18

85EANATAps
1   Mr. Keane is repleading.
2           MR. KEANE:  Yes, I am, your Honor.
3           THE COURT:  What's your response to that?  60 days?
4           MR. KEANE:  That's fine with me, your Honor.
5           THE COURT:  All right.  Do you need any more specific
6   scheduling than to say 60 days for discovery?
7           MR. KEANE:  I don't know.  I'm sure I can work it out.
8           THE COURT:  You can work that out, yes.
9           MR. KEANE:  And if we can't, we'll come back, but I'm
10  sure we can.
11          THE COURT:  All right.  So I'll look for your
12  repleaded complaint on Tuesday, then, next week, Mr. Keane.
13          MR. KEANE:  Thank you, your Honor.
14          THE COURT:  I'm assuming everybody is talking to each
15  other in London?  There are two sides to every story.
16          MR. KEANE:  Yes.  I'm certainly going to urge that.
17          THE COURT:  I've read both of them, and it's -- you
18  know, you go back and forth here.
19          MR. KEANE:  I do too when I read my own papers, and I
20  will speak to my side of the solicitor's world and see what
21  they perhaps can work out over there.
22          THE COURT:  There is the question that Brobulk paid
23  some of the money that they obtained in these subcrates -- is
24  that what they are called?
25          MR. KEANE:  Yes.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                19

85EANATAps
1           THE COURT:  -- immediately to your client, Mr. Keane,
2   when they got them.  I forgot how much that was.
3           MR. PRIETO:  $550,000.  Yes.
4           THE COURT:  On the other hand, $160,000 for Mr. Walker
5   looked suspicious.  And then we have our other gentleman in the
6   mix making deals and no corporate officers involved or anything
7   else and no notes or anything.  So, look, I can see the facts
8   on both sides, but maybe something can get worked through here.
9           OK.  Thanks.
10          MR. KEANE:  Thank you, your Honor.
11          THE COURT:  If either of you needs a conference on
12  anything, just send a note, fax a note in to chambers and we'll
13  do it.
14          MR. PRIETO:  Thank you, your Honor.
15          MR. KEANE:  Thank you, your Honor.
16          THE COURT:  And I will take the opportunity to read
17  this second Hicks submission.  Thank you.
18          MR. KEANE:  Thank you.
19                          oOo
20
21
22
23
24

                            Page 9

85EANATA.txt

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300